1
2
3
4
5          UNITED STATES DISTRICT COURT
6          NORTHERN DISTRICT OF CALIFORNIA
7
8   GREGORY MORRIS,                          No. C-07-2890 EMC
9              Plaintiff,
                                             **ORDER GRANTING PLAINTIFF'S**
10      v.                                   **APPLICATION TO PROCEED IN**
                                             **FORMA PAUPERIS**
11  STATE BAR OF CALIFORNIA, *et al.*,
                                             **(Docket No. 2)**
12             Defendant(s).
    _____/
13
14
15      Plaintiff Gregory Morris has filed a complaint against multiple persons and entities, alleging,
16  *inter alia*, that Defendants violated his civil rights and rights under federal disability law.  Mr.
17  Morris has also filed with the Court an application to proceed in forma pauperis.  Mr. Morris has
18  consented to proceed before a magistrate judge.

19                          **I.    DISCUSSION**
20  A.      In Forma Pauperis Application
21      When presented with an application to proceed in forma pauperis, a court must first
22  determine if the applicant satisfies the economic eligibility requirement of 28 U.S.C. § 1915(a).  *See*
23  *Franklin v. Murphy*, 745 F.2d 1221, 1226 n.5 (9th Cir. 1984).  Section 1915(a) does not require an
24  applicant to demonstrate absolute destitution.  *See McCone v. Holiday Inn Convention Ctr.*, 797 F.2d
25  853, 854 (10th Cir. 1982) (citing *Adkins v. E.I. Du Pont de Nemours & Co., Inc.*, 335 U.S. 331,
26  339(1948)).

27      In his financial affidavit, Mr. Morris states that he has no current income other than welfare
28  or other government assistance.  Mr. Morris does not own a home or a car, nor does he have a bank

account or appear to have any other assets.  Mr. Morris does not have any monthly expenses, such as rent, food, utilities, or clothing, apparently because he is currently in prison.  Given these circumstances, the Court **GRANTS** Mr. Morris's application to proceed in forma pauperis.

B.    <u>Complaint</u>

Title 28 U.S.C. § 1915(e)(2) requires a court to dismiss any case in which a litigant seeks leave to proceed in forma pauperis if the court determines that the action (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2).  Because the Court must apply this standard, the Court turns to the specifics of Mr. Morris's complaint.

In the instant case, Mr. Morris has sued multiple persons and entities for various violations of federal and state law.  Defendants are as follows:

(1)    The Bar Defendants, consisting of the California State Bar, Bob Driscal, the Board of Governors, and the members of the Board of Governors (except Anthony Capozzi).  *See* Compl. ¶ 13.

(2)    The Fire Defendants, consisting of the Fresno Fire Department, Don McAlpine, the Fresno Board of Supervisors, the City of Fresno, supervisory personnel for the City responsible for fire investigations, and supervisory personnel responsible for the Fire Department responsible for fire investigations.  *See* Compl. ¶¶ 14, 21-24.

(3)    The Insurance Defendants, consisting of Safeco and Crawford and Company.  *See* Compl. ¶ 15.

(4)    The D.A. Defendants, consisting of Fresno County, Elizabeth Egan, the Fresno County D.A.'s Office, employees involved in the arson and insurance fraud charges against Mr. Morris, and supervisors and policymakers.  *See* Compl. ¶ 16.

(5)    The Deed Defendants. consisting of Option One Mortgage Co. and Premier Trust Deed Servs. Co.  *See* Compl. ¶ 17.

(6)    Doe 21, an expert hired by the Insurance Defendants to investigate the fire at Mr. Morris's house.

The main allegations in the complaint are as follows:

Mr. Morris was once an attorney admitted to practice by the State Bar of California. *See* Compl. ¶ 53. In 2002, he owned a house located in Fresno, California, *see* Compl. ¶¶ 19, 90, which was insured by Safeco for fire damage and limited contents of $25,000. *See* Compl. ¶ 216.

On August 15, 2002, there was an accidental fire at Mr. Morris's house. *See* Compl. ¶¶ 19, 90. The fire was investigated by the Insurance Defendants and Doe 21, *see* Compl. ¶¶ 20, 91(1), "a so called 'expert' [hired by the Insurance Defendants] to come all the way to San Diego to inspect the fire at plaintiff[']s home and form an opinion that the fire was caused by [arson]." Compl. ¶ 131(C); *see also* Compl. ¶ 199(C) (alleging the same); Compl. ¶ 204(A) (alleging the same). The fire was also investigated by the Fire Defendants and the D.A. Defendants.[1] *See* Compl. ¶¶ 20, 91(1).

At the time of each investigation, there was substantial evidence to show that the fire was accidental, but this evidence was intentionally or recklessly disregarded[2] and instead the Insurance Defendants, the Fire Defendants, the D.A. Defendants, and the Deed Defendants conspired together and relied on the unsupported opinion of Doe 21 that the cause of fire was arson.[3] *See* Compl. ¶ 92; *see also* Compl. ¶ 100(D) (alleging that "Doe 21 used 'junk science' to support the arson allegations" -- *i.e.*, the methods used were "complet[e]ly unreliable with no scientific basis"); Compl. ¶ 212 (alleging that Doe 21 used "'junk science,' with no real basis in logic or scientific verification"). Subsequently, Safeco (one of the Insurance Ds) denied payment on the insurance claim made by Mr. Morris. *See* Compl. ¶¶ 99(C), 131(H). Furthermore, on August 25, 2002, Mr. Morris was arrested and prosecuted for arson and insurance fraud. *See* Compl. ¶¶ 91(2), 96.

---

[1] In his complaint, Mr. Morris suggests that the Fire Defendants were able to investigate only because the Insurance Defendants improperly invited and allowed the Fire Defendants to do so and because the Deed Defendants broke into his house without permission to allow the Fire Defendants to do so. *See, e.g.*, Compl. ¶¶ 99(F), 131(B), 140(C).

[2] *See, e.g.*, Compl. ¶ 214 (alleging, *inter alia*, that "the wire that clearly caused the fire" was left at the scene "to be discarded by cleanup crews" and that "the carpet sent to the laboratory was negative for any kind of accelerants and that every single other test they conducted legally, failed to implicate plaintiff").

[3] Apparently, there was a secret meeting held at Mr. Morris's house which was attended by Doe 21, Mr. McAlpine (one of the Fire Defendants), and others as part of this conspiracy. *See* Compl. ¶ 131(H); *see also* Compl. ¶ 140(B) (referring to a secret meeting involving the Fire Defendants, the adjusters for Crawford and Company (one of the Insurance Defendants), and Doe 21).

1     Ultimately, the charges for arson and insurance fraud were dismissed on a motion by the

2   D.A. Defendants in December 2004 "after an admission of the fact that there was insufficient

3   evidence and no motive with which to prosecute the case."  Compl. ¶¶ 99, 205.  Apparently, there

4   was no motive with which to prosecute the case because Mr. Morris "had knowingly let his full

5   coverage Farmer's Insurance Co. policy lapse, months before the fire."  Compl. ¶ 108.  "[T]he

6   Safeco policy was only a 'forced policy' applied to the property" by one of the Deed Defendants

7   (Option One) and was inadequate to cover Mr. Morris's losses.  *See* Compl. ¶ 109.

8     Eventually, the Deed Defendants sold Mr. Morris's house on an undisclosed date and

9   without any notice to Mr. Morris.  *See* Compl. ¶¶ 131(J), 143, 147(B).  The Deed Defendants should

10  not have done so because all past payments owed by Mr. Morris had been brought current when

11  Safeco (one of the Insurance Defendants) and Option One (one of the Deed Defendants) entered into

12  a secret agreement which settled the insurance claim on Mr. Morris's behalf and which brought

13  those payments current.  *See* Compl. ¶¶ 131(K), 142-43, 147(A), 147(D), 238.  The Deed

14  Defendants also used false declarations about the value of Mr. Morris's house to cause a federal

15  bankruptcy court to lift the automatic stay on the sale of Mr. Morris's house.  *See* Compl. ¶¶ 131(L),

16  143(F), 147(C).

17    From approximately October 2003 to August 2006, Mr. Morris sought treatment and

18  assistance from the California State Bar's Lawyers Assistance Program for psychological illnesses

19  that resulted from the events following the fire at his residence.  *See* Compl. ¶ 33.  However, at some

20  point, the Bar Defendants abruptly withdrew assistance.  *See* Compl. ¶ 34.  This was done without a

21  hearing or giving Mr. Morris an opportunity to be heard with respect to the denial of services to

22  which he was entitled by membership in the State Bar.  *See* Compl. ¶ 34.  Mr. Morris consequently

23  suffered delay in diagnosis and treatment of a mental illness.  *See* Compl. ¶ 35.  He also, as a result,

24  became homeless, lost his business, and suffered severe emotional distress.  *See* Compl. ¶ 35.

25    On or about June 30, 2006, Mr. Morris was disbarred by the State Bar.  *See* Compl. ¶ 58.

26  Disbarment proceedings took place while Mr. Morris was mentally disabled and completely unable

27  to participate in any of the proceedings.  *See* Compl. ¶ 58.  The mental disabilities at issue appear to

28  have been brain injury and PTSD, super-imposed on preexisting attention deficit disorder.  *See*

Compl. ¶ 53.  Although the Bar Defendants were aware of Mr. Morris's mental disabilities, they still went ahead with the disbarment proceedings against him.  *See* Compl. ¶¶ 53, 59.

Based on the above allegations, Mr. Morris has asserted multiple claims.

(1)    Violation of due process and equal protection for withdrawal of assistance with respect to the Lawyers Assistance Program (Bar Defendants only).

(2)    Violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act resulting from withdrawal of assistance (Bar Defendants only).

(3)    Violation of the ADA and Rehabilitation Act for failure to accommodate attorneys with mental disabilities with respect to disbarment proceedings and violation of due process and equal protection for disbarring attorneys with mental disabilities (Bar Defendants only) (class action).

(4)    Conspiracy to violate civil rights (Insurance Defendants, Fire Defendants, Deed Defendants, and D.A. Defendants) (class action).

(5)    Violation of due process, unlawful warrantless arrest, and prosecution without probable cause (Fire Defendants, Insurance Defendants, and Doe 21).

(6)    Supervisory liability for constitutional violations (Fire Defendants and D.A. Defendants).

(7)    Supervisory liability for constitutional violations (Fresno D.A.'s Office) (class action).

(8)    Intentional infliction of emotional distress (all Defendants except public entities).

(9)    Violation of right to privacy under the California Constitution (apparently all Defendants).

(10)    Fraud (Insurance Defendants, Deed Defendants, and Doe 21).

(11)    Wrongful foreclosure and gross negligence (Deed Defendants only).

(12)    Bad faith breach of insurance contract (Safeco only).

(13)    Obstruction of justice (all Defendants).

(14)    Terrorist threat and deceit and "other violations of federal law" (Fire Defendants, Insurance Defendants, Doe 21, and Mr. McAlpine).

(15)    Violation of the California Fair Claims Practices Act (Safeco only).

(16)    Negligence (Deed Defendants and Insurance Defendants).

(17)    Bad faith breach of contract (Deed Defendants).

1    (18)    Conversion (Deed Defendants and Safeco).

2    (19)    Constructive trust (Deed Defendants and Safeco).

3    (20)    Violation of the Fair Real Estate Practices Act (Deed Defendants only).

4    (21)    Violation of the Fair Debt Collection Practices Act (Option One only).

5    (22)    Breach of fiduciary duty (Option One only).

6    Mr. Morris has filed suit against the public entity defendants (which appear to be the Bar

7    Defendants, the Fire Defendants, and the D.A. Defendants) in both their individual and official

8    capacities.  *See* Compl. ¶ 29.

9        As noted above, § 1915(e)(2) requires a court to dismiss any case in which a litigant seeks

10    leave to proceed in forma pauperis if the court determines that the action, *e.g.*, fails to state a claim

11    on which relief may be granted or seeks monetary relief against a defendant who is immune from

12    such relief.

13        In the instant case, some of the claims asserted by Mr. Morris are questionable.  For

14    example, for the first cause of action against the Bar Defendants, it appears that Mr. Morris is

15    seeking only damages and, if so, sovereign immunity would protect the State Bar as well as the

16    individual Bar employees in their official capacities.  *See Hirsh v. Justices of the Supreme Court of*

17    *the State of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) (stating that "[t]he Eleventh Amendment's grant

18    of sovereign immunity bars monetary relief from state agencies such as California's Bar Association

19    and Bar Court" and that this "immunity extends to the individual defendants [*e.g.*, the Bar Court

20    judges and prosecutors involved] acting in their official capacities").

21        For the third cause of action against the Bar Defendants, to the extent damages are sought

22    under § 1983 against the State Bar and/or individual Bar employees in their official capacities, there

23    are immunity issues once again.  Furthermore, the *Rooker-Feldman* doctrine is likely a bar to at least

24    part of the claim.[4]  In addition, the third cause of action is pleaded as a class action and, as Mr.

25

26    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
         [4] *Rooker-Feldman* prohibits a federal district court from exercising jurisdiction over a suit that
      is a "de facto appeal from a state court judgment."  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th
27    Cir. 2004).  In his complaint, Mr. Morris seems to challenge his disbarment as well as the disbarment
      of those similarly situated to him.  *See, e.g.*, Compl. ¶ 74(1) (asking for "the reversal all Bar actions that
28    were without personal jurisdiction on the member, at a time when the member was mentally compet[e]nt
      and able to react to the service"); Compl. ¶ 74(8) (effectively the same); Compl. ¶ 74(9) (asking for a

1    Morris is proceeding pro se -- and futher appears to be imprisoned still -- then in all likelihood he is

2    not an adequate class representative, even taking into account that he was formerly an attorney. *See*

3    Wright & Miller, 7A Fed. Prac. & Proc. Civ. 3d R23 (stating that "class representatives cannot

4    appear pro se"); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (in civil rights class

5    action brought by a pro se prisoner challenging prison policies, stating that "we consider the

6    competence of a layman representing himself to be clearly too limited to allow him to risk the rights

7    of others"); *Collins v. Director of Program-1*, No. C 02-1122 WHA (PR), 2002 U.S. Dist. LEXIS

8    16227, at *2-3 (N.D. Cal. Aug. 29, 2002) (in civil rights class action brought by pro se prisoners

9    regarding prison policy, stating that, "[b]ecause pro se prisoner plaintiffs are not adequate class

10   representatives able to fairly represent and adequately protect the interests of the class, this case will

11   not be treated as a class action"); *cf. C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th

12   Cir. 1987) (noting that "a non-attorney may appear in propria persona in his own behalf, [but] that

13   privilege is personal to him" and "[h]e has no authority to appear as an attorney for others than

14   himself").  The fourth and seventh causes of action are also pled as class action claims. *See* Compl.

15   ¶¶ 93-95, ¶¶ 122-24.

16        For the seventh cause of action, asserted against the Fresno D.A.'s Office, at least part of the

17   claim may be barred by prosecutorial immunity. *See* Compl. ¶ 125 (alleging that "defendants stack

18   ────────────────────

19   declaration that, "in a situation where a member of the Bar has been disbarred by default bec[au]se of
     either no actual personal service bec[au]se the member could not be, or was not located because of an

20   unavailability directly caused by the disability . . . or . . . was incarcerated in or committed in an
     institution or hospital during any material portion of the procee[d]ings and unrepresented, or was

21   personally served with process while not able to respond in a meaningful way to the service because of
     a mental disability," the disbarments are "invalid and reversed"); Compl. ¶ 74(4) (asking for a

22   preliminary and permanent injunction "regarding the Bar's action in suspending, disbar[r]ing and
     otherwise dis[c]iplining mentally disabled persons who cannot, because of the disability and its

23   associated conditions, meaningfully participate in their defense and/or because of the mental disability
     have not been personally served with process at a time when they were compet[e]nt to understand the

24   nature of the proceedings or what action is required to prevent a disbar[]ment in their absence and
     without their i[n]put").

25        A general challenge to a state bar rule is not barred by *Rooker-Feldman*, but courts have

26   questioned at times whether a challenge is properly characterized as a general one. *See Stern v. Nix*, 840
     F.2d 208, 212-13 (3d Cir. 1988) (rejecting plaintiff's contention that he was bringing a general challenge

27   to a state bar rule -- which is not barred by *Rooker-Feldman* -- in light of the relief sought).  Also, at
     least some courts have held that a a federal court lacks subject matter jurisdiction under *Rooker-*

28   *Feldman* where a general challenge is inextricably intertwined with state judicial proceedings. *See*
     *Patmon v. Michigan Supreme Court*, 224 F.3d 504, 509-10 (6th Cir. 2000).

1   questionable additional charges and stretch the imagination in the filing of these charges so that

2   persons are intentionally terrorized and forced into guilty pleas wrongfully"); *Milstein v. Cooley*,

3   257 F.3d 1004, 1008-09 (9th Cir. 2001) ("[I]n initiating a prosecution and in presenting the State's

4   case, the prosecutor is immune from a civil suit for damages under § 1983.  This immunity covers

5   the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious

6   prosecution [because] these activities are intimately associated with the judicial phase of the

7   criminal process.") (internal quotation marks omitted).

8       For the fourteenth cause of action, asserted against the Fire Defendants, the Insurance

9   Defendants, Doe 21, and Mr. McAlpine, it is not clear that there is a cause of action for "terrorist

10  threat" and it is not clear what the alleged "other violations of federal law" are.

11      While there may be deficiencies in Mr. Morris's complaint for the reasons stated above, the

12  Court is not at this juncture convinced that all of the claims asserted have no merit such that the case

13  must be dismissed altogether.  Accordingly, the Court does not, pursuant to § 1915(e)(2), dismiss the

14  case filed by Mr. Morris.  This ruling, however, shall not bar any Defendant from moving to dismiss

15  a claim asserted in Mr. Morris's complaint pursuant to Federal Rule of Civil Procedure 12 or any

16  other applicable law.

17      IT IS ORDERED that the application to proceed in forma pauperis is GRANTED and that

18  the Clerk issue summons.   IT IS FURTHER ORDERED that the U.S. Marshal for the Northern

19  District of California serve, without prepayment of fees, a copy of the complaint, any amendments,

20  scheduling orders, attachments, plaintiff's affidavit and this order upon the defendant.

21      IT IS SO ORDERED.

22

23  Dated:  November 29, 2007

24  _____
    EDWARD M. CHEN
25  United States Magistrate Judge

26

27

28