1  MARIE M. MOFFAT (62167)
   LAWRENCE C. YEE (84208)
2  MARK TORRES-GIL (91597)
   DANIELLE A. LEE (223675)
3  **STATE BAR OF CALIFORNIA**
   **OFFICE OF GENERAL COUNSEL**
4  180 Howard Street
   San Francisco, CA 94105-1639
5  Telephone: (415) 538-2339
   Fax: (415) 538-2321
6  Email: danielle.lee@calbar.ca.gov

7
   Attorneys for Defendants The State Bar
8  Of California, State Bar Board of Governors,
   Lawyers Assistance Program
9

10              IN THE UNITED STATES DISTRICT COURT

11       FOR THE NORTHERN DISTRICT OF CALIFORNIA (San Francisco)

12
   GREGORY A. MORRIS,                    STATE BAR DEFENDANTS' REQUEST
13                                        FOR JUDICIAL NOTICE IN SUPPORT
           Plaintiff,                     OF STATE BAR DEFENDANT'S
14                                        MOTION TO DISMISS
   v.
15                                        Case No. 3:07-cv-02890-EMC
   STATE BAR OF CALIFORNIA, et al.
16
           Defendants.
17
                                         Date:    March 12, 2008
18                                       Time:    10:30 a.m.
                                         Place:   Courtroom C, 15th Floor
19                                       Judge: Hon. Mag. Edward M. Chen_____

20
         The State Bar of California, its Board of Governors, the Lawyers' Assistance Program, and
21
   the Office of the Chief Trial counsel (collectively, the "State Bar Defendants") hereby
22
   respectfully request, pursuant to section 201 of the Federal Rules of Evidence, that the Court take
23
   judicial notice of the following documents filed in California State Bar Court Case No. 04-H-
24
   11843:
25
   1. February 17, 2006 State Bar Court Decision and Order of Involuntary Active Enrollment, a
26
   true and correct copy of which is attached hereto as Exhibit A.
27

28

                                              **1**

1  2. August 25, 2004 "Motion for Late Opposition; Motion to Enter Default; Motion to Set Aside

2  Default," "Declaration of Greg Morris" and "Request for Time to Comply with Terms of

3  Probation," true and correct copies of which are attached hereto as Exhibit B.

4  3. September 14, 2004 "Order Granting Motion to Set Aside Entry of Default, a true and correct

5  copy of which is attached hereto as Exhibit C.

6  4. August 22, 2005 "Motion to Abate; Motion to Continue; Motion to Vacate; Motion for

7  Continuance, Motion to Withdraw Plea State Bar Rules of Procedure 203; 115, 117; California

8  Rules of Civil Procedure: 473" and "Points and Authorities in support of Motion to Vacate;

9  Motion to Set Aside Guilty Plea; Motion for Additional Time to Respond," true and correct

10  copies of which are attached hereto as Exhibit D.

11  5. October 4, 2005 Order Denying Motion to Vacate Default and Other Related Motions, a true

12  and correct copy of which is attached hereto as Exhibit E.

13  6. June 13, 2006 California Supreme Court Order S142424, "In re Gregory A. Morris, on

14  Discipline," a true and correct copy of which is attached hereto as Exhibit F.

15

16     Dated:  January 30, 2008                    Respectfully submitted,

17                                                MARIE M. MOFFAT
                                                  LAWRENCE C. YEE
18                                                MARK TORRES-GIL
                                                  DANIELLE LEE
19
                                           By:   /s/ Danielle Lee _____
20                                               Danielle Lee

21                                               Attorneys for Defendants the State Bar Of
                                                 California, the State Bar Board of Governors,
22                                               State Bar Lawyers Assistance
                                                 Program, and the State Bar Office
23                                               of the Chief Trial Counsel.

24

25

26

27

28

Req. Jud. Not. In Support of Def's Motion to Dismiss                    07-CV-02890 EMC

PROOF OF SERVICE BY MAIL

I, Kristin Ely, hereby declare: that I am over the age of eighteen years and am not a party to the within above-entitled action, that I am employed in the City and County of San Francisco, that my business address is The State Bar of California, 180 Howard Street, San Francisco, CA 94105.

On January 30, 2008, following ordinary business practice, I placed for collection for mailing at the offices of the State Bar of California, 180 Howard Street, San Francisco, California 94105, one copy of fully prepaid in an envelope addressed as follows:

Gregory Morris
260092-0674243
P. 0. Box 872
Fresno, California 93712

I am readily familiar with the State Bar of California's practice for collection and processing correspondence for mailing with the U.S. Postal Service and, in the ordinary course of business, the correspondence would be deposited with the U.S. postal mail service on the day on which it is collected at the business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Francisco, California this 30th day of January 2008.


＿＿＿＿/s/Kristin Ely＿＿＿＿＿＿＿＿＿＿＿

# Exhibit A

## STATE BAR COURT OF CALIFORNIA

## HEARING DEPARTMENT - SAN FRANCISCO

| | |
|---|---|
| In the Matter of<br><br>**GREGORY A. MORRIS,**<br><br>**Member No. 91425,**<br><br>A Member of the State Bar. | **Case No. 04-H-11843; 04-O-14241**<br>**[04-O-14108; 04-O-15199;**<br>**04-O-15642; 05-O-00021]**<br><br>**DECISION AND ORDER OF**<br>**INVOLUNTARY INACTIVE**<br>**ENROLLMENT** |

)

## INTRODUCTION

The above-entitled consolidated matter was submitted for decision effective November 22, 2005, after the State Bar of California, Office of the Chief Trial Counsel ("OCTC") waived the hearing in this matter and submitted a brief on the issues of culpability and discipline. At the time this matter was submitted for decision, OCTC was represented by Deputy Trial Counsel Manuel Jimenez. For the reasons set forth below, respondent Gregory A. Morris ("respondent") had his default entered in both Case No. 04-H-11843 and Case No. 04-O-14241 which were later consolidated by the court.

In light of respondent's culpability in this proceeding, and after considering any and all aggravating and mitigating circumstances surrounding respondent's misconduct, the court recommends that respondent be disbarred from the practice of law and that his name be stricken from the roll of attorneys in this state. It is also recommended that respondent be ordered to comply with rule 955 of the California Rules of Court.

## PERTINENT PROCEDURAL HISTORY

### Case no. 04-H-11843

On May 28, 2004, OCTC filed and properly served a Notice of Disciplinary Charges ("NDC") on respondent by certified mail, return receipt requested, at his official membership records address (official address) maintained by respondent pursuant to Business and Professions Code section 6002.1, subdivision (a).[1]   The copy of the NDC was returned by the U.S. Postal Service bearing the stamp: "Return to Sender- Morris 8477 N. Del Mar Ave., Fresno, CA 93711-6020" (alternate address).[2]   A courtesy copy of the NDC was sent to the alternate address on June 18, 2004, and was not returned as undeliverable or for any other reason.

On June 9, 2004, notice of a status conference scheduled for July 12, 2004, was properly served upon respondent by first-class mail, postage prepaid, at his official address.  He did not appear at the status conference, however.  On July 13, 2004, an order memorializing the status conference and indicating that the matter would proceed by default was filed and properly served upon respondent at his official address by first-class mail, postage prepaid.

Respondent did not file a response to the NDC.  (Rules Proc. of State Bar, rule 103.)[3]

On July 8, 2004, a motion for entry of default was properly served on respondent at his official address by certified mail, return receipt requested.  The motion advised him that minimum discipline of actual suspension for one year and until he complied with standard

---

[1] Future references to section(s) are to the California Business and Professions Code.

[2] On May 3, 2004, a 20-day letter was mailed to respondent at his official address and was not returned as undeliverable or for any other reason.

[3] Unless otherwise indicated, future references to rules are to the Rules of Procedure of the State Bar of California.

1.4(c)(ii), Rules Proc. of State Bar, tit. IV, Stds. for Atty. Sanctions for Prof. Misconduct[4] would be sought if he was found culpable.

On July 13, 2004, a first amended motion for entry of default was properly served on respondent at his official address by certified mail, return receipt requested. A copy was also sent to his alternate address. The motion advised him that minimum discipline of actual suspension for one year and until he complied with standard 1.4(c)(ii) would be sought if he was found culpable.[5] He did not respond to the motion. On July 29, 2004, the court entered respondent's default and enrolled him inactive effective three days after service of the order. The order was properly served on him at his official address on that same date by certified mail, return receipt requested. The return receipt card indicated a delivery date of August 10, 2004, and bore the signature purportedly of "Sylvia Morris." Respondent's official address on the return receipt was marked out and the alternate address was inserted.

On August 18, 2004, OCTC filed a request for waiver of hearing and brief on culpability and discipline and properly served them on respondent at his official and alternate addresses.[6]

By order filed and properly served on September 15, 2004, respondent's motion to set aside the default, among other things, was granted and the inactive enrollment terminated. Respondent's proposed answer to the NDC was deemed filed on August 25, 2004, the date he filed the motion.

On September 16, 2004, the court issued an order denying respondent's motion to extend the time to comply with the conditions of his reproval. The order was properly served on him at his official address by first-class mail, postage prepaid, on September 16, 2004.

_____

[4]Unless otherwise indicated, future references to standard or std. are to this source.

[5] The court grants OCTC's request to judicially notice respondent's official addresses to the date of the filing of this decision. (Evidence Code section 452, subdivision (h).)

[6]Exhibit 1 attached to OCTC's brief is admitted into evidence.

On September 22, 2004, a notice of a status conference to be held on November 15, 2004, was properly served on respondent at his official address by first-class mail, postage prepaid.

Respondent did not appear at the November 15, 2004, status conference. The next day, he was properly served[7] with a status conference order at his official address by first-class mail, postage prepaid. The order advised him that a further status conference was set for November 29, 2004. It also indicated that, if he did not file a response by November 28, 2004, his default would be entered.

At the November 29, 2004, status conference, a settlement conference was set for January 28, 2005, followed by a further status conference on January 31, 2005. Respondent was present at this status conference and he was properly served at his official address (incorrect zip code) with an order memorializing same.

Respondent participated at the January 28, 2005, settlement conference. A further settlement conference was set for March 18, 2005. He was properly served at his official address (incorrect zip code) with an order memorializing the settlement conference and also advising him to update his State Bar membership records information.

Respondent did not appear at the January 31, 2005, status conference. On that same day, he was properly served at his official address (incorrect zip code) with an order indicating that a status conference would be held on March 21, 2005.

On February 18, 2005, the court issued an order granting OCTC's unopposed motion to compel respondent to appear at his deposition. The court ordered respondent to appear at his deposition on February 25, 2005, and to produce for inspection and copying all documents and

---

[7]The declaration for service of this order and some other subsequent documents bore an incorrect zip code (93705 rather than 93703). The error is insignificant. Respondent appeared at the November 29 status conference and participated in other matters as well. Documents which contain this error will be indicated by the parenthetical notation (incorrect zip code).

-4-

things responsive to OCTC's request as set forth in the notice of deposition. Respondent was also warned that he would be subject to sanctions if he did not appear for his deposition. He was specifically advised that, if he did not appear for his deposition, the court would consider striking his answer to the complaint and proceeding by default. The order was properly served on respondent on February 18, 2005, at his official address (incorrect zip code).

On March 1, 2005, OCTC filed and properly served a motion for terminating sanctions for respondent's failure to appear for his deposition.[8] It was served on respondent at his current official address and at his previous official address on E. Mariner's Circle in Fresno.[9]

Respondent appeared at the March 21, 2005, status conference. The next day, he was properly served with an order at his official address (incorrect zip code) by first-class mail, postage prepaid. The order advised him that a status conference had been scheduled for April 4, 2005, and further noted that his attorney must be in court on April 4 or the court would file an order of terminating sanctions. The order was not returned as undeliverable.

Respondent did not appear at the April 4, 2005, status conference but counsel Carole Langford ("Langford") did. Langford and other counsel, Thomas R. Jones ("Jones"), were served with the post-status conference order. Another status conference was set for the next day, April 5, 2005, to determine whether respondent had an attorney who was willing to enter a general appearance, otherwise the court would issue an order of terminating sanctions.

At the April 5, 2005, status conference, respondent did not appear personally but counsel Jones did. Respondent was ordered to attend his deposition prior to the next settlement conference on May 2, 2005.

---

[8]On February 25, 2005, more than two hours after the deposition was scheduled to commence, respondent sent or caused to be sent correspondence via facsimile indicating that he was in the process of retaining counsel and that he would not be attending his deposition.

[9]Respondent's official address changed on November 15, 2004.

-5-

On May 2, 2005, OCTC filed a motion for terminating sanctions due to respondent's failure to comply with discovery orders by not attending his deposition.

Respondent appeared with Langford and Jones at a settlement conference held on May 4, 2005. Another settlement conference was scheduled for May 16, 2005. Respondent did not appear at the May 16, 2005, settlement conference.

On May 24, 2005, the court issued an order which was properly served on Jones and Langford setting a status conference for June 6, 2005, and otherwise memorializing the status conference held on May 23, 2005. Respondent did not appear at the May 23, 2005, status conference. The court's order noted that Jones would be filing a motion to withdraw as counsel and that the court would issue an order regarding terminating sanctions by June 8, 2005.

Respondent did not appear at the June 6, 2005, status conference. Jones did appear. On that same date, respondent was properly served with a status conference order at his official address by first-class mail, postage prepaid. The order indicated that Jones was relieved as counsel. It also advised respondent that an order to show cause (OSC) was set for June 13, 2005, due to his failure to appear at two settlement conferences and two status conferences. It also advised him that if he did not appear at the OSC, the court would strike his answer and proceed by default. The order was returned as undeliverable by the United States Postal Service. The envelope bore a sticker stating: "Return to sender. Moved left no address. Unable to forward. Return to sender."[10]

Respondent did not appear at the June 13 OSC. On June 14, 2005, he was properly served with a status conference order at his official address by first-class mail, postage prepaid,

---

[10]Future references to return sticker are to Postal Service stickers containing these same statements.

advising him that his answer had been stricken and that the matter would proceed by default. The order was returned as undeliverable and bore a return sticker.

On June 21, 2005, the court entered respondent's default and enrolled him inactive effective three days after service of the order. The order was properly served on him at his official address on that same date by certified mail, return receipt requested. The order was returned as undeliverable and bore a return sticker.

On August 29, 2005, respondent filed a motion to abate and continue the case and vacate the default, among other things. Respondent used a Cedar Avenue address in Fresno as his address on the caption of the pleading. By order filed on October 4, 2005, the court denied this motion. Respondent was properly served with the order at his official address and the Cedar Avenue address by first-class mail, postage prepaid. Only the copy sent to Cedar Avenue was returned as undeliverable. That envelope bore a stamp stating "return to writer."

**Case No. 04-O-14241**

The NDC was filed and properly served on respondent on June 29, 2005, at his official address, by certified mail, return receipt requested.

On July 8, 2005, respondent was properly served at his official address with a notice advising him, among other things, that a status conference would be held on August 22, 2005. This correspondence was returned as undeliverable and bore a return sticker.

Respondent did not appear at the August 22 status conference. The next day, he was properly served with a status conference order at his official address by first-class mail, postage prepaid. The order advised him that the matter was to proceed by default. This correspondence was returned as undeliverable and bore a return sticker.

Respondent did not file a responsive pleading to the NDC. On August 25, 2005, a motion for entry of default was properly served on respondent at his official address by certified

mail, return receipt requested. It was filed on August 26, 2005. The motion advised him that minimum discipline of disbarment would be sought if he was found culpable. He did not respond to the motion.

On September 16, 2005, the court entered respondent's default and enrolled him inactive effective three days after service of the order. The order was properly served on him at his official address on that same date by certified mail, return receipt requested, and a courtesy copy was also sent to the Cedar Avenue address. Only the copy sent to Cedar Avenue was returned as undeliverable. That envelope contained the handwritten notation: "This person does not live here."

**Both Cases**

On October 4, 2005, the court filed and properly served an order consolidating the two cases and submitting both cases for decision on October 6, 2005. The order was properly served on him at his official address on that same date by first-class mail, postage prepaid, and a courtesy copy was also sent to the Cedar Avenue address. Only the copy sent to the official address was returned as undeliverable and bore a return sticker.

On November 22, 2005, OCTC filed a request for a wavier of the hearing in the matter and brief on the issues of culpability and discipline.

On December 2, 2005, the court filed and properly served on respondent an order regarding the submission date. The order was properly served on him at his official and Cedar Avenue addresses on that same date by first-class mail, postage prepaid. Only the copy sent to the official address was returned as undeliverable and bore a return sticker.

The matter was submitted for decision without hearing on November 22, 2005.

-8-

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction

Respondent was admitted to the practice of law in the State of California on December 18, 1979, was a member at all times pertinent to these charges, and is currently a member of the State Bar of California.

### Facts - Case No. 04-H-11843 – Count One - Failure to Comply with Reproval Conditions

On December 19, 2002, the State Bar Court filed the Stipulation Re Facts, Conclusions of Law and Disposition and Order Approving Private Reproval in *In the Matter of Gregory A. Morris,* case number 02-O-10657 ("Stipulation"). The Stipulation ordered that respondent be privately reproved upon various conditions.

Among the conditions of reproval ordered by the Court were the following:

a.      Respondent would attend Ethics School and provide proof of passage of the test given at the end of such session to the Probation Unit of the Office of the Chief Trial Counsel within one year of the effective date of the court's order; and

b.      Respondent would submit written quarterly reports signed under penalty of perjury, to the Probation Unit on each January 10, April 10, July 10, and October 10 of the condition period attached to the reproval. If the first quarterly report would cover less than 30 days, that report was to be submitted on the next following quarter date and cover the extended period. In addition, a final report was due no earlier than 20 days before the last day of the condition period. The condition period of the reproval would be one year.

The reproval became effective January 9, 2003.

On or about December 19, 2002, a copy of the approved Stipulation was properly served upon respondent at his official State Bar membership address of record, by a case administrator of the State Bar Court, by first-class mail, postage prepaid, by depositing for collection by the United States Postal Service in the ordinary course of business. The United States Postal Service did not return this item as undeliverable or for any other reason.

On or about January 9, 2003, an employee of the Probation Unit sent respondent a letter outlining respondent's obligations pursuant to the Stipulation, along with a copy of the relevant

-9-

portions of the Stipulation. This letter was properly mailed to respondent at his official State Bar membership address of record by first-class mail, postage prepaid, by depositing for collection by the United States Postal Service in the ordinary course of business. The United States Postal Service did not return this item as undeliverable or for any other reason.

On or about November 12, 2003, an employee of the Probation Unit contacted respondent by telephone and advised respondent that his July 10 and October 10 quarterly reports were defective. On or about the same date, the Probation Unit employee faxed to respondent a copy of the appropriate quarterly report form and advised respondent to resubmit the quarterly reports.

To date, respondent has neither resubmitted the required written quarterly reports due July 10 and October 10, 2003, nor filed his final report which was due no later than January 9, 2004.

As of May 28, 2004, respondent had not filed a motion to extend the time to file the required quarterly reports.

As of May 28, 2004, respondent has not provided proof of attending Ethics School.

As of May 28, 2004, respondent has not filed a motion to extend time to attend Ethics School.

## Conclusion of Law – Case No. 04-H-11843 - Count One - Rule 1-110 of the Rules of Professional Conduct[11]

OCTC proved by the clear and convincing evidence that respondent wilfully violated rule 1-110. Rule 1-110 provides that an attorney must comply with conditions attached to reprovals. Respondent wilfully violated rule 1-110 by: (1) failing to resubmit the quarterly reports that were due July 10 and October 10, 2003; (2) failing to submit the final report due no later than January 9, 2004; and (3) failing to provide proof of his attendance at Ethics School.

---

[11]Unless otherwise indicated, all further references to rules refer to the Rules of Professional Conduct of the State Bar of California.

**Facts - Case No. 04-O-14241 – Count One - State Bar Investigation**

     At all times relevant to Count One of this Notice of Disciplinary Charges, respondent maintained client trust account 16646-03021 at Bank of America ("trust account").

     Between April 2004 through October 2004, respondent issued checks from the trust account when he knew or reasonably should have known that there were insufficient funds in the account to allow the bank to honor the checks when presented for payment, inclusive of the following:

     1.    Respondent issued a counter check in the amount of $60.00. The counter check was presented for payment on or about April 27, 2004, when the trust account balance was $28.88.

     2.    Respondent issued a counter check in the amount of $50.46. The counter check was presented for payment on or about April 29, 2004, when the trust account balance was $14.88.

     3.    Respondent issued a counter check in the amount of $60.00. The counter check was presented for payment on or about May 3, 2004, when the trust account balance was $.88.

     4.    Respondent issued check number 1001 in the amount of $230.00. Check number 1001 was presented for payment on May 18, 2004, when the trust account balance was $86.42.

     5.    Respondent issued check number 2823 in the amount of $65.00. Check number 2823 was presented for payment on May 18, 2004, when the trust account balance was $56.42.

     6.    Respondent issued check number 2857 in the amount of $250.00. Check number 2857 was presented for payment on June 24, 2004, when the trust account balance was $50.84.

     7.    Respondent issued check number 2851 in the amount of $400.00. Check number 2851 was presented for payment on June 30, 2004, when the trust account balance was

$147.84. Check number 2851 was presented for payment a second time, on July 6, 2004, when the trust account balance was $73.84.

   8.  Respondent issued check number 2859 in the amount of $200.00. Check number 2859 was presented for payment on June 30, 2004, when the trust account balance was $147.84. Check number 2859 was presented for payment a second time, on July 6, 2004, when the trust account balance was $73.84.

   9.  Respondent issued check number 2883 in the amount of $200.00. Check number 2883 was presented for payment on July 1, 2004, when the trust account balance was $81.84. Check number 2883 was presented for payment a second time, on July 7, 2004, when the trust account balance was $-12.16.

   10.  Respondent issued check number 2852 in the amount of $100.00. Check number 2852 was presented for payment on July 8, 2004, when the trust account balance was $-45.16.

   11.  Respondent issued check number 2913 in the amount of $28.47. Check number 2913 was presented for payment on August 9, 2004, when the trust account balance was $.10. Check number 2913 was presented for payment a second time on August 11, 2004, when the trust account balance was $-65.90.

   12.  Respondent issued check number 2912 in the amount of $42.36. Check number 2912 was presented for payment on August 10, 2004, when the trust account balance was $-32.90. Check number 2912 was presented for payment a second time on August 12, 2004, when the trust account balance was $-98.90.

  Respondent also caused an electronic debit to occur on or about August 25, 2004, in the amount of $100.00. When the electronic debit was presented for payment the trust account balance was $100.10. The bank had placed a hold on the funds in the account which included $7,123.00.

  Respondent further caused an electronic debit to occur when he issued a counter check on October 21, 2004 in the amount of $200.00. At the time respondent issued the counter check, there was a hold on his account which included a deposit of $4,900.00.

**Conclusion of Law - Case No. 04-O-14241 – Count One - Business and Professions Code Section 6106**

OCTC proved by clear and convincing evidence that respondent wilfully violated Business and Professions Code section 6106. Section 6106 provides that the commission of any act involving moral turpitude, dishonesty or corruption constitutes a cause for suspension or disbarment. By issuing checks and counter checks, and causing electronic debits from the trust account when he knew or reasonably should have known that there were insufficient funds in the account to allow the bank to honor the checks, counter checks and electronic debits when presented for payment, respondent committed acts involving moral turpitude, dishonesty or corruption in wilful violation of section 6106.[12]

**Facts - Case No. 04-O-14241 – Count Two - State Bar Investigation**

At all relevant times, respondent maintained client trust account 16646-03021 at Bank of America ("trust account").

From April 2002 through December 2004, respondent caused 191 electronic debits/withdrawals totaling $171,552.55 in cash to be issued from his client trust account for personal and non-client related business purposes.

From November 2003 through August 2004, respondent issued at least seven checks and payments from the trust account totaling $2,114.61 for personal and non-client related business purposes.

**Conclusion of Law - Case No. 04-O-14241 – Count Two - Rule 4-100(A)**

OCTC proved by clear and convincing evidence that respondent wilfully violated rule 4-100(A). Rule 4-100(A) requires that all funds received or held for the benefit of clients, including advances for costs and expenses, must be deposited and maintained in an identifiable bank account which is properly labeled as a client trust account. With limited exceptions not applicable here, no funds belonging to the attorney can be deposited or commingled in a client trust account. Except for narrow exceptions set forth in rule 4-100(A), trust accounts are not to

---

[12]The court will not base culpability in this matter on the electronic debits as there is no clear and convincing evidence that respondent was aware of the hold on the account.

be used for personal purposes. (*In the Matter of Heiser* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 47, 54 [referring to rule 8-101(A), the precursor of rule 4-100(a)].) Respondent wilfully violated rule 4-100(A) by improperly withdrawing cash, issuing checks and making payments from the trust account for both his own personal and non-client related business purposes.

## Facts - Case No. 04-O-14241 – Count Three - State Bar Investigation

At all relevant times, respondent maintained client trust account 16646-03021 at Bank of America ("trust account").

From November 2002 through December 2004, respondent deposited or caused to be deposited his own personal funds totaling $27,853.58 into the trust account as follows:

1.  On or about November 18, 2002, respondent deposited the sum of $4,000.00 from Matt Morris into his client trust account.

2.  On or about December 27, 2002, respondent deposited the sum of $100.00 from a transfer into his client trust account.

3.  On or about December 30, 2002, respondent deposited the sum of $125.00 in a currency deposit into his client trust account.

4.  On or about February 20, 2003, respondent deposited the sum of $200.00 in a currency deposit into his client trust account.

5.  On or about June 27, 2003, respondent deposited the sum of $4,000.00 from Matt Morris into his client trust account.

6.  On or about October 30, 2003, respondent deposited the sum of $108.00 in a currency deposit into his client trust account.

7.  On or about January 6, 2004, respondent deposited the sum of $6,000.00 in a currency deposit into his client trust account.

8.  On or about April 19, 2004, respondent deposited the sum of $892.86 from SCI Funeral Service into his client trust account.

9.  On or about April 22, 2004, respondent deposited the sum of $892.86 from SCI Funeral Service into his client trust account.

10.  On or about May 28, 2004, respondent deposited the sum of $9,100.00 in a currency deposit into his client trust account.

11.  On or about July 2, 2004, respondent deposited the sum of $842.00 from Matt Morris into his client trust account.

12.  On or about August 16, 2004, respondent deposited the sum of $500.00 in a currency deposit into his client trust account.

13.  On or about November 10, 2004, respondent deposited the sum of $100.00 in a currency deposit into his client trust account.

14.  On or about December 20, 2004, respondent deposited the sum of $100.00 in a currency deposit into his client trust account.

15.  On or about December 23, 2004, respondent deposited the sum of $892.86 from SCI Funeral Service into his client trust account.

**Conclusion of Law - Case No. 04-O-14241 – Count Three - Rule 4-100(A)**

OCTC failed to prove by clear and convincing evidence that respondent wilfully violated rule 4-100(A) by depositing a total of $27,853.58 of his own personal funds into the trust account from November 2002 through December 2004. As discussed below, the record clearly establishes that during that same time period, respondent misappropriated at least $161,863.92 from his cleint trust account. Even though respondent defaulted, the court must nonetheless resolve all reasonable doubts in favor of respondent. (See *Lawhorn v. State* Bar (1987) 43 Cal.3d 1357, 1367.) Accordingly, the court must presume that, when respondent deposited $27,853.58 of his own funds into the trust account, he was making partial restoration of the more than $161,000.00 he misappropriated. "An attorney's restoration of funds wrongfully withdrawn from a trust account is not a further violation of the Rules of Professional Conduct as a prohibited 'commingling' of attorney and client funds." (*Guzzetta v. State Bar* (1987) 43 Cal.3d 962, 978-979.) Accordingly, count three is dismissed with prejudice.

**Facts - Case No. 04-O-14241 – Counts Four and Five - State Bar Investigation**

At all relevant times, respondent maintained client trust account 16646-03021 at Bank of America ("trust account").

-15-

At all relevant times, respondent represented Emilia Rivera-Rodriguez ("Rivera-Rodriguez") in an insurance claim matter.

On June 20, 2002, Clarendon National Insurance issued check number 00993123 in the amount of $2,625.00 to Rivera-Rodriguez and respondent.

Prior to the deposit of Clarendon National Insurance check number 00993123, respondent's trust account balance was $23,958.26.

On or about July 12, 2002, respondent deposited check number 00993123 from Claredon National Insurance into his client trust account bringing the balance to $26,583.26.

At all times from the time of the deposit on July 12, 2002, until respondent gave Rivera-Rodriguez her share of the settlement proceeds, respondent should have maintained the sum of $1,750.00 ($2,625.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Rivera-Rodriguez or to any other person or entity for her benefit.

On November 15, 2002, respondent's trust account balance fell to $180.67.

Respondent misappropriated at least $1,569.33 ($1,750.00 - $180.67) of Rivera-Rodriguez's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Dea Benson ("Benson") in an insurance claim matter.

On August 19, 2002, Farmers Insurance issued check number 6056030167 in the amount of $3,253.00 to Benson and respondent.

Prior to the deposit of Farmers Insurance check number 6056030167, respondent's trust account balance was $14,430.12.

On or about August 27, 2002, respondent deposited check number 6056030167 from Farmers Insurance into his client trust account bringing the balance to $17,683.12.

At all times from the time of the deposit on August 27, 2002, until respondent gave Benson her share of the settlement proceeds, respondent should have maintained the sum of $2,168.78 ($3,253.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Benson or to any other person or entity for her benefit.

On November 15, 2002, respondent's trust account balance fell to $180.67.

Respondent misappropriated at least $1,988.11 ($2,168.78 - $180.67) of Benson's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Carrier Hodgson ("Hodgson") in an insurance claim matter.

On September 24, 2002, Farmers Insurance issued check number 1056133274 in the amount of $10,000 to Hodgson and respondent.

Prior to the deposit of Farmers Insurance check number 1056133274, respondent's trust account balance was $12,271.93.

On or about September 25, 2002, respondent deposited check number 1056133274 from Farmers Insurance into his client trust account bringing the balance to $22,271.93.

At all times from the time of the deposit on September 25, 2002, until respondent gave Hodgson his share of the settlement proceeds, respondent should have maintained the sum of $6,667.00 ($10,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Hodgson or to any other person or entity for his benefit.

On November 15, 2002, respondent's trust account balance fell to $180.67.

Respondent misappropriated at least $6,486.33 ($6,667.00- $180.67) of Hodgson's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Jerrie Smithey ("Smithey") in an insurance claim matter.

On October 29, 2002, Allstate Insurance issued check number 90870977 in the amount of $15,000.00 to Smithey and respondent.

Prior to the deposit of Allstate Insurance check number 90870977, respondent's trust account balance was $9,419.08.

On or about November 22, 2002, respondent deposited check number 90870977 from Allstate Insurance into his client trust account bringing the balance to $24,419.08.

At all times from the time of the deposit on November 22, 2002, until respondent gave Smithey his share of the settlement proceeds, respondent should have maintained the sum of $10,000.00 ($15,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Smithey or to any other person or entity for his benefit.

On December 26, 2002, respondent's trust account balance fell to $1,599.04.

Respondent misappropriated at least $8,400.96 ($8,400.96- $1,599.04) of Smithey's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Megan Morris ("Morris") in an insurance claim matter.

On March 3, 2003, First Colony Life Insurance issued check number 1201608184 in the amount of $55,000.00 to Morris.

Prior to the deposit of First Colony Life Insurance check number 1201608184 respondent's trust account balance was $8,700.51.

On or about March 7, 2003, respondent deposited check number 1201608184 from First Colony Life Insurance into his client trust account bringing the balance to $63,700.51.

At all times from the time of the deposit on March 7, 2003, until respondent gave Morris her share of the settlement proceeds, respondent should have maintained the sum of $36,668.50 ($55,000 -33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Morris or to any other person or entity for her benefit.

On May 1, 2003, respondent's trust account balance fell to $1,584.77.

Respondent misappropriated at least $35,083.78 ($36,668.50 -$1,584.77) of Morris's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Alicia Juanita Barajas ("Barajas") in an insurance claim matter.

-18-

On June 6, 2003, Prudential Financial issued check number 13655112 in the amount of $12,000.00 to Barajas and respondent.

Prior to the deposit of Prudential Financial's check number 13655112, respondent's trust account balance was $7,185.51.

On or about June 13, 2003, respondent deposited check number 13655112 from Prudential Financial into his client trust account bringing the balance to $19,185.51.

At all times from the time of the deposit on June 13, 2003, until respondent gave Barajas her share of the settlement proceeds, respondent should have maintained the sum of $8,000.40 ($12,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Barajas or to any other person or entity for her benefit.

On July 14, 2003, respondent's trust account balance fell to $296.20.

Respondent misappropriated at least $7,704.20 ($8,000.40 -$296.20) of Barajas's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Mark Butz ("Butz") in an insurance claim matter.

On July 14, 2003, Farmers Insurance issued check number 199212325 in the amount of $8,000.00 to Butz and respondent.

Prior to the deposit of Farmers Insurance check number 199212325, respondent's trust account balance was $296.20.

On or about July 15, 2003, respondent deposited check number 199212325 from Farmers Insurance into his client trust account bringing the balance to $8,296.20.

At all times from the time of the deposit on July 15, 2003, until respondent gave Butz his share of the settlement proceeds, respondent should have maintained the sum of $5,333.60 ($8,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Butz or to any other person or entity for his benefit.

On August 4, 2003, respondent's trust account balance fell to $915.20.

Respondent misappropriated at least $4,418.40 ($5,333.60 - $915.20) of Butz's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented David and Bobbie Mawhorier ("the Mawhoriers")in an insurance claim matter.

On July 30, 2003, Auto-Owners Insurance issued check number 1-21068991 in the amount of $75,000.00 to the Mawhoriers and respondent.

Prior to the deposit of Auto-Owners Insurance check number 1-21068991, respondent's trust account balance was $915.20.

On or about August 7, 2003, respondent deposited check number 1-21068991 from Auto-Owners Insurance into his client trust account bringing the balance to $75,915.20.

At all times from the time of the deposit on August 7 2003, until respondent gave the Mawhoriers their share of the settlement proceeds, respondent should have maintained the sum of $50,025.00 ($75,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made one disbursement to the Mawhoriers on January 9, 2004, in the amount of $3,000.00; thereafter respondent made no further payments to the Mawhoriers or to any person or entity on their behalf.

On January 6, 2004, respondent's trust account balance fell to $6,055.57.

Respondent misappropriated at least $40,946.93 ($50,025 - $3,000.00 = $47,002.50 - $6,055.57) of the Mawhoriers' share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Darrell Ray Wandell ("Wandell") in an insurance claim matter.

On August 5, 2003, Farmers Insurance issued check number 1335002186 in the amount of $13,000.00 to Wandell and respondent.

Prior to the deposit of Farmers Insurance check number 1335002186, respondent's trust account balance was $75,615.20.

On or about August 8, 2003, respondent deposited check number 1335002186 from Farmers Insurance into his client trust account bringing the balance to $88,615.20.

At all times from the time of the deposit on August 8, 2003, until respondent gave Wandell his share of the settlement proceeds, respondent should have maintained the sum of $8,667.10 ($13,000.00 -33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Wandell or to any other person or entity for his benefit.

On January 9, 2004, respondent's trust account balance fell to $3,055.57.

Respondent misappropriated at least $5,611.53 ($8,667.10 - $3,055.57) of Wandell's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Ernesto Espinoza, Jr. ("Espinoza") in an insurance claim matter.

On August 26, 2003, Interinsurance Exchange issued check number 6616883 in the amount of $31,500.00 to Espinoza and respondent.

Prior to the deposit of Interinsurance Exchange's check number 6616883, respondent's trust account balance was $60,395.20.

On or about September 24, 2003, respondent deposited check number 6616883 from Interinsurance Exchange into his client trust account bringing the balance to $91,895.20.

At all times from the time of the deposit on September 24, 2003, until respondent gave Espinoza his share of the settlement proceeds, respondent should have maintained the sum of $21,001.25 ($31,500.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Espinoza or to any other person or entity for his benefit.

On January 9, 2004, respondent's trust account balance fell to $3,055.57.

Respondent misappropriated at least $17,945.68 ($21,001.25 - $3,055.57) of Espinoza's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Loretta Battle ("Battle") in an insurance claim matter.

On September 10, 2003, the City of Fresno issued check number 444067 in the amount of $16,000.00 to Battle and respondent.

-21-

Prior to the deposit of City of Fresno check number 444067, respondent's trust account balance was $ 91,895.20.

On or about September 24, 2003, respondent deposited check number 444067 from the City of Fresno into his client trust account bringing the balance to $107,895.20.

At all times from the time of the deposit on September 24, 2003, until respondent gave Battle her share of the settlement proceeds, respondent should have maintained the sum of $10,667.20 ($16,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made two disbursements on behalf of Battle. The first was on November 7, 2003, to Valley Care Physical Therapy in the amount of $1,300.00; the second was on November 14, 2003, to Alliance Surgery Center in the amount of $2,104.73. Thereafter, respondent made no further disbursements to Battle or to any person or entity for Battle's benefit.

On January 9, 2004, respondent's trust account balance fell to $3,055.57.

Respondent misappropriated at least $4,206.90 ($10,667.20 - $1,300.00 = $9,367.20 - $2,104.73 = $7,262.47- $3,055.57) of Battle's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Josephine Newchurch ("Newchurch") in an insurance claim matter.

On May 30, 2003, Farmers Insurance issued check number 8198106273 in the amount of $2,250.00 to Newchurch and respondent.

Prior to the deposit of Farmers Insurance check number 8198106273, respondent's trust account balance was $69,512.20.

On or about October 3, 2003, respondent deposited check number 8198106273 from Farmers Insurance into his client trust account bringing the balance to $71,762.20.

At all times from the time of the deposit on October 3, 2003, until respondent gave Newchurch her share of the settlement proceeds, respondent should have maintained the sum of $1,500.08 ($2,250.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Newchurch or to any other person or entity for her benefit.

-22-

On April 15, 2004, respondent's trust account balance fell to $88.16.

Respondent misappropriated at least $1,411.92 ($1,500.08 - $88.16) of Newchurch's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Stefon Sykes ("Sykes") in an insurance claim matter.

On September 5, 2003, Farmers Insurance issued check number 1199213862 in the amount of $4,000.00 to Sykes and respondent.

Prior to the deposit of Farmers Insurance check number 1199213862, respondent's trust account balance was $71,762.20.

On or about October 3, 2003, respondent deposited check number 1199213862 from Farmers Insurance into his client trust account bringing the balance to $75,762.20.

At all times from the time of the deposit on October 03, 2003, until respondent gave Sykes his share of the settlement proceeds, respondent should have maintained the sum of $2,666.80 ($4,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Sykes or to any other person or entity for his benefit.

On April 15 2004, respondent's trust account balance fell to $88.16.

Respondent misappropriated at least $2,578.64 ($2,666.80 - $88.16) of Sykes' share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Jamie Campos ("Campos") in an insurance claim matter.

On September 8, 2003, Western United Insurance issued check number 377204 in the amount of $7,000.00 to Campos and respondent.

Prior to the deposit of Western United Insurance check number 377204, respondent's trust account balance was $70,412.20.

On or about October 14, 2003, respondent deposited check number 377204 from Western United Insurance into his client trust account bringing the balance to $77,412.20.

At all times from the time of the deposit on October 14, 2003, until respondent gave Campos his share of the settlement proceeds, respondent should have maintained the sum of $4,666.90 ($7,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Campos or to any other person or entity for his benefit.

On February 23, 2004, respondent's trust account balance fell to $108.57.

Respondent misappropriated at least $4,558.33 ($4,666.90 - $108.57) of Campos's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Shelton Wriley ("Wriley") in an insurance claim matter.

On October 22, 2003, Safeco Insurance issued check number 92300011 in the amount of $5,000.00 to Wriley and respondent.

Prior to the deposit of Safeco Insurance check number 92300011, respondent's trust account balance was $16,973.09.

On or about November 7, 2003, respondent deposited check number 92300011 from Safeco Insurance into his client trust account bringing the balance to $21,973.09.

At all times from the time of the deposit on November 7, 2003, until respondent gave Wriley his share of the settlement proceeds, respondent should have maintained the sum of $3,333.50 ($5,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Wriley or to any other person or entity for his benefit.

On February 23, 2004, respondent's trust account balance fell to $108.57.

Respondent misappropriated at least $3,224.93 ($3,333. 50 - $108.57) of Wriley's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented the Estate of Glen Morgan ("Morgan") in an insurance claim matter.

On September 8, 2003, RWIC Claims issued check number 222360 in the amount of $4,000.00 to Morgan and respondent.

-24-

Prior to the deposit of RWIC Claims check number 222360, respondent's trust account balance was $17,947.16.

On or about November 19, 2003, respondent deposited check number 222360 from RWIC Claims into his client trust account bringing the balance to $21,947.16.

At all times from the time of the deposit on November 19, 2003, until respondent gave Morgan his share of the settlement proceeds, respondent should have maintained the sum of $2,666.80 ($4,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Morgan or to any other person or entity for his benefit.

On February 23, 2004, respondent's trust account balance fell to $108.57.

Respondent misappropriated at least $2,558.23 ($2,668.80 - $108.57) of Morgan's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Brian Elam ("Elam") in an insurance claim matter.

On July 7, 2004, USAA issued check number 76911726 in the amount of $7,000.00 to Elam and respondent.

Prior to the deposit of USSA's check number 76911726 respondent's trust account balance was $-78.16.

On or about July 16, 2004, respondent deposited check number 76911726 from USAA into his client trust account bringing the balance to $6,921.84.

At all times from the time of the deposit on July 16, 2004, until respondent gave Elam his share of the settlement proceeds, respondent should have maintained the sum of $4,666.90 ($7,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Elam or to any other person or entity for his benefit.

On July 20, 2004, respondent's trust account balance fell to $6.84.

Respondent misappropriated at least $4,660.06 ($4,666.90 -$6.84) of Elam's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Benny Hernandez ("Hernandez") in an insurance claim matter.

Progressive West Insurance issued check number 436047927 in the amount of $6,669.17 to Hernandez, Medicare and respondent.

Prior to the deposit of Progressive West Insurance's check number 436047927, respondent's trust account balance was $39.75.

On or about October 15, 2004, respondent deposited check number 436047927 from Progressive West Insurance into his client trust account bringing the balance to $6,708.92.

At all times from the time of the deposit on October 15, 2004, until respondent gave Hernandez his share of the settlement proceeds, respondent should have maintained the sum of $4,446.34 ($6,669.17 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Hernandez or to any other person or entity for his benefit.

On November 15, 2004, respondent's trust account balance fell to $2.92.

Respondent misappropriated at least $4,443.42 ($4,446.34- $2.92) of Hernandez's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Sheldon Scruggs ("Scruggs") in an insurance claim matter.

On November 23, 2004, Granite State Insurance issued check number 02235148 in the amount of $2,500.00 to Scruggs, Brian O'hara, Esq., and respondent.

Prior to the deposit of Granite State Insurance's check number 02235148 respondent's trust account balance was $2.92.

On or about November 29, 2004, respondent deposited check number 02235148 from Granite State Insurance into his client trust account bringing the balance to $2,502.92.

At all times from the time of the deposit on November 29, 2004, until respondent gave Scruggs his share of the settlement proceeds, respondent should have maintained the sum of $1,666.75 ($2,500.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Scruggs or to any other person or entity for his benefit.

On December 21, 2004, respondent's trust account balance fell to $-22.08.

Respondent misappropriated at least $1,688.83 ($1,666.75 - $(-)22.08) of Scruggs's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Margaret Scruggs ("M. Scruggs") in an insurance claim matter.

On November 23, 2004, Granite State Insurance issued check number 02235149 in the amount of $2,500.00 to M. Scruggs, Brian O'hara, Esq., and respondent.

Prior to the deposit of Granite State Insurance's check number 02235149 respondent's trust account balance was $2,502.92.

On or about November 29, 2004, respondent deposited check number 02235149 from Granite State Insurance into his client trust account bringing the balance to $5,002.92.

At all times from the time of the deposit on November 29, 2004, until respondent gave M. Scruggs her share of the settlement proceeds, respondent should have maintained the sum of $1,666.75 ($2,500.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to M. Scruggs or to any other person or entity for her benefit.

On December 21, 2004, respondent's trust account balance fell to $-22.08.

Respondent misappropriated at least $1,688.83 ($1,666.75 - $(-) 22.08) of M. Scruggs's share of the proceeds of the settlement for his own use.

At all relevant times, respondent represented Margaret and Sheldon Scruggs ("the Scruggs") in an insurance claim matter.

On November 23, 2004, Granite State Insurance issued check number 02235150 in the amount of $1,000.00 to the Scruggs', Brian O'hara, Esq., and respondent.

Prior to the deposit of Granite State Insurance's check number 02235150 respondent's trust account balance was $5,002.92.

-27-

On or about November 29, 2004, respondent deposited check number 02235150 from Granite State Insurance into his client trust account bringing the balance to $6,002.92.

At all times from the time of the deposit on November 29, 2004, until respondent gave the Scruggs their share of the settlement proceeds, respondent should have maintained the sum of $666.70 ($1,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to the Scruggs or to any other person or entity for their benefit.

On December 21, 2004, respondent's trust account balance fell to $-22.08.

Respondent misappropriated at least $688.78 ($1,000.00 - $(-) 22.08) of the Scruggs' share of the proceeds of the settlement for his own use.

**Conclusion of Law - Case No. 04-O-14241 – Count Four - Section 6106**

OCTC proved by clear and convincing evidence that respondent willfully violated section 6106. By misappropriating a total of at least $161,863.92 in settlement proceeds from clients Emilia Rivera-Rodriguez, Dea Benson, Carrier Hodgson, Jerrie Smithey, Megan Morris, Alicia Barajas, Mark Butz, David and Bobbie Mawhoriers, Darrell Ray Wandell, Ernesto Espinoza, Jr., Loretta Battle, Josephine Newchurch, Stefon Sykes, Jamie Campos, Shelton Wriley, the Estate of Glen Morgan, Brian Elam, Benny Hernandez, and Sheldon and Margaret Scruggs between November 2002 and December 2004, respondent committed an act of moral turpitude, dishonesty or corruption in willful violation of section 6106.

**Conclusion of Law - Case No. 04-O-14241 – Count Five - Rule 4-100(A)**

OCTC also proved by clear and convincing evidence that respondent willfully violated rule 4-100(A). By failing to maintain in his client trust account at least $161,863.92 in settlement funds for his clients Emilia Rivera-Rodriguez, Dea Benson, Carrier Hodgson, Jerrie Smithey, Megan Morris, Alicia Barajas, Mark Butz, David and Bobbie Mawhoriers, Darrell Ray Wandell, Ernesto Espinoza, Jr., Loretta Battle, Josephine Newchurch, Stefon Sykes, Jamie Campos, Shelton Wriley, the Estate of Glen Morgan, Brian Elam, Benny Hernandez, Sheldon Scruggs and Margaret Scruggs, until he paid out the appropriate sums to each client, respondent failed to maintain client funds after deposit in his client trust account in willful violation of rule

4-100(A).  It is not duplicative to find that respondent's failure to maintain this $161,863.92 in settlement proceeds in the trust account is both a violation of rule 4-100(A) and section 6106 misappropriation.  (See, e.g., *In the Matter of Hagen* (Review Dept. 1992) 2 Cal. State Bar Ct. Rptr. 153, 169 [attorney misappropriation of $929 violated both trust account rule and section 6106]; see also *In the Matter of Valinoti* (Review Dept.  2002) 4 Cal. State Bar Ct. Rptr. 498, 520.)

**Facts - Case No. 04-O-14241 – Count Six - State Bar Investigation**

On or about September 9, 2004, the State Bar opened a formal investigation and assigned it case number 04-O-14241, based on the allegations raised by a Bank of America reportable actions inquiry.

On or about October 19, 2004, State Bar Investigator Michael Maacks ("Maacks") wrote to respondent with respect to the allegations raised in case no. 04-O-14241.  Maacks specifically requested that respondent provide the State Bar with all client trust account ledger cards and records which related to the allegations raised in case no. 04-O-14241 and maintained pursuant to rule 4-100(C).  Maacks requested that respondent respond to the allegations by November 2, 2004.  Maacks placed the letter in a sealed envelope correctly addressed to respondent at his address as maintained by the State Bar in accordance with Business and Professions Code section 6002.1.  The letter was properly mailed by first-class mail, postage prepaid, by depositing for collection by the U.S. Postal Service in the ordinary course of business.  The U.S. Postal Service did not return the letter sent to respondent as undeliverable or for any other reason.

On or about November 3, 2004, a second notice of allegations contained in case no. 04-O-14241 was sent to respondent.  The letter was placed in a sealed envelope correctly addressed to respondent at his address as maintained by the State Bar in accordance with Business and Professions Code section 6002.1.  The letter was properly mailed by first-class mail, postage prepaid, by depositing for collection by the U.S. Postal Service in the ordinary course of business.  The response to the letter was indicated to be due no later than November 17, 2004.  The U.S. Postal Service did not return the letter sent to respondent as undeliverable or for any other reason.

-29-

To date, respondent has failed to provide the client trust account ledger cards and records maintained pursuant to rule 4-100(C) to the State Bar as requested by State Bar Investigator Maacks. Respondent has not provided an explanation for his failure to provide the ledger cards and records that he should maintain pursuant to rule 4-100(C).

## Conclusion of Law - Case No. 04-O-14241 – Count Six - Rule 4-100(B)(3)

OCTC failed to prove by clear and convincing evidence that respondent willfully violated rule 4-100(B)(3). Rule 4-100(B)(3) provides that an attorney must maintain complete records of all securities, funds, and other properties of a client coming into the attorney's or law firm's possession and render appropriate accounts to the client regarding them. The rule also provides that an attorney must preserve such records for five years after final distribution of the properties or funds; and an attorney must comply with any order for an audit of such records issued pursuant to the Rules of Procedure of the State Bar. Although respondent did not comply with the requests of Investigator Maacks to provide the ledger cards and records, there is no clear and convincing evidence that respondent did not maintain or perserve such records. Accordingly, the court does not find respondent culpable of willfully violating rule 4-100(B)(3), and this count is dismissed with prejudice.

## Facts - Case No. 04-O-15199 - Counts Seven, Eight, Nine and Eleven - The Willis Matter

On or about August 9, 2003, Richard Willis ("Willis") retained respondent to represent him in a personal injury matter.

At all relevant times, respondent maintained client trust account 16646-03021 at Bank of America ("trust account").

On or about May 11, 2004, Willis's matter settled and Farmer's Insurance issued check number 1199219636 in the amount of $1,000.00 to Willis and respondent.

Prior to the deposit of Farmer's Insurance's check number 1199219636, respondent's trust account balance was $36.42

On or about May 12, 2004, respondent deposited Farmer's Insurance check number 1199219636 into his client trust account, bringing his trust account balance to $1,036.42.

At all times from the time of the deposit on May 12, 2004, until respondent gave Willis his share of the settlement proceeds, respondent should have maintained the sum of $666.70 ($1,000.00 - 33.33%) of the proceeds of the settlement in the client trust account.

Respondent made no disbursements to Willis or to any other person or entity for his benefit.

On May 18, 2004, respondent's trust account balance fell to $56.42.

Respondent misappropriated at least $610.28 ($666.70 - $56.42) of Willis's share of the proceeds of the settlement for his own use.

Respondent/respondent's agent caused the signature of Richard Willis to be placed on the insurance release for Farmer's Insurance, without Richard Willis's knowledge or authority and submitted it to Farmer's Insurance.

Respondent/respondent's agent caused the signature of Richard Willis to be placed on check number 1199219636 in the amount of $1,000.00 without Richard Willis's knowledge or authority in order to deposit said check into respondent's trust account.

On or about January 15, 2005, after receiving notification that Willis had filed a State Bar complaint, respondent met with Willis at respondent's office. Respondent agreed to pay Willis the sum of $1,500.00 in cash.

On or about January 15, 2005, respondent paid Willis the sum of $1,500.00 in cash.

On or about January 15, 2005, respondent showed Willis a power of attorney that respondent claimed Willis had signed. Willis examined the power of attorney and informed respondent that the signature on the document was not his. Respondent then informed Willis that he would pay Willis an additional $500.00 for the mistake that the "girl" who witnessed the settlement release in May 2004 had made.

On or about January 15, 2005, respondent provided a handwritten note to Willis indicating that he owed Willis the sum of $500.00.

On or about January 15, 2005, respondent dictated a letter to Willis's son's girlfriend, Sherrie Smith, for Willis to sign requesting that his State Bar complaint be closed.

On or about January 24, 2005, Maria Madrid, respondent's agent/associate faxed to State Bar Investigator Michael Maacks a letter signed by respondent in which respondent stated that he had met with Willis, re-established communication and that Mr. Willis was now pleased with the manner in which his case was handled and would be dismissing the complaint.

### Conclusion of Law - Case No. 04-O-15199 – Count Seven - Section 6106

OCTC proved by clear and convincing evidence that respondent willfully violated section 6106. By misappropriating at least $610.28 of Willis's settlement proceeds, respondent committed an act of moral turpitude, dishonesty or corruption in willful violation of section 6106.

### Conclusion of Law - Case No. 04-O-15199 – Count Eight - Rule 4-100(A)

OCTC proved by clear and convincing evidence that respondent willfully violated rule 4-100(A). By failing to maintain the full amount of Willis's settlement funds in his client trust account until he paid out the appropriate sum to Willis, respondent failed to maintain client funds after deposit in his client trust account in willful violation of rule 4-100(A).

### Conclusion of Law - Case No. 04-O-15199 – Count Nine - Section 6106

OCTC proved by clear and convincing evidence that respondent willfully violated section 6106. By causing Willis's signature to be affixed to the settlement check without the client's knowledge or permission, respondent committed an act(s) involving moral turpitude, dishonesty or corruption in willful violation of section 6106.

### Conclusion of Law - Case No. 04-O-15199 – Count Eleven - Section 6090.5, Subdivision (a)(2)

OCTC proved by clear and convincing evidence that respondent willfully violated section 6090.5, subdivision (a)(2). By inducing Willis to seek closure of his state bar complaint by: (1) agreeing and paying Willis the sum of $1,500.00; (2) further agreeing to pay Willis the additional sum of $500.00; and (3) dictating a letter for Willis stating that he wished to have his State Bar complaint closed, respondent wilfully violated section 6090.5, subdivision (a)(2) by seeking agreement that Willis would withdraw his disciplinary complaint or would not cooperate with the investigation or prosecution conducted by the State Bar.

**Facts - Case No. 04-O-15199 – Count Ten - The Willis Matter**

At all relevant times, respondent maintained client trust account 16646-03021 at Bank of America ("trust account").

On or about May 11, 2004, Farmer's Insurance company settled the Willis matter with respondent.

On or about May 12, 2004, respondent received the settlement check in the Willis matter from Farmer's Insurance.

Between May 12, 2004 to January 15, 2005, respondent did not inform Willis that he had received the settlement funds.

On or about January 15, 2005, respondent informed Willis that his case had settled.

**Conclusion of Law - Case No. 04-O-15199 – Count Ten - Rule 4-100(B)(1)**

OCTC failed to prove by clear and convincing evidence that respondent wilfully violated rule 4-100(B)(1). Rule 4-100(B)(1) provides that an attorney must promptly notify a client of the receipt of the client's securities, funds or other properties. Count Ten fails to incorporate the foundational facts set forth in count seven which would establish that Willis was respondent's client. Thus, there are insufficient facts for the court to find that respondent failed to promptly notify his client of the receipt of his client's funds. The court therefore does not find respondent culpable of willfully violating rule 4-100(B)(1), and this count is dismissed with prejudice.

**Facts - Case No. 04-O-15642 - Counts Twelve, Thirteen and Sixteen - The James Matter**

In or about July 2000, respondent was retained by Ezzard and Patricia James to represent them in a personal injury matter.

On or about September 28, 2000, Mr. James wrote to respondent and requested that he contact Riggs Ambulance Service ("Riggs") and address the issue of an outstanding bill.

Respondent received Mr. James' September 28, 2000, letter but did not respond or take any action.

On or about October 4, 2000, Mr. James wrote to respondent and indicated that he had previously made a request that respondent contact Riggs Ambulance Service and address the issue of the outstanding bill.

-33-

Respondent received Mr. James' October 4, 2000, letter but did not respond or take any action.

On or about March 2, 2001, Mr. James wrote to respondent requesting a status update on his case.

Respondent received Mr. James' March 2, 2001, letter but did not respond to Mr. James' request for a status update.

On or about May 21, 2001, Mr. James wrote to respondent and indicated that he had been placing phone calls to respondent's office for two weeks (May 7th through May 11th and May 14th through May 18th), for the purpose of having the claim settled as he and his wife had been released from their medical treatment.

Respondent did not return any of Mr. James' phone calls placed between May 7th through May 11th and May 14th through May 18th).

On or about October 21, 2001, Mr. James wrote to respondent and requested that respondent address an outstanding bill with Sutter Medical ("Sutter").

Respondent received Mr. James' October 21, 2001, letter but did not respond or take any action.

On or about March 1, 2002, Mr. James wrote to respondent and requested that respondent assist him with the lawsuit filed by a law firm seeking to collect the outstanding balance due to Riggs and Sutter.

Respondent received Mr. James' March 1, 2002, letter but did not respond or take any action.

On or about March 17, 2002, Mr. James wrote to respondent and listed several questions he had with respect to the lawsuit filed for the collection of the outstanding medical bills. Mr. James requested that respondent call him with the answers.

Respondent received Mr. James' March 17, 2002, letter but did not respond or take any action.

At all times relevant herein, respondent maintained client trust account 16646-03021 at Bank of America ("trust account").

-34-

On or about June 24, 2002, the James' matter settled and Allstate Insurance issued check number 90706415 in the amount of $7,500.00 to Ezzard James and respondent and check number 90706416 in the amount of $7,500.00 to Patricia James and respondent.

Prior to the deposit of Allstate check number 90706415 and check number 90706416, respondent's trust account balance was $32,169.89.

On or about July 19, 2002, respondent deposited Allstate Insurance check numbers 90706415 and 90706416 into his client trust account, bringing his trust account balance to $47,169.89.

At all times from the time of the deposit on July 19, 2002, until respondent gave the James' their share of the settlement proceeds, respondent should have maintained the sum of $9,000.00 ($15,000.00 - 40%) of the proceeds of the settlement in the client trust account.

On or about August 6, 2002, Ezzard James wrote to respondent and disputed the amount of the proceeds that Mr. James was to receive, which according to the respondent was the sum of $38.00. Mr. James requested that respondent be fair.

Mr. James placed a telephone call to respondent near or about August 6, 2002, and requested an accounting of the settlement proceeds.

Between July 30, 2002 and December 13, 2002, respondent made seven disbursements for the benefit of the James' as follows:

(1) On July 30, 2002, to respondent in the sum of $117.50.

(2) On July 31, 2002, to the Noble Group in the sum of $124.00.

(3) On August 1, 2002, to James Jorgensen, CPA, in the sum of $40.00.

(4) On August 2, 2002, to Sutter Merced in the sum of $1,000.00.

(5) On August 5, 2002, to Bruce Atkinson in the sum of $2,981.25 for Mr. James' treatment.

(6) On August 19, 2002, to Ezzard James in the sum of $38.50.

(7) On December 13, 2002, to Fresno Legal Services in the sum of $198.75.

After the aforementioned disbursements respondent should have maintained the sum of $4,500.00 ($9,000.00 - $4,500.00)[13] in his trust account for the benefit of the James'.

On or about August 19, 2002, respondent paid out to Ezzard James the sum of $38.50, representing to Mr. James that the $38.50 was his share of the settlement proceeds.

Respondent did not make any disbursements to Patricia James from the settlement proceeds.

On November 15, 2002, respondent's trust account balance fell to $180.67.

Respondent misappropriated at least $4,319.33 ($4,500.00 - $180.67) of the James' share of the proceeds of the settlement for his own use.

**Conclusion of Law - Case No. 04-O-15642 – Count Twelve - Section 6106**

OCTC proved by clear and convincing evidence that respondent willfully violated section 6106. By misappropriating at least $4,319.33 of the James' settlement proceeds, respondent committed an act of moral turpitude, dishonesty or corruption in willful violation of section 6106.

**Conclusion of Law - Case No. 04-O-15642 – Count Thirteen - Rule 4-100(A)**

OCTC proved by clear and convincing evidence that respondent willfully violated rule 4-100(A). By failing to maintain at least $4,319.33 of the James' settlement funds in his client trust account until he paid out the appropriate sum(s) to or on behalf of Mr. and Mrs. James, respondent failed to maintain client funds after deposit in his client trust account in willful violation of rule 4-100(A).

**Conclusion of Law - Case No. 04-O-15642 – Count Sixteen - Rule 3-110(A)**

OCTC proved by clear and convincing evidence that respondent wilfully violated rule 3-110(A). Rule 3-110(A) provides that "[a] member shall not intentionally, recklessly, or repeatedly fail to perform legal services with competence." By failing to respond to James's letters requesting that he take action with respect to the outstanding medical bills or to take any action with respect to the medical bills, thereby allowing the bills to go to collection, respondent

---

[13]This is the total amount of the disbursements set forth above.

intentionally, recklessly, or repeatedly failed to perform legal services with competence in willful violation of rule 3-110(A).

### Facts - Case No. 04-O-15642 - Count Fourteen - The James Matter

On or about June 24, 2002, Allstate Insurance notified the James' that their matter had settled and that it was sending two settlement drafts to respondent each in the amount of $7,500.00.

On or about July 19, 2002 respondent deposited the settlement drafts into his client trust account.

Respondent did not promptly inform the James' that their settlement funds had been received.

On or about August 19, 2002, respondent paid out to Ezzard James the sum of $38.50, representing to Mr. James that the $38.50 was his share of the settlement proceeds.

### Conclusion of Law - Case No. 04-O-15642 – Count Fourteen - Rule 4-100(B)(1)

OCTC failed to prove by clear and convincing evidence that respondent wilfully violated rule 4-100(B)(1). Count Fourteen fails to incorporate the foundational facts set forth in count twelve which would establish that the James' were respondent's clients. Thus, there are insufficient facts for the court to find that respondent failed to promptly notify his clients of the receipt of his clients' funds. The court therefore does not find respondent culpable of willfully violating rule 4-100(B)(1), and this count is dismissed with prejudice.

### Facts - Case No. 04-O-15642 – Count Fifteen - The James Matter

On or about October 11, 2000, respondent signed a medical lien with Dr. Bruce Atkinson for Patricia James' medical treatment, agreeing to "withhold such sums from any settlement, judgment or verdict, as my (sic) be necessary to adequately protect said doctor above-named and to issue such sums withheld to the above named doctor."

On or about October 26, 2000, Patricia James' medical treatment ceased with Dr. Bruce Atkinson. His office sent respondent a bill in the sum of $1,162.00.

On or about May 30, 2002, Dr. Atkinson's office provided the Superior Court with all of Patricia James' medical records pursuant to a civil subpoena issued by the respondent.

On or about June 25, 2002, respondent received a settlement check from Allstate insurance company check number 90706416 in the sum of $7,500.00 for the benefit of Patricia James.

Respondent deposited check number 90706416 into his client trust account on July 19, 2002.

Thereafter, respondent failed to pay out any sums to Patricia James or to Dr. Atkinson's office on the outstanding medical lien.

As of July 2002, respondent never paid the medical lien, despite having knowledge of the lien amount due since October 26, 2000.

Between July 2002 and November 2004, Dr. Atkinson's office was unable to locate respondent and as such could not make any demands for payment.

On or about November 5, 2004, Merced Spine and Sports Rehab Center sent Patricia James a bill indicating that she had an outstanding balance of $1,162.00.

**Conclusion of Law - Case No. 04-O-15642 – Count Fifteen - Rule 4-100(B)(4)**

OCTC proved by clear and convincing evidence that respondent willfully violated rule 4-100(B)(4). Rule 4-100(B)(4) provides that an attorney must promptly pay or deliver, as requested by a client, the funds, securities or other properties in the attorney's possession which a client is entitled to receive. Respondent willfully violated rule 4-100(B)(4) by failing to pay Dr. Atkinson's office the outstanding bill in the sum of $1,162.00 for Patricia James after signing a medical lien with Dr. Bruce Atkinson for Patricia James' medical treatment, agreeing to "withhold such sums from any settlement, judgment or verdict, as my (sic) be necessary to adequately protect said doctor above-named and to issue such sums withheld to the above named doctor."

**Facts - Case No. 04-O-15642 – Count Seventeen - The James Matter**

On or about November 5, 2004, Dr. Bruce Atkinson filed a formal complaint against respondent for failing to pay a medical lien.

On or about November 8, 2004, the State Bar opened case number 04-O-15784 pursuant to the complaint made by Dr. Atkinson.

-38-

On or about November 24, 2004, Mr. and Mrs. James filed a formal complaint with the State Bar.

On or about December 3, 2004, the State Bar opened case number 04-O-15642 pursuant to a complaint made Mr. and Mrs. James.

In or about January 2005, the State Bar consolidated the complaints made by Dr. Atkinson and Mr. and Mrs. James into case no. 04-O-15642.

On or about January 4, 2005, State Bar Investigator Michael Maacks ("Maacks") wrote to respondent regarding the James and Atkinson matter. Maacks's letter requested that respondent respond in writing to specified allegations of misconduct being investigated by the State Bar in the James and Atkinson matter, by January 18, 2005. Maacks's letter was placed in a sealed envelope correctly addressed to respondent at his official membership records address. The letter was properly mailed by first-class mail, postage prepaid, by depositing for collection by the United States Postal Service in the ordinary course of business. The United States Postal Service did not return Maacks's letter as undeliverable or for any other reason.

On January 31, 2005, Maacks met with respondent and presented him with a copy of Maacks's January 4, 2005 letter. Respondent was attending a settlement conference on another matter in State Bar Court. Respondent agreed to respond to the allegations in the James and Atkinson matter by March 14, 2005.

Respondent never responded to the allegations in the James and Atkinson matter.

**Conclusion of Law - Case No. 04-O-15642 – Count Seventeen – Section 6068,**
**Subdivision (i)**

OCTC proved by clear and convincing evidence that respondent willfully violated section 6068, subdivision (i). Section 6068, subdivision (i) requires an attorney to cooperate with and participate in a State Bar disciplinary investigation or proceeding. Respondent wilfully violated section 6068, subdivision (i) by failing to respond to the allegations in Investigator Maacks's January 4, 2005, letter regarding the James and Atkinson matter.

**Facts - Case No. 04-O-14108 and Case No. 05-O-00021 - Counts Eighteen and Nineteen - State Bar Investigation**

On July 29, 2004, the State Bar Court issued an Order of Entry of Default (Rule 200-Failure to File Timely Response), Order Enrolling Inactive and Further Orders. The July 29, 2004, order placed respondent on involuntary inactive enrollment pursuant to Business and Professions Code section 6007, subdivision (e)(l), thereby prohibiting respondent from practicing law.

The State Bar Court's July 29, 2004, Order of Involuntary Inactive Enrollment became effective three days from the date of issuance.

Respondent was served with the State Bar Court's July 29, 2004, Order placing him on involuntary inactive status at his official membership records address.

On or about August 1, 2004, respondent was placed on involuntary inactive status.

On or about August 5, 2004, respondent held himself out as a licensed attorney, when he was not entitled to practice law, by placing his name and the word "attorney" next to his name and filing a motion, declaration, and interrogatories in the Superior Court of Fresno, case no. 03CEG06176. Respondent's pleading papers identified him as an attorney and he provided his California State Bar number on the pleadings.

On or about August 5, 2004, respondent held himself out as a licensed attorney when he appeared before Judge Chittick in the Superior Court of Fresno in case no. 03CEG06176 in a law and motion matter.

On or about September 7, 2004, respondent agreed to represent Daniel Davies in a criminal matter. Respondent received the sum of $2,000.00 from Davies's family.

On or about September 8, 2004, respondent spoke with Peter Pacheco, Deputy Public Defender for the County of Fresno and confirmed that Mr. Davies had retained Mr. Morris as his counsel. Mr. Davies's matter was calendered for set/dispo hearing on September 9, 2004.

On September 9, 2004, respondent did not participate in the set/dispo proceeding, but had been seen in the courtroom earlier during the court's session. The Court was forced to put the matter over, given Mr. Davies's representations that respondent was his attorney and the

conversation that Mr. Pacheco relayed to the court regarding respondent's representations that he was in fact representing Mr. Davies in the criminal matter set for September 9, 2004.

Respondent's involuntary inactive status remained in effect until September 15, 2004, when the State Bar Court set aside respondent's default and terminated his involuntary inactive status.

Respondent received the State Bar Court Order placing him on involuntary inactive status.

Respondent was fully aware of his involuntary inactive status when he appeared and filed his motion papers in August 5, 2004.

Respondent was fully aware of his involuntary inactive status when he undertook the representation of Mr. Davies on September 7, 2004.

**Conclusion of Law - Case No. 04-O-14108 and Case No. 05-O-00021 – Count Eighteen - Section 6068, Subdivision (a)**

By holding himself out as an attorney authorized to practice law in the State of California when he was not entitled to practice law in this state, respondent willfully engaged in the unauthorized practice of law in wilful violation of sections 6125 and 6126, and therefore failed to support the laws of California in willful violation of section 6068, subdivision (a).

**Conclusion of Law - Case No. 04-O-14108 and Case No. 05-O-00021 – Count Nineteen - Section 6103**

OCTC proved by clear and convincing evidence that respondent wilfully violated section 6103. Section 6103 provides, in pertinent part, that the willful violation or disobedience of a court order which requires an attorney to do or forbear an act connected with or in the course of his profession, which the attorney ought in good faith to do or forbear constitute cause for suspension or disbarment. By failing to cease practicing law pursuant to the State Bar Court's July 29, 2004 Order, respondent wilfully violated an order of the court requiring him to do an act connected with respondent's profession which he ought in good faith to do in willful violation of section 6103.

**Facts - Case No. 05-O-00021 – Count Twenty - State Bar Investigation**

On or about October 27, 2004, the State Bar received a formal complaint from a Judge Kapetan, Superior Court Judge in Fresno County alleging that respondent had engaged in the unauthorized practice of law.

On or about November 1, 2004, the State Bar opened case number 05-0-00021 pursuant to the complaint made by Superior Court Judge Kapetan.

On or about March 17, 2005, State Bar Investigator Michael Maacks ("Maacks") wrote to respondent regarding the state bar investigation with respect to the allegations raised by Judge Kapetan.  Maacks's letter requested that respondent respond in writing by March 31, 2005, to specified allegations of misconduct being investigated.  Maacks's letter was placed in a sealed envelope correctly addressed to respondent at his official membership records address. The letter was properly mailed by first-class mail, postage prepaid, by depositing for collection by the United States Postal Service in the ordinary course of business.  The United States Postal Service did not return Maacks's letter as undeliverable or for any other reason.

On or about April 18, 2005, Maacks wrote to respondent's counsel Thomas Jones indicating that no response had been received from respondent with respect to case no. 05-O-00021, and requested that Attorney Jones respond to the inquiry no later than May 2, 2005. Maacks' letter was placed in a sealed envelope correctly addressed to respondent's counsel at his official membership records address. The letter was properly mailed by first-class mail, postage prepaid, by depositing for collection by the United States Postal Service in the ordinary course of business.  The United States Postal Service did not return Maacks's letter as undeliverable or for any other reason.

No response was received to Maacks's letters of March 17, 2005 and April 18, 2005.

**Conclusion of Law - Case No. 05-O-00021 – Count Twenty – Section 6068, Subdivision i)**

OCTC proved by clear and convincing evidence that respondent willfully violated section 6068, subdivision (i).  Respondent wilfully violated section 6068, subdivision (i) by failing to respond in writing to the allegations in Investigator Maacks's March 17, 2005, letter.  The court does not base culpability in this matter on respondent's failure to respond to the April 18, 2005,

letter, sent to Attorney Jones, as there is no clear and convincing evidence that Attorney Jones, who represented respondent for a period of time in Case No. 04-H-11843, ever represented respondent in Case No. 05-O-00021.

## MTIGATING/AGGRAVATING CIRCUMSTANCES

As respondent's default was entered in this matter, respondent did not have an opportunity to introduce any mitigating evidence on his behalf. Nevertheless, the court notes in mitigation that during the period of time respondent was misappropriating funds from his trust account, respondent did put a total of $27,853.58 of his own personal fund back into his trust account, well before the initiation of these disciplinary proceedings. (Standard 1.2(e)(vii).)

In aggravation, respondent has a prior record of discipline. (Standard 1.2(b)(i).)[14] In January 2003, respondent was privately reproved by the State Bar Court with conditions for one year for violating rule 4-100(A) by depositing a judgment award check in May 2001 in a personal account rather than a client trust account and for violating rule 4-100(B)(3) by not providing his client in May 2001 with an opportunity to review a written accounting before he paid himself and by not promptly providing his client with a written accounting upon her request in late 2001 or early 2002.

Respondent engaged in a pattern of wrongdoing involving the misappropriation of over $165,000 in client funds and other improper conduct involving his trust account for more than two and one-half years. (Standard 1.2(b)(ii).)

Respondent's misappropriation of client funds significantly harmed many clients who did not receive their settlement funds. Respondent's failure to perform legal services with competence significantly harmed Mr. James as it resulted in a lawsuit being filed for collection of the outstanding medical bills. (Standard 1.2(e)(iv).)

---

[14]Pursuant to Evidence Code section 452(d), the court takes judicial notice of respondent's prior record of discipline in Case No. 02-O-10657. A NDC was filed in Case No. 02-O-10657 on October 10, 2002. Respondent and OCTC entered into a Stipulation Re Facts, Conclusions of Law and Disposition which was filed on December 19, 2002.

Respondent's failure to participate in Case No. 04-O-14241 prior to the entry of his default is a further aggravating circumstance. (Standard 1.2(b)(vi).)

## DISCUSSION

In determining the appropriate discipline to recommend in this matte, the court looks at the purposes of disciplinary proceedings and sanctions. Standard 1.3 sets forth the purposes of disciplinary proceedings and sanctions as "the protection of the public, the courts and the legal profession; the maintenance of high professional standards by attorneys and the preservation of public confidence in the legal profession."

In determining the appropriate level of discipline, the court looks first to the standards for guidance. (*Drociak v. State Bar* (1991) 52 Cal.3d 1085, 1090; *In the Matter of Koehler* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 615, 628.) As the Review Department of the State Bar Court noted more than 14 years ago in *In the Matter of Bouyer* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 404, 419, even though the standards are not to be applied in a talismanic fashion, they are to be followed unless there is a compelling reason that justifies not to do so. (Accord, *In re Silverton* (2005) 36 Cal.4th 81, 91; *Aronin v. State Bar* (1990) 52 Cal.3d 276, 291.)

In this case, the standards provide for the imposition of sanctions ranging from reproval to disbarment. (See standards 2.2(a), 2.3, 2.4(b), 2.6 and 2.9.) In addition, standard 1.6(a) states, in pertinent part, "If two or more acts of professional misconduct are found or acknowledged in a single disciplinary proceeding; and different sanctions are prescribed by these standards for said acts, the sanction imposed shall be the more or most severe of the different applicable sanctions." The more severe sanction is found at standard 2.2(a) which recommends disbarment for wilful misappropriation of entrusted funds unless the amount misappropriated is insignificantly small or unless the most compelling mitigating circumstances clearly predominate, in which case the minimum discipline recommended is one year actual suspension.

In addition, standard 1.6(b) provides that the specific discipline for the particular violation found must be balanced with any mitigating or aggravating circumstances, with due regard for the purposes of imposing disciplinary sanctions.

-44-

Furthermore, standard 1.7(a) provides that if a member is found culpable of misconduct in any proceeding and the member has a record of one prior imposition of discipline, the degree of discipline imposed in the current proceeding must be greater than that imposed in the prior proceeding unless the prior discipline was remote in time and the offense was minimal in severity.

The standards, however, are only guidelines and do not mandate the discipline to be imposed. (*In the Matter of Moriarty* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 245, 250-251.) "[E]ach case must be resolved on its own particular facts and not by application of rigid standards." (*Id.* at p. 251.) The court also looks to decisional law for guidance. (*Snyder v. State Bar* (1990) 49 Cal.3d 1302, 1310-1311; *In the Matter of Taylor* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 563, 580.)

In this matter, respondent has been found culpable of engaging in very serious misconduct from 2000-2005, including the following acts of moral turpitude, dishonesty or corruption: (1) the misappropriation of at least $166,793.53 in client funds; (2) causing a client's signature to be affixed to a settlement check without the client's knowledge or permission; and (3) issuing checks and counter checks and caused electronic debits from the trust account when he knew or reasonably should have known that there were insufficient funds in the account to allow the bank to honor the checks, counter checks and electronic debits when presented for payment.

Respondent also improperly withdrew cash, issued checks and made payments from the trust account for both his own personal and non-client related business totaling at least $173,667.16 and failed to maintain client funds in his trust account. He also failed to promptly pay a medical bill after signing a medical lien.

In addition, respondent intentionally, recklessly or repeatedly failed to perform legal services with competence, failed to cooperate with and participate in a disciplinary investigation, engaged in the unauthorized practice of law, violated an order of the State Bar Court, sought an agreement from his client that the client would withdraw a disciplinary complaint or would not

-45-

cooperate with the investigation or prosecution conducted by the State Bar, and failed to comply with conditions attached to an earlier private reproval.

In aggravation, respondent has a prior record of discipline involving a private reproval. Although the acts which led to this earlier discipline occurred during the time period of the misconduct in this matter, the aggravating circumstance of respondent's prior discipline is not diminished but is rather magnified because respondent committed much of the misconduct found in the present proceeding while, in accordance with the terms of his private reproval in January 2003, he was under the disciplinary supervision of the State Bar. (Cf. *In the Mater of Katz* (Review Dept. 1995) 3 Cal. State Bar Ct. Rptr. 430, 438.) As additional aggravating circumstances, the court notes that Respondent engaged in a pattern of wrongdoing, involving the misappropriation of over $165,000 in client funds and other improper conduct involving his trust account for more than two and one-half years; the misconduct significantly harmed many clients; and he failed to cooperate in the disciplinary proceeding in Case No. 04-O-14241 prior to the entry of his default.

In mitigation, the court notes that during the period of time respondent was misappropriating funds from his trust account, respondent put a total of $27,853.58 of his own personal funds back into his trust account, well before the initiation of these disciplinary proceedings. However, such action does little to mitigate his misappropriation of at least $166,793.53 in client funds.

OCTC recommends that respondent be disbarred as a result of is misconduct in this matter. The court concurs with OCTC's discipline recommendation. In the present proceeding, there is no compelling reason for the court to depart from recommending respondent's disbarment as provided by standard 2.2(a). (*In re Silverton, supra,* 36 Cal.4[th] at p. 91; *Aronin v. State Bar, supra,* 52 Cal.3d at p. 291.) Standard 2.2(a) calls for disbarment for willful misappropriation of entrusted funds, unless the misappropriation is "insignificantly small" or the "most compelling mitigating circumstances clearly predominate." Here, neither exception applies. Moreover, respondent's misappropriations, which totaled at least $166,793.53 occurred

-46-

.

over a longer period of time and were accompanied by his repeated, if not consistent, misuse of his trust account in wilful violation of rule 4-100.

Relevant Supreme Court opinions also strongly support disbarment. "Misappropriation is more than a grievous reach of professional ethics. It violates basic notions of honesty and endangers public confidence in the legal profession. ([Citations omitted].)" (*Grim v. State Bar* (1991) 53 Cal.3d 21, 29. "[M]isappropriation generally warrants disbarment unless "'clearly extenuating circumstances'" are present,. (*Waysman v. State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239].)" (*Kelly v. State Bar* (1988) 45 Cal.3d 649, 656.) When the circumstances of the misappropriation have been sufficiently serious, the Supreme Court has disbarred the attorney even if the attorney had no prior record of discipline. (See, e.g., *Kaplan v. State Bar* (1991) 52 Cal.3d 1067 [misappropriation of $29,000 of law firm funds in numerous transactions resulted in disbarment notwithstanding lack of prior record, favorable good character testimony, and personal stress and family illness]; *Chang v. State Bar* (1989) 49 Cal.3d 114 [disbarment ordered for misappropriation of over $7,000 of trust funds in an apparently isolated transaction notwithstanding lack of prior record where attorney never acknowledged misconduct or made restitution]; *Grim v. State Bar, supra*, 53 Cal.3d 21.)

In addition, the court is particularly troubled by the conduct which led the court to strike respondent's answer and enter his default in Case No. 04-H-11843, as well as his failure to participate in Case No. 04-O-14241, resulting in the entry of his default in that matter as well. Respondent's failure to participate in this proceeding leaves the court without any understanding as to the underlying cause or causes for respondent's misconduct or from learning of any mitigating circumstances which would justify this court's departure from the discipline recommended by the standards.

Thus, despite the limited mitigating circumstance, the seriousness and nature of respondent's misconduct and the extent of the aggravating circumstances found in this matter compel this court to find that need to protect the public and the legal profession warrants the recommendation that respondent be disbarred for his misconduct in this matter.

-47-

## RECOMMENDED DISCIPLINE

Based on the foregoing, it is hereby recommended that respondent Gregory A. Morris be disbarred from the practice of law in the State of California and that his name be stricken from the roll of attorneys in this state.

It is also recommended that respondent be ordered to comply with the requirements of rule 955 of the California Rules of Court within 30 calendar days of the effective date of the Supreme Court order in this matter, and file the affidavit provided for in paragraph (c) within 40 days of the effective date of the order showing his compliance with said order.

## ORDER REGARDING INACTIVE ENROLLMENT

Respondent is ordered transferred to involuntary inactive status pursuant to Business and Professions Code section 6007, subdivision (c)(4). Said inactive enrollment will be effective three days after this order is served by mail, and will terminate upon the effective date of the Supreme Court's order imposing discipline herein, as provided for by rule 490(b) of the Rules of Procedure, or as otherwise ordered by the Supreme Court pursuant to its plenary jurisdiction.

## COSTS

It is recommended that costs be awarded to the State Bar in accordance with Business and Professions code section 6086.10 and are enforceable both as provided in Business and Professions code section 6140.7 and as a money judgment.

Dated: February 17, 2006

PAT McELROY
Judge of the State Bar Court

**Exhibit B**

1  GREG A. MORRIS
   2822 E. WARNER
2  FRESNO, CA 93710
   (559)322-2177

**FILED**

AUG 2 5 2004

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

4              THE STATE BAR OF CALIFORNIA

5              HEARING DEPARTMENT-SAN FRANSISCO

6

7  In the matter of:              ) Case No.: 03CECG01676
                                  )
8  GREGORY A. MORRIS,             ) MOTION FOR LATE OPPOSITION; MOTION TO
                                  ) ENTER DEFAULT ; MOTION TO SET ASIDE
9  No. 91425                      ) DEFAULT
                                  )
10 A MEMBER OF THE STATE BAR

11 ─────────────────────────────────

12                       INTRODUCTION

13     This case invloved a contingent fee and personal injury case with soft

14 Tissue injuries where the jury awarded less than the client wanted (client

15 Wanted in excess $150,000.00 and jury awarded less than 10%). Although the

16 verdict was typical of  for Tulare County, the client insisted I appeal and

17 we lost the appeal..

18 The out of pocket costs were much more than the verdict and this fact was

19 explained in depth to the client but no written statement was provided or

20 requested.

21 The client filed a bar complaint that resulted in a Notice of Disciplinary

22 Charges. When I received the 20 day letter late, time passed and because of

23 service issues and my avoidance of the situation a motion Enter Default

24 resulted.

25 The Motion for Entry of default was served at a time when my father had jus

                    MOTION FOR LATE OPPOSITION - 1

1  past away days earlier and I was not able to attend to this matter in a

2  timely fashion because of the stress associated with his death and added

3  time spent helping my mother.

4  The situation has now calmed down and I request the court allow me to file

5  the attached answer, so the matter is not resolved by default This case

6  arises out of a bar complaint wherein I received a private reprimand for

7  giving the client only an in depth oral accounting of how out of pocket

8  costs exceeded the verdict.

9  One of the conditions of my private reprimands was that I go to ethics

10  school.  I scheduled them, but another appearance for a client came up

11  on the same date as the scheduled Ethics class, which had to be covered

12  and I could find not fid anyone to cover it.  I took the appearance and the

13  class was missed. I had waited until the last minute to schedule the class

14  so I was out of time to reschedule. The current complaint concerns this

15  and some complaints about the form of my last two quarterly reports. I have

16  no objection to taking this class, I simply could not be at both places

17  and I am a sole practioner.

18  I believed I would be able to work out an informal agreement with bar

19  counsel, and because I was under the immpresion that I had not been

20  properly served  (it was sent to an old address certified mail and not

21  delivered). Almost immediatly after I received a courtesy copy, I called

22  the Bar counsel and started to discuss meeting and resolving the case.

23

24  My father passed away about the same time, and the Motion for Default was

25  filed and I request leave to file this response late.

1

2                                    I.

3                RESPONSE WAS DELAYED BY ADDRESS CHANGES

4     The Notice of Disciplanary charges were served at an old address,

5     which I had requested to be changed at the State Bar several times

6     prior to the service of the Notice of Disciplinary Charges. I did

7     not receive a certified mailing of the charges as would be expected,

8     At the new, address...

9                                    II.

10                     PROPOSED ANSWER ATTATCHED

11    I have attached a copy of a proposed answer and request that the court

12    Allow it to be filed.

13                                   III.

14               ONE-YEAR SUSPENSION TOO SEVERE

15    A year suspension is too severe for having met personally with the

16    client rather than sending a written statement to show out of pocket

17    costs, which exceeded the verdict.  I should have followed up the

18    lengthy meeting with a written statement.  I had explained the costs

19    in detail them to the client who seemed to be satisfied until the

20    ex-husband became involved.  I invited the family into my office for

21    a lengthy meeting.  I explained that the out of pocket costs exceeded

22    the recovery.  The meeting lasted well over an hour, the bills were

23    shown and discussed with the client and the clients expressed that

24    they understood  the situation.  This was one of those rare cases where

25    the costs exceeded the verdict, and for this reason our standard

      procedure of supplying a written statement with the client's check

                        MOTION FOR LATE OPPOSITION - 3

was not followed.  I tried this case on a contingent fee and was not

paid any fee.  because of the low verdict.  Only part of the out of

pocket costs were paid.  The matter was appealed for free.

                              IV.

If given the opportunity to file an answer, respondent will comply

with all deadlines set by court or statute.

                              V.

Respondent respectfully requests the court allow his answer to be

filed and either set the default aside or deny the request to enter

default.


                    Dated this 20th day of August, 2004


                    GREG A. MORRIS
                    2822 E. WARNER
                    FRESNO, CA 93710
                    (559)322-2177

# VERIFICATION

STATE OF CALIFORNIA
COUNTY OF FRESNO


I AM A PARTY TO THIS ACTION; I HAVE READ THE FOREGOING
DOCUMENT ENTITLED:

MOTION FOR LATE OPPOSITION; MOTION TO ENTER
DEFAULT; MOTION TO SET ASIDE DEFAULT

AND KNOW ITS CONTENTS. THE MATTERS STATED THEREIN ARE TRUE
OF MY OWN KNOWLEDGE, EXCEPT AS TO THOSE MATTERS WHICH ARE
STATED ON INFORMATION AND BELEIF, AND, AS TO THOSE MATTERS, I
BELEIVE THEM TO BE TRUE.

I DECLARE UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE
STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.


DATED: _8-20-07_ AT _FRESNO_ CALIFORNIA


GREG A. MORRIS

**PROOF OF SERVICE**

RE: IN THE MATTER OF GREG A. MORRIS, ESQ.
    THE STATE BAR COURT, Case No.04-H11843

    I am a resident of the State of California, over the age of eighteen
years, and not a party within this action.  My business address is: 2822 E.
Warner Fresno, Ca 93710.

    On the date specified below, I served the attached document titled
exactly:

          **MOTION FOR LATE OPPOSITION; MOTION TO ENTER DEFAULT;**
          **MOTION TO SET ASIDE DEFAULT**

☐    BY MAIL: by placing, the document(s) listed above in a sealed
     envelope with postage thereon fully prepaid, in the United States
     mail at Fresno, California addressed as set forth below.

☐    BY FAX: by transmitting via facsimile the document(s) listed above
     to the fax number(s) set forth below on this date before 5:00 PM.

☐    BY HAND: by personally delivering the document(s) listed above to
     the person(s) at the address(es) set forth below.

☑    BY OVERNIGHT MAIL: by causing document(s) to be delivered by an
     overnight delivery service company for delivery to the address(es)
     of the next business day.

☐    BY PERSONAL DELIVERY: by causing personal delivery by_____
     of the document(s) listed above to the person(s) at the address(es)
     set forth below.

    To the person or persons listed below by placing a copy thereof enclosed
in a sealed envelope with postage thereon fully prepaid, in the United States
Post Office at Fresno, California, addressed as follows:

ASSISTANE CHIEF TRIAL COUNSEL          THE STATE BAR COURT
DESIREE T. WASHINGTON, NO.21738        HEARING DEPARTMENT
THE STATE BAR COURT-HEARING DEPARTMENT 180 HOWARD STREET, 6TH FLOOR
180 HOWARD STREET, 6TH FLOOR           SAN FRANSISCO, CALIFORNIA 94105
SAN FRANSISCO, CALIFORNIA 94105

    I declare under the penalty of perjury under the law of the State of
California that the foregoing is true and correct.

Dated:08/13/04

                        _Maria J Madrid_
                        MARIA T. MADRID

PROOF OF SERVICE - 1

1

GREG A. MORRIS
2822 E. WARNER

2

FRESNO, CA 93710
(559)322-2177

3

FILED

AUG 2 5 2004

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

4

THE STATE BAR OF CALIFORNIA

5

HEARING DEPARTMENT-SAN FRANSISCO

6

7

In the matter of:                    ) Case No.: 04-H-11843
                                     )
8

GREGORY A. MORRIS,                   ) DECLARATION OF GREG A. MORRIS
                                     )
9

No. 91425                            )
                                     )
10

A MEMBER OF THE STATE BAR;

11

_____

12

I, GREG A. MORRIS, DECLARE AS FOLLOWS:

13

1. I am an attorney admitted to all courts of the State of California

14

but, suspended because of this default judgment.

15

2. I have requested the State Bar to change my address several times

16

and apparently this has not been done according to Ms. Washington's

17

declaration.

18

3. I also requested the mail be forwarded from: 509 Mariners Circle

19

to 8477 N. Del Mar by the post office.  The other occupants at 509

20

Mariners also requested their mail be forwarded.  The forwarded

21

mail was up to three weeks late, delivered to the wrong prior

22

occupant of  509 Mariners Circle or occasionally forwarded promptly.

23

4. I got the twenty-day letter on day 17, called Ms. Washington

24

requesting an extention and by the time she got back to me she said

25

she already filed a charges.. I advised Ms. Washington that she

DECLARATION OF GREG A. MORRIS - 1

had sent the twenty-day letter to the wrong address. She said
that there was nothing she could do since she had already filed the
Notice.

5. My father passed away about the time the Notice was received.
The shortened or expired time limits to respond, due to mail going
to the wrong address, combined with the death of my father, made it
impossible for me to respond to the bar prosecution timely and
effectively.

6. The Motion for Entry of Default itself was served shortly after my
father had just passed away and I was not able to attend to this
matter in a timely fashion because of stress associated with his
death and added time spent helping my mother. The situation has
now calmed down and I am prepared and able to effectively handle
this bar charges.

7. I avoided reviewing the motion for several days because of the
stress of my fathers death. When I finally got it, the time to
respond had expired.

8. The Bar complaint, itself, arose out of a small personal injury
fender bender where the client suffered from minor soft tissue
injuries which she claimed caused post tramatic stress disorder
(the VietNam mental illness). The Insurance company and the Defense
lawyer felt the entire Post Tramatic Disorder was fabricated and
motivated by greed.

9. The jury rendered an average size verdict for Tulare County, but it
was less than the costs of the suit. Many experts and trial

1    exhibits quickly eroded a XXXXXX of the verdict.

2    10. Since out pocket costs were significantly  more than the verdict

3        and this fact was explained in depth to the client both before

4        and after the appeal, but no written statement was given.

5    11. Because I gave an oral instead of written explaination of the

6        costs, I was given a private reprimand.

7    12. One of my probation conditions was that I go to ethics school,

8        which I scheduled, however, another appearance for a client came

9        up which had to be covered and I could not find anyone to cover it.

10       The school is not offered in Fresno but only in L. A. and San

11       Francisco.

12   13. I covered the appearance and the class was missed.  Unfortunately,

13       I had waited until the last  minute to schedule the class because

14       an earlier setting had canceled, so I was out of time to reschedule.

15   14. I have requested an extension of time to comply with the Terms of

16       Probation.

17   15. The current complaint concerns this and some complaints about the

18       form of my last two quarterly reports.  I have rescheduled the

19       Ethics class for the first available date.

20   16. I did not answer the Bar formal Notice of Charges earlier with time

21       because I believed I would be able to work out an informal

22       agreement with Bar Counsel, and because I was under the impression

23       that it had not been properly served (it was sent to an old address

24       certified main and not delivered). Almost immediately after I

25       received a courtesy copy, I called Bar counsel and started to

         discuss meeting and resolving the case.

                    DECLARATION OF GREG A. MORRIS - 3

17. My father passed away shortly thereafter, and the Motion was filed.

18. By the time I was able to read the motion read the motion my time was already  past due.

19. I did not anticipate such a short deadline to respond and delayed reading it because I was trying to avoid all  other personal bad news while I coped with my  father's death.

20. I am not familiar within the rules of the State Bar Court, so I have printed a copy which I will study for future reference in this  case.

I declare under penalty of perjury the forgoing is true and correct to the best of my knowledge.

Executed on July 30, 2004 at Fresno California.

GREG A. MORRIS, ESQ.
2822 E. WARNER
FRESNO, CA 93710
(559)322-2177

DECLARATION OF GREG A. MORRIS - 4

**PROOF OF SERVICE**

RE: IN THE MATTER OF GREG A. MORRIS, ESQ.
    THE STATE BAR COURT, Case No. 04-H11843

   I am a resident of the State of California, over the age of eighteen years, and not a party within this action. My business address is: 2822 E. Warner Fresno, Ca 93710.

   On the date specified below, I served the attached document titled exactly:

   **DECLARATION OF GREG A. MORRIS**

☐   BY MAIL: by placing, the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California addressed as set forth below.

☐   BY FAX: by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 PM.

☐   BY HAND: by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐   BY OVERNIGHT MAIL: by causing document(s) to be delivered by an overnight delivery service company for delivery to the address(es) of the next business day.

☐   BY PERSONAL DELIVERY: by causing personal delivery by of the document(s) listed above to the person(s) at the address(es) set forth below.

   To the person or persons listed below by placing a copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Post Office at Fresno, California, addressed as follows:

ASSISTANE CHIEF TRIAL COUNSEL          THE STATE BAR COURT
DESIREE T. WASHINGTON, NO.21738        HEARING DEPARTMENT
THE STATE BAR COURT-HEARING DEPARTMENT 180 HOWARD STREET, 6TH FLOOR
180 HOWARD STREET, 6TH FLOOR           SAN FRANSISCO, CALIFORNIA 94105
SAN FRANSISCO, CALIFORNIA 94105

   I declare under the penalty of perjury under the law of the State of California that the foregoing is true and correct.

 Dated: 08/13/04

                        *Maria T. Madrid*
                        MARIA T. MADRID

# VERIFICATION

STATE OF CALIFORNIA
COUNTY OF FRESNO

I AM A PARTY TO THIS ACTION; I HAVE READ THE FOREGOING
DOCUMENT ENTITLED:

DECLARATION OF GREG A. MORRIS

AND KNOW ITS CONTENTS. THE MATTERS STATED THEREIN ARE TRUE
OF MY OWN KNOWLEDGE, EXCEPT AS TO THOSE MATTERS WHICH ARE
STATED ON INFORMATION AND BELEIF, AND, AS TO THOSE MATTERS, I
BELEIVE THEM TO BE TRUE.

I DECLARE UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE
STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: _8-20-04_ AT _FResno_ CALIFORNIA

_____
GREG A. MORRIS

1    GREG A. MORRIS
2822 E. WARNER
2    FRESNO, CA 93710
(559)322-2177
3

**FILED**

**AUG 2 5 2004**

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

4             THE STATE BAR OF CALIFORNIA

5          HEARING DEPARTMENT-SAN FRANSISCO

6

7    In the matter of:            )   Case No.: 04-H-11843
                              )
8    GREGORY A. MORRIS,         )   REQUEST FOR TIME TO COMPLY WITH TERMS
                              )   OF PROBATION
9    No. 91425                  )
                              )
10    A MEMBER OF THE STATE BAR

11    _____

12       Respondent requests to and including September 30th, 2004 to submit the

13    deficient quarterly reports, attend Ethics School and submit satisfactory

14    proof of the attendance at Ethics School.

15

16

17

18                         Dated this 20th day of August, 2004

19

20                             GREG A. MORRIS, ESQ.
                            2822 E. WARNER
21                             FRESNO, CA 93710
                            (559)322-2177
22

23

24

25

# VERIFICATION

STATE OF CALIFORNIA
COUNTY OF FRESNO


I AM A PARTY TO THIS ACTION; I HAVE READ THE FOREGOING
DOCUMENT ENTITLED:

REQUEST FOR TIME TO COMPLY WITH PROBATION

AND KNOW ITS CONTENTS. THE MATTERS STATED THEREIN ARE TRUE
OF MY OWN KNOWLEDGE, EXCEPT AS TO THOSE MATTERS WHICH ARE
STATED ON INFORMATION AND BELEIF, AND, AS TO THOSE MATTERS, I
BELEIVE THEM TO BE TRUE.

I DECLARE UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE
STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.


DATED: _8-20-04_ AT _Fresno_ CALIFORNIA


_____
GREG A. MORRIS

**PROOF OF SERVICE**

RE: IN THE MATTER OF GREG A. MORRIS, ESQ.
    THE STATE BAR COURT, Case No.04-H11843

    I am a resident of the State of California, over the age of eighteen
years, and not a party within this action. My business address is: 2822 E.
Warner Fresno, Ca 93710.

    On the date specified below, I served the attached document titled
exactly:

    **REQUEST FOR TIME TO COMPLY WITH TERMS OF PROBATION**

☒  BY MAIL: by placing, the document(s) listed above in a sealed
    envelope with postage thereon fully prepaid, in the United States
    mail at Fresno, California addressed as set forth below.

☐  BY FAX: by transmitting via facsimile the document(s) listed above
    to the fax number(s) set forth below on this date before 5:00 PM.

☐  BY HAND: by personally delivering the document(s) listed above to
    the person(s) at the address(es) set forth below.

☐  BY OVERNIGHT MAIL: by causing document(s) to be delivered by an
    overnight delivery service company for delivery to the address(es)
    of the next business day.

☐  BY PERSONAL DELIVERY: by causing personal delivery by
    of the document(s) listed above to the person(s) at the address(es)
    set forth below.

    To the person or persons listed below by placing a copy thereof enclosed
in a sealed envelope with postage thereon fully prepaid, in the United States
Post Office at Fresno, California, addressed as follows:

ASSISTANE CHIEF TRIAL COUNSEL          THE STATE BAR COURT
DESIREE T. WASHINGTON, NO.21738        HEARING DEPARTMENT
THE STATE BAR COURT-HEARING DEPARTMENT  180 HOWARD STREET, 6TH FLOOR
180 HOWARD STREET, 6TH FLOOR           SAN FRANSISCO, CALIFORNIA 94105
SAN FRANSISCO, CALIFORNIA 94105

    I declare under the penalty of perjury under the law of the State of
California that the foregoing is true and correct.

Dated:08/13/04

                        _Maria L. Madrid_
                        MARIA T. MADRID

**Exhibit C**

FILED

SEP 1 5 2004

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

THE STATE BAR COURT

HEARING DEPARTMENT - SAN FRANCISCO

In the Matter of                          )    Case No. 04-H-11843-PEM
                                          )
GREGORY A. MORRIS,                        )    ORDER GRANTING MOTION TO SET
                                          )    ASIDE ENTRY OF DEFAULT
Member No. 91425,                         )
                                          )
A Member of the State Bar.                )

On May 28, 2004, the Office of the Chief Trial Counsel of the State Bar of California (State Bar) filed a Notice of Disciplinary Charges (NDC) alleging ethical misconduct against Gregory A. Morris (Respondent).

Due to Respondent's failure to timely file a response to the NDC, Respondent's default was properly entered on July 29, 2004. The order entering Respondent's default was served on Respondent on July 29, 2004.

On August 25, 2004, Respondent filed a motion to set aside default, and the State Bar filed opposition to Respondent's motion on September 3, 2004.

After reviewing and considering the parties' pleadings, the court finds good cause to grant Respondent's motion to set aside default.

Respondent's default is hereby set aside, and Respondent's inactive enrollment pursuant to Business and Professions Code section 6007(e)(1) is terminated.

Respondent's Answer to Complaint is accepted as his Response to the Notice of Disciplinary Charges and is deemed filed as of August 25, 2004.

IT IS SO ORDERED.

Dated: September 15, 2004

Pat McElroy

Judge of the State Bar Court

# CERTIFICATE OF SERVICE
**[Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]**

I am a Case Administrator of the State Bar Court.  I am over the age of eighteen and not a party to the within proceeding.  Pursuant to standard court practice, in the City and County of San Francisco, on September 15, 2004, I deposited a true copy of the following document(s):

## ORDER GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT

in a sealed envelope for collection and mailing on that date as follows:

[X]   by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at San Francisco, California, addressed as follows:

> **GREGORY ARTHUR MORRIS**
> **509 E MARINERS CIR**
> **FRESNO        CA 93720**

[X]   by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

**DESIREE WASHINGTON, Enforcement, San Francisco**

I hereby certify that the foregoing is true and correct.  Executed in San Francisco, California, on **September 15, 2004**.

**Lauretta Cramer**
Case Administrator
State Bar Court

# Exhibit D

1  GREG MORRIS
   4199 S. Cedar Ave
2  frensno, California  93726

**FILED**

AUG 2 9 2005

3

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

4        STATE BAR COURT OF CALIFORNIA, SAN FRANCISCO DIVISION

5

6

7                                      04-H-11843

8  STATE BAR OF CALIFORNIA,        : Case No.: No. 12-3-456789-1
                                   : MOTION TO ABATE; MOTION TO CONTINUE;
9           Plaintiff,             : MOTION TO VACATE; MOTION FOR
                                   : CONTINUANCE; MOTION TO WITHDRAW PLEA
10      vs.                        : STATE BAR RULES OF PROCEEDEDURE:  203;
                                   : 115; 117;
11  GREG A MORRIS, MEMBER,         :
                                   : CALIFORNIA RULES OF CIVIL PROCEEDURE:
12          Defendant             : 473
                                   :
13  _____:

14  THIS IS Greg A. Morris's first experience with this court in 25 years of

15  discipline-free practice.

16  All of Member Morris's working life has consisted of the Practice of Law and

17  member is not trained to engage in other occupations.

18  Due to the emotional stress, financial difficulties and depression,

19  associated with an *accidental* house fire and *false* criminal charges, Member

20  was not able to effectively participate in his defense of this

21  State Bar Proceeding.  (1)

22  Member had retained bar counsel, but a default of some kind (2) entered after

23  counsel withdrew due to Members inability to keep up with the payments and

24  substandard participation by Member, in his defense of the Bar Proceedings.

25  Several unanswered informal complaints also lurk in the background.

Summary of Pleading - 1 (a.)

1  Several weeks ago, the false Criminal charges (Arson and Inaurance Fraud)

2  were dismissed on the morning of Trial by the District Attorney).

3  Apparently, a fact the District Attorney had known since the charges were

4  filed was instrumental in his decision to dismiss the case for lack of

5  evidence, a year and a half later, on the morning of trial. *Morris had let*

6  *his insurance lapse several months before the fire, not considering fire to*

7  *very probable.*

8  /

9  /

10  /

11  /

12  /

13  /

14  /

15  /

16  /

17  /

18  /

19  /

20  /

21  /

22  /

23  /

24  /

25  /

Summary of Pleading – 1 (a.)

1  Since the criminal charges have been dismissed Morris is no longer suffering

2  from the level of stress and depression that rendered him incapable of

3  effectively participating in his defense and is now able to present a

4  meaningful response to all bar inquiries or litigation with or without the

5  assistance of counsel.

6

7  During the time the charges were pending , they caused several difficulties

8  in the Members life that underscore the devastating affect criminal charges

9  can have on an attorney compared to perhaps most other occupations and

10 provide substance to Members claim of a temporary inability to participate in

11 his defense:

12    1.  Morris's wife of ten years left, unable to cope with the financial and

13        social stigma associated with the charges.

14    2.  The press had widely announced Morris's guilt on virtually every form

15        of Media in the area, immediately after charges were filed and

16        continued to tout Morris's guilt during the pending criminal matter.

17    3.  Morris's law firm, which took years to establish collapsed due to

18        widespread loss of clients and the inability to recruit quality

19        employees and new clients.

20    4.  Morris spent over $200,000.00 repairing the uninsured home, only to

21        lose it to foreclosure when his dwindling law firm's losses combined

22        with the expense of staying in hotels and eating out for over a year

23        during repairs made it impossible to keep up with the mortgage.

24    5.  Several hundred thousand dollars worth of equity in the home were lost

25        at sheriff sale.

MOTION TO VACATE - 2

6. Morris's father, who was a source of moral support to Morris after the departure of Morris's wife, died amidst these difficulties.

7. Morris and everyone associated with him lost the respect of other members of the bar, and the bench. (This difficulty continued since Morris was not able to discuss the case due to pending criminal charges. The charges seemed to affect the Members ability obtain favorable court rulings and also affected the way his firm was treated by other members of the bar.

8. Morris's law firm collapsed and his office lease was lost due to lack of clients and dwindling fees. New clients were simply not coming to the Morris firm and those cases that did not discharge the firm after hearing the press coverage, were generally those with extremely weak cases, who were unable to find new counsel willing to take their case on a contingent fee.

These difficulties caused depression and mental anguish which was transferred to the State Bar Prosecution in this case to the point to which Member simply could not effectively deal with the Bars' requests for information and the requests of Morris's attorneys. Morris's failure to calander his due dates and other matters in the State Bar proceedings were negligent and excusable neglect and the rulings preventing Morris from practicing should me mandatory and discressionarily vacated under Cal. Civ. Pro. Section 473. Member additionally request 45 days to respond to any formal or informal matters before the State Bar or State Bar Court. Alternatively Member request the court set the guilty plea aside and have a trial on the initial charges.

MOTION TO VACATE - 3

1 | Respectively Submitted,

2

3 | Greg A. Morris

4 | 08/22/05

5 | RESPECTFULLY SUBMITTED,

6

7

8 | GREG A. MORRIS

9

GREG A MORRIS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MOTION TO VACATE - 4

1  GREG A MORRIS
   4199 S. Cedar Ave.
2  Fresno, California  93725
   Pro. Per.
3  0000

4                  STATE BAR COURT FOR THE STATE OF CALIFORNIA

5

6  STATE BAR OF CALIFRORNIA,        )  Case No.: No.
                                    )
7              Plaintiff,           )  DECLAIRATION OF GREG A. MORRIS
                                    )
8        vs.                        )
                                    )
9  GREG A MORRIS,                   )
                                    )
10             STATE BAR MEMBER     )
                                    )
11

12  _____ DECLARATION OF GREG A. MORRIS

13  I am over the age of 18 and if called as a witness could and would

14  competently testify the the following facts.

15  1. This is my first experience with this court in 25 years of discipline-free

16  practice.

17

18  2. Due to the emotional stess, financial difficulties and depression

19  associated with an uninsured accidental house fire and false criminal

20  charges, I was not able to adequately participate in the defense of this

21  state Bar Matter.

22  3. A default resulted after counsel withdrew due to My inability to pay and

23  sub-standard participation in the defense.

24  4. Several weeks ago, on the morning of the jury trial, the district attorney

25  dismissed the charges of Arson and Insurance Fraud ( I had let our insurance

    lapse several months prior to the fire, not considering fire to be  very

                              MOTION TO VACATE - 1

1  probable ) against Member admitting that he had insufficient evidence to

2  proceed.

3  5. Since the criminal charges have been dismissed I am no longer suffering

4  from the level of stress and depression that rendered me incapable of

5  effectively participating in my defense and I am now able to present a

6  meaningful response to all bar inquiries or litigation with or without the

7  assistance of counsel.

8

9  6. During the time the charges were pending , they caused several

10  difficulties in the my life and most deffinately caused a temporay inability

11  to participate in my defense:

12    1.  My wife of ten years left, unable to cope with the financial and

13        social stigma associated with the charges.

14    2.  The press had widely announced My guilt in virtually every form of

15        Media in the area, immediately after charges were filed and continued

16        to tout My guilt during the pending criminal matter.

17    3.  Our law firm, which took years to establish collapsed due to

18        widespread loss of clients and the inability to recruit quality

19        employees and new clients.

20    4.  I spent over $200,000.00 repairing the uninsured home, only to lose it

21        to forclosure when my dwindling law firms' losses combined with the

22        expense of staying in hotels and eating out for over a year during

23        repairs made it impossible to keep up with the mortgage.

24    5.  Several hundred thousand dollars worth of equity in the home were lost

25        at sheriff sale.

MOTION TO VACATE - 2

6. My father, who was a source of moral support to Morris after the departure of Morris's wife died amidst these difficulties. My mother moved to Florida to escape the non-stop questions of members of the community.

7. I lost the respect of other members of the bar, and the bench. (this difficulty continued since I was not able to discuss the case, due to pending criminal charges. The charges seemed to affect my ability to obtain favorable court rulings and also affected the way our firm was treated by other members of the bar.

8. Our law firm collapsed and my office lease was lost due to lack of clients and dwindling fees. New clients were simply not coming to the firm and those cases that did not discharge us after hearing the press coverage, were generally those with extreamly weak cases, who were unable to find new counsel, willing to take their case on a contingent fee.

These difficulties caused me to have depression and mental anguish which was transferred to the State Bar Prosecution in this case to the point where I simply could not effectively deal with the Bars' requests for information. Likewise, I was not able to respond to the requests of My attorneys. My own falure to calander his due dates and other matters in the State Bar proceedings was negligent and excusable neglect and attorney mistake.

MOTION TO VACATE - 3

I declare under penalty of perjury the foregoing is true and correct and that

this is executed in Fresno, California.

08/22/05

RESPECTFULLY SUBMITTED,


GREG A. MORRIS

GREG A MORRIS


MOTION TO VACATE - 4

1   GREG A MORRIS
    4199 S. Cedar Ave.
2   Fresno, California  93725
    Pro. Per.
3   0000

4                STATE BAR COURT FOR THE STATE OF CALIFORNIA

5

6   STATE BAR OF CALIFRORNIA,          )  Case No.: No.
                                       )  POINTS AND AUTHORITIES IN SUPPORT OF
7              Plaintiff,              )  MOTION TO VACATE; MOTION TO SET ASIDE
                                       )  GUILTY PLEA; MOTION FOR ADDITIONAL
8          vs.                         )  TIME TO RESPOND
                                       )
9   GREG A MORRIS,                     )
                                       )
10             STATE BAR MEMBER        )
                                       )
11

12  _____I.

13

14            WHERE EXCUSIBLE NEGLECT OF ATTORNEY MISTAKE

15             CAUSES A DEFAULT IT SHOULD BE SET ASIDE

16                 Cal. Civ. Pro. Section 473

17  Due to the emotional stess, financial difficulties and depression associated

18  with an uninsured accidental house fire and false criminal charges, Member

19  was not able to adequately participate in the defense of this state Bar

20  Matter.  A default resulted after counsel withdrew due to Members inability

21  to pay and sub-standard participation in the defense.   The false charges were

22  finally dismissed on the eve of trial unilaterally by the district attorney

23  who admitted to having insufficient evidence to proceed. This constitutes

24  excusable neglect and the order of Not Entitled to Practice should be

25  vacated.

                          MOTION TO VACATE - 1

Additionally, the mistakes of counsel caused the default, since Morris failed to properly check deadlines, calander case events and prepare the case. This mandates relief from the default.

Since the criminal charges have been dismissed Morris is no longer suffering from the level of stress and depression that rendered him incapable of effectively participating in his defense and is now able to present a meaningful response to all bar inquiries or litigation with or without the assistance of counsel.

Morris respectfully requests the court set aside the default, reinstate Morris's active status and grant Morris 45 days to respond to all formal and informal matters before the State Bar or State Bar Court.

Several weeks ago, on the morning of the jury trial, the district attorney dismissed the charges of Arson and Insurance Fraud ( member had let his insurance lapse several months prior to the fire, not considering fire to be a very probable occurance) against Member admitting that he had insufficient evidence to proceed.

However, the charges had already caused several difficulties in the Members life that underscore the devastating affect criminal charges can have on an attorney compared to perhaps most other occupations:

1.  Morris's wife of ten years left, unable to cope with the financial and social stigma associated with the charges.
2.  The press had widely announced Morris's guilt on virtually every form of Media in the area, immediately after charges were filed and continued to tout Morris's guilt during the pending criminal matter.

3.  Morris's law firm, which took years to establish collapsed due to widespread loss of clients and the inability to recruit quality employees and new clients.

4.  Morris spent over $200,000.00 repairing the uninsured home, only to lose it to forclosure when his dwindling lawfirms losses combined with the expense of staying in hotels and eating out for over a year during repairs made it impossible to keep up with the mortgage.

5.  Several hundred thousand dollars worth of equity in the home were lost at sheriff sale.

6.  Morris's father, who was a source of moral support to Morris after the departure of Morris's wife died amidst these difficulties.

7.  Morris and everyone associated with him lost the respect of other members of the bar, and the bench.  (this difficulty continued since Morris was not able to discuss the case due to pending criminal charges.  The charges seemed to affect the Members ability obtain favorable court rulings and also affected the way his firm was treated by other members of the bar.

8.  Morris's law firm collapsed and his office lease was lost due to lack of clients and dwindling fees.  New clients were simply not coming to the Morris firm and those cases that did not discharge the firm after hearing the press coverage, were generally those with extreamly weak cases, who were unable to find new counsel willing to take their case on a contingent fee.

These difficulties caused depression and mental anguish which was transferred to the State Bar Prosecution in this case to the point to which

1  Member Morris suffered from a temporary mental infirmity that rendered him

2  incapable of participating in his defense of the case.

3

4              WHERE AN ATTORNEY IS RENDERED INCAPABLE OF

5              PARTICIPATING IN HIS DEFENSE, THE PROCEEDINGS

6              SHOULD BE ABATAED AND ALL ACTIONS THAT TOOK

7              PLACE DURING THE PERIOD OF IMFIRMITY SHOULD

8                BE REVERSED.  Cal. Bar Rules of Procedure

9                   117. State Bar Pro. Rule 203

10

11

12  T declaration of Morris clearly show probable cause to believe Morris was

13  suffering from a temporary mental infirmity that prevented him from

14  participating in his defense.  It would be unfair to let a default stand

15  against Morris under such circumstances.

16                            II

17            WRITTEN MOTIONS FOR CONTINUSANDCE WILL

18              BE CONSIDERED BY THE COURT IN ITS

19            DISCRESSION. State Bar Pro. Rule 115

20

21

22  The court should continue all due matters so Morris can have time to respond

23  to the Bars' allegations. 45 days is a reasonable period of extension.

24  Under the circumstances, State Bar Member Morris is in his capacity as a

25

1  Member simply could not effectively deal with the Bars' reqests for

2  information and the requests of Morris's attorneys.  Morris's falure to

3  calander his due dates and other matters in the State Bar proceedings was

4  negligent and excusable neglect and the rulings preventing Morris from

5  practicing shoud me manditorily and discressionarily vacated under Cal. Civ.

6  Pro. Section 473.  Alternativly Member request the court set the quilty plea

7  aside and have a trial on the initial charges.

8  Respectively Subbmitted,

9

10  Greg A. Morris

11  08/22/05

12  RESPECTFULLY SUBMITTED,

13

14

15  GREG A. MORRIS

16                                              _____
                                                GREG A MORRIS
17

18

19

20

21

22

23

24

25

*FOOTNOTES*

1.  *The Sate Bar Proceeding arose out of money used to reimburse less than half Members out of pocket costs, that was not placed in member's trust account, since it was to be used to reimburse Member part of out of pocket costs, with full knowledge of client. Member, did not feel that money not belonging to client, should be co-mingled with client funds, but bar counsel apparently disagreed. Member accepted a private reprimand, which was described by bar counsel as a slap on the wrist and agree to take ethics school. However, on the day planned to take the school, Member had a sudden client matter that came up and chose to take the client hearing before his own, pursuant to the Rule required clients interests be before members'. Bar counsel apparently disagrees with this as well, inasmuch as, the current complaint involves members' actions in regard to the school and a request for an extension was denied. (Abbreviated version of complaints).*

2.  *Member is does not have copies of the current pleadings and has not been advised by counsel of the exact nature of the current default.*

Proof of Service

I am a competent adult and if called as a witness could and would competently testify to the following:

1.  I deposited a true and correct copy of the Motion to Vacate, Motion to Extend Time and Motion to set aside guilty plea in the United States Mail, Postage Prepaid to Office of Chief Trial Counsel 180 Howard San Francisco 93726, by depositing the envelope into the mail receptacle.
    I am not a party to this action.

I declare under penalty of perjury that the foregoing is true and correct and that this is executed in Fresno, California.

*Michael Black*

08/24/05

# Exhibit E

**FILED**

OCT 0 4 2005

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

## THE STATE BAR COURT

## HEARING DEPARTMENT - SAN FRANCISCO

| | |
|---|---|
| In the Matter of | Case No.  04-H-11843-PEM |
| GREGORY A. MORRIS, | |
| Member No. 91425, | **ORDER DENYING MOTION TO VACATE DEFAULT AND OTHER RELATED MOTIONS** |
| A Member of the State Bar. | |

**TO ALL PARTIES AND COUNSEL IN THE ABOVE ENTITLED MATTER:**

By motion filed August 29, 2005, respondent has sought relief from default and moved the court to set aside the default entered June 21, 2005, on the grounds of emotional stress, financial difficulties and depression.  Respondent also filed a motion to abate, motion to continue and motion to withdraw plea.

The State Bar opposes respondent's motions.

Despite respondent's current misfortunes, respondent has failed to meet the requirements for vacating default under rule 203(c) of the Rules of Procedure of the State Bar.  No evidence of mistake, inadvertence, surprise or excusable neglect was presented.

Therefore, for no good cause shown, the court hereby **DENIES** respondent's motion to set aside his default and other related motions – motion to abate, motion to continue and motion to withdraw plea.

IT IS SO ORDERED.

Dated: October 4 , 2005

_Pat McElroy_
**PAT McELROY**
Judge of the State Bar Court

# CERTIFICATE OF SERVICE
## [Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of San Francisco, on October 4, 2005, I deposited a true copy of the following document(s):

### ORDER DENYING MOTION TO VACATE DEFAULT AND OTHER RELATED MOTIONS

in a sealed envelope for collection and mailing on that date as follows:

[X]    by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at San Francisco, California, addressed as follows:

> **GREGORY ARTHUR MORRIS**
> **GREG MORRIS & ASSOCIATES**
> **2822 N BLACKSTONE AVE**
> **FRESNO          CA 93703 1002**
>
> **(COURTESY COPY)**
>
> **GREGORY ARTHUR MORRIS**
> **4199 S CEDAR AVE**
> **FRESNO CA 93726**

[X]    by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

> **MANUEL JIMENEZ, Enforcement, San Francisco**

I hereby certify that the foregoing is true and correct. Executed in San Francisco, California, on **October 4, 2005.**

_Lauretta Cramer_
Lauretta Cramer
Case Administrator
State Bar Court

**Exhibit F**

(State Bar Court Case No. 04-H-11843; 04-O-14241; 04-O-14108; 04-O-15199; 04-O-15642; 05-O-00021)

S142424

## IN THE SUPREME COURT OF CALIFORNIA

### EN BANC

SUPREME COURT
**FILED**

JUN 1 3 2006

Frederick K. Ohlrich Clerk

_____
DEPUTY

IN RE **GREGORY A. MORRIS** ON DISCIPLINE

It is hereby ordered that **GREGORY A. MORRIS, State Bar No. 91425,** be disbarred from the practice of law and that his name be stricken from the roll of attorneys. Respondent is also ordered to comply with rule 955 of the California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the date this order is effective.* Costs are awarded to the State Bar in accordance with Business and Professions Code section 6086.10 and are enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment.

*(See Bus. & Prof. Code, § 6126, subd. (c).)

_____
**GEORGE**
Chief Justice

I, Frederick K. Ohlrich, Clerk of the Supreme Court of the State of California, do hereby certify that the preceding is a true copy of an order of this Court as shown by the records of my office.

Witness my hand and the seal of the Court this

_13_ day of _June_, 20 _06_.

_____
Clerk

By: _____