Gregory Morris
1432993-0674243
P. O. Box 872
Fresno, California  93712

FILED

08 MAR 28

RICHARD
CLERK
U.S. DISTRICT COURT
DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA (San Francisco)

GREGORY A. MORRIS,
               PLaintiff,

    v.

STATE BAR OF CALIFORNIA, ET AL.
                   Defendnats.

CASE No.  3:07-CV-02890-EMC PJH

MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION
TO STATE BAR DEFENDANT'S
MOTION TO DISMISS

MOTION TO AMEND COMPLAINT

# TABLE OF CONTENTS

I    Introduction . . . . . . . . . .    1

II   Background . . . . . . . . . .    7

A.   'Allegations against State Bar Defendants . . .    7

B.   The State Bar Defendants . . . . . . .    12

1.   The State Bar of California . . . . .    12

2.   The Board of Governors . . . . .    12

3.   The Lawyers assistance Program (L.A.P.) . .    13

4.   Individual Defendants.    14

5.   Plaintiffs Proposed Amended Complaint . . .    14

III.  ARGUMENT . . . . . . . .    18

A. Rule 12(b)(1) Plaintiff proposed AMENCED complaint will survive
    a motion to Dismiss . . . . .    18

B. Rule 12(B)(6)  Plaintiff seeks to amend his case .    41

1. Plaintiff will allege facts in connection with L.A.P. .    41-42

a. Plaintiff will make direct allegations againts the Bar.
    officials . . . . . . . . .    42

3. Plaintiff will allege violations of right to Due Process . .    42

4. Plaintiff will show facts that defendants violated
    federal Rights .  .  .  .  .  .  .    42

IV Conclusion . . . . . . .    58

1. UNITED STATE SUPREME COURT CASES:               Pgs

ADDington v. Texas  99 S.Ct 1804 (1979)              20

EXPARTE YOUNG,

209 U.S. 123, 28 S.CT. 441 (1908)              3  19

HIRSH v. JUSTICE OF SUPREME COURT OF CALIFORNIA,

67 F3D 708, 715 (9TH CIR. 1995)              19

HAFER V. MELO

502 U.S. 21, 112 S.CT. 358 (1991)              20

JONES V. UNITED STATES

103 S.CT              20

MT. HEALTHY CITY SCHOOL, DIST. BOARD OF EDUC. V DOYLE

975 S.CT 566; 429 US 274 (1977)              13

NINTH CIRCUIT CASES:

CLARK V. WASH,

366 F. 2D 678 (9TH CIR 1966)              43

FRANSES V. STONE,

221 F.R 3D 100              20

HERSH V. JUSTICE OF THE SUP CT OF CAL,

67 F.3D 708 (9TH CIR. 1995)              19/58

1  HOLT V. NEVADA CITY PUBLIC SCHOOL DISTRICT.

2  374 F.3D 1176 (9TH CIR 1998)                                    13

3

4  HALE V. STATE OF ARIZ,

5  962 F 2.ND 1356 (9TH CIR 1992)                                  13

6

7  LUPERT V. CAL STATE BAR.

8  761 F. 2D 1325, 1327 (9TH CIR, 1985) CERT. DENIED, 474 U.S,

9  916, 1065, (CT 241 (1985))                                     19

10

11  MITCHELL V. LOS ANGELES COMMUNITY COLLEGE DIST,

12  801 F.2D 198 (9TH CIR 1988)                                    13

13

14  PRICE V. ALASKA

15  915 F.2D 469 (9TH CIR 1990)                                    20

16

17  ROSENTHAL V. JUSTICES OF THE SUP CT OF CAL,

18  910 F.2D 501 (9TH CIR, 1990)                                   21

19

20  OTHER CIRCUIT CASES:

21

22

23  FREDERICK L. V. DEPARTMENT OF PUBLIC WELFARE OF PA,

24  C.A 3 (P.A) 2005, 422 F.3D 151)                                37

25

26  GRIESS V. STATE OF COLO,

27  841 F2D 1042 (10TH CIR 1988)                                   20

28

1. MUSSLEWHITE V. STATE BAR OF TEXAS
710 F.2D 1075 (5TH CIR 1983)                                    34

PDE V. ALEY DISCIPLINE,
BD. NO. 95-1259, 1996, U.S. APP.T (6TH CIR 1996)              54

CALIFORNIA DECISIONS:

ABBOTT V. INDUSTRIAL ACCIDENT COMMISSION
(APP. 3 DIST 1936)                                            45

IN RE CHRENTINA B,
(APP. 4 DIST. 1993) 19 CAL. APP 4TH 1441)                     45

CAL. RPTR,
2891 (1988)                                                    45

GILLIPSIE V. GOULY
(1998) 120 CAL. 515                                           45

HEIGHT V. HEIGHT,
(1977) 67 CA 3D 498, 503, 136, CR 685                         46

IN RE JESSICA G                                               45
(APP 2 DIST, 2001) 113 CAL. RPTR, 2D 714, APP 4TH 1180

Pennsylvania V. Yeskey
524, U.S. 206, 210, 118 S.Ct. 1952 (1998)                    27

OLIVER V. GRACE
(1942) 19 CAL 2D 570                                    45

IN RE RISE
95 CAL RPTR 2D 1ST 317                                  46

STATE V. STATE BAR
46 CAL 3D, 48, 55, 757, P 2D1, 249                      57

STATUTES

CAL BUS,
PROF CODE 6010, 6025, 6076, 6086                        12-13

CAL BUS,
PROF CODE 6230, 6231                                    13

CALIFORNIA CIVIL PROCEDURE
2 372

TITLE.
42 U.S.C (1983)

REST 2D JUDGEMENT 660

Tennessee V. Lane
541 U.S. 509, 559-560, 124 S. Ct. 1978 (2004)     28

Immunity, U.S. V Georgia
126 S. ct 882, 546 U.S. 151 (2006)     28

Hanson V Medical Bd. of Cal.
279 F. 3d 1167 (9th Cir 2002)     29

Phiffer V. Colum.
River Corr. Inst. 384 F. 3d 791 (9th cir. 2004)     29

Vargas V. City of New York
377 F. 3d 200 (2d Cir. 2004)     34

Musselwhite V. State Bar of Texas
710 F. 2d 1075 (5th cir. 1983)     34

Exon Mobile V. Saudi Basic Industries
544 U.S. 280, 125 S. Ct. 1517 (2005)     37

Clark V. Wash
366 F. 2d. 678 (9th cir. 1966)     43

Thompson V. Holy Family
121 F 3d 537,     53

Roberts V. College of Desert
870 F 2d 1411 (9th cir. 1988)                          14

Lupert V. Cal. State Bar.
761 F 2d 1325, 1327 (9th cir 1985)                     19

Francis V. Stone
221 F.R. 3d 100,                                       26

Jones V. United States
103 S.ct. 3043, 463 U.S. 354                           20

University of Alabama V. Garrett
531 US. 356, 363, 364, 121 S.ct. 955 (2001)           22

MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

Plaintiff is a disabled person by the Sobial Security Administration
of the Uniied States Government, and is entitled to protection under the
Americans with Disabilities Act.

This case arises out of a prosecution in State Court, agianst
plaintiff for Arson and Insurance Fraud, at a time when plaintiff did
not even have any insurance.  Plaintiff had been told, wrongfully, by
other defendants, that his house was started on fire by an arsonist, when
plaintiff was in the home  (plaintiff was sleeping when the fire started).
When plaintiff was unable to suggest to the authorities, who mighth be
wanting him or his family dead, plaintiff was prosecuted for arson
and insurance fraud, without probable cause.

Several years prior to the fire, plaintiff and his family (Mary,
his wife, also an attorney, and their to children, Matthew and Megan)
were on a family vacation, skiing in the mountains of New Mexico, when
their pilotacrashed thier airplane into the snowy mountains of New Mexico.
The 4 of them, plus the pilot, were traped indthe airplane for several
days prior to being rescued.  All were horrendously injured, and plaintiff's
wife died 30 minutes before they were finally rescued.  It took several
years and multiple surgeries before plaintiff and his remaining family
had reached a plateau of recovery.  Unable to come up with a definitive
conclusion on the crash, the National Transportation Safety Board, called
the cause of the crash, pilot disorientation.

Because of the severity and somewhat uncertain circumstances of
airplaneecrash, plaintfff became veryifearfull and stressed, when he
was told by the defendant expertsfdthat he was now the victim of an arson
and perhaps attempted murder.  In fact, he believed the defendants, and

1  began to believe that the crash was caused by some type of sabotage, and

2  that his wife's death must have been, in fact a murder. Plaintiff was

3     Plaintiff was so distressed and alarmed by the thought of his remaining

4  family being in constant and imminant danger, and associated events ass-

5  ociated with being wrongfully prosecuted for arson, and the press coverage

6  associated with the prosecuiton, that he became very ill.  He did not

7  know what was wrong with him, but he became wholly disoriented, mixed

8  up, unable to keep appointments, loseing time, suffering from horrible

9  nightmares, unable to even sleep indoors, homeless and unable to care or

10  even fend for himself.

11     During this time of severe illness and homelessness, plaintiff was

12  disbarred on false charges of theft and forgery.  Because of his illness

13  and state of confu<ion, he used cashiers checks to pay expenses, physicians

14  and clients, on personal injury cases, as well as his fee.  He would

15  typically deposit the insurance draft/check, into the trust account, and

16  draw out of the trust account, cashiers checks for all the payees, instead

17  of writing his own checks out of the trust account, in most cases.

18

19     While plaintiff was homeless, a client questioned his payment by

20  a cashiers check to the Bar because it had the names of his doctors added

21  to it and he could not cash it without paying the lienholders.

22     An audit was done on plaintff's trust account for many past years.

23  The cashiers checks were not a part of the plaintiff's bank statement,

24  so it was assumed that plaintiff had stolen whatever money was withdrawn

25

26  f                    ¼            INTRODUCTION                    Page 2

27

28

in the form of cashiers checks.  Plaintiff was disbarred on this incorrect

assumption.  Plaintiff was not served in a manner that resulted in actual

notice to him, and, in fact, was served in a manner that was certain to not

give actual notice to the plaintiff.  Additionally the State Bar was fully

aware, at the time of the default Bar proceedings, that plaintiff was

mentally ill with sever Post Tramatic Stress Disorder (It was the defendant

LAP, who diagnosed plaintiff, after he had sought help from them voluntarily,

and been accepted into their program), disoriented, mentally incompetant,

mentally incapacitated, unable to fend for himself, homeless and badly in

need of psychotropic medications.  In fact, LAP recommended that plaintiff

be hospitalized immediately.  Plaintiff was diagnosed in the fall of 2006,

by LAP, wherein hospitalization was recommended, shortly after being

examinged by the LAP psychologist.  He was disbarred by default due to

Notices of Disiplinary Charges he knew nothing about, several months later.

He was finally notified by LAP employee Dr. Greg Doe, about the dis-

barrment, after it had become final, with no recourse.

Then plaintiff was arrested and has been incarcerated fighting false

charges arising out of the same false assumptions, since August or 2006.

Plaintiff now seeks to file a First Amended Complaint in this matter.

He seeks to redress violations of his rights to Notice and Opportunity

to be Heard.  His amended complaint will allege violation s of plaintiff's

right to proceedural due process, equal protection, Title II of the ADA,

Title 42 UIS.C. § 1983 and other Federal Constitutional and statutory

rights.

Plaintiff makes an  offer of proof that the money alleged to have

been stolen was legitimately paid out of the settlement, but not with

standard printed checks.  Plaintiff ligitimatly drew trust account checks

from his account.

INTRODUCTION

Plaintiff was also charged with forgeing documents, but the money that was alleged

1   misappropriated by plaintiff was, in fact legitimately paid out on behalf of

2   clients, and that the documents claimed to have been forged, were signed

3   under a valid and specific power of attorney, in the regular course of

4   plaintiff's business as a lawyer. Had plaintiff been served with process

5   and had plaintiffs disability allowed him to paticipate in the proceedings,

6   this information would ahve come to light, and the charges would have been

7   dismissed as without merit. Plaintiff was denied this opportunity to

8   proove his innocence of thesesserious charges because he was never served

9   with the Notice to Show Cause complaints, and because he was disabled by

10  mental illness and would have been completely unable to participate in the

11  proceedings, at the time they occured. The State Bar Defendants knew

12  that plaintiff was mentally incompetant, and that he had not been personally

13  served with process, at the time the proceedings were pushed through the

14  State Bar Court. The State Bar defendant's also knew, at the time they were

15  prosecuting this matter by default, that the plaintiff was homeless,

16  impovershed and mentally ill. Not effort was made to either personally

17  serve plaintiff, during this time, even though the State Bar knew of plaintiff's

18  whereabouts, or to appoint counsel for the severly disabled plaintiff.

19      Plaintiff was a member of the State Bar of California continuously

20  since 1979, without any history of disipline, other that the current

21  matters. In appaoximately 2002-2003, plaintiff became disabled by mental

22  illness. He was incapacitated and homeless, since that time.

23      Plaintiff has been plagued, with severe physical and psychological

24  symptems of Post Tramatic Stress Disorder and aggrivated Attention

25  Deficit Disorder. He wound up disoriented, confused and living on the streets,

26  homeless. He routinely was forced to sleep in the doorways of businesses,

27  that were closed for the evening, as this provided, at least some shelter

INTRODUCITON

1    from the eliments.

2         Plaintiff is incarcerated in the Fresno County Jail and is represented

3    by J. Tony Serra.  The matter has bee scheduealed for trial on May 27, 2008.

4    Given the extremely restricted conditions in county jail, plaintiff

5    respectfully requests that he be given to June 28, 2008, within which to

6    file an amended complaint.

7         If plaintiff is given until that date, he will have access to a computer

8    to prepare the complaint and additional legal materials to avoid having

9    amendable problems with his complaint.

10        The following points and authorites had to be printed by others, primarily,

11   because plaintiff's printing in not legible.  Plaintiff has no computer

12   or word-processer access and only has limited access to a 30 year old type=

13   writer, on which he is not proficient.

14        Plaintiff has attached a report that references his mental condition,

15   but is unable to obtain a great deal of care in jail, except for medication.

16        While plaintiff was in jail, he has been treated with 4 different

17   psychiatric medications that have greatly improved is condition.

18                                    Footnotes

19   A.  Plaintiff had entered an appearance through counsel on only one Notice
         of Disiplinary Charge.  This is the only one plaintiff knew about, prior
20       to the time of his disbarrment.  It involved his falure to take a one
         day ethics seminar, and file 4 quarterly reports.  These were part of a
21       private reprimand for a minor non-moral turpitude bar violation.  In fact,
         matter would not have resulted in a private reprimand, but, according to
22       the Bar prosecuter, would have been dismissed at the complaint statge, had
         plaintiff timely responded to the informal bar complaint.
23

24       Plaintff was suffering from a mental illness that caused him to be unable
         to scheduial and attend many activities.
25

26       His falure to comply with the terms of the private reprimand would not
         have resulted in his disbarrment, especially since his illness was
27       a large factor in his falure to comply.

28       Plaintiff did not know he had a mental illness or what was wrong with him
         until he was diagnosed with this in connection with his participation in
         LAP (State Bar Lawyers Assistance Program, his participation was completely
         voluntary, to try to get help for his difficulties.

                                INTRODUCTION

1  Prior to the administration of this medication, plaintiff was incapacitated

2  and incompetant.  While plaintiff is, according to the attached report,

3  marginally competant, at this time, prior to this administration of med-

4  ication, plaintiff was unable to fend for himself.  The State Bar Lawyers

5  Assistance Program, a program plaintiff had voluntarily gone to for

6  help, had agreed to provide psychiatric and medication services to plaintiff.

7  In fact, the State Bar had agreed to forward the money for these services/

8  However, while they agreed that plaintiff needed to have treatment wiht

9  psychiatric medications and offered to arrange this, they unbeknowst to

10  plaintiff, chose to wait to send plaintiff to a psychiatrist for approximately

11  9 months while the Bar, unbeknownst to Morris, was proceeding to default

12  Morris by default judgement.  The bar had known plaintiff was mentally

13  incapacitated and needed medication, known he was not aware of the charges

14  and had not received actual notice of the Notice of Disiplinary Charges

15  and proceeded anyway.

FOOTNOTES

16

17  Plaintiifff's counsel withdrew shortly after they entered an appearance
   because plaintiff was unable to cooperate in the defense, and becuase he
18  could not make additional payments to counsell

19  New charges were filed, after counsel withdrew, but plaintiff never
   recieved notice of them and was too ill to have participated in defending
20  them, had he recieved actual notice.

21

22

23

24

25

26

27

28

II

Back Ground

(A) Allegations against State Bar
Defendants.

Plaintiff requests leave to amend his
Complaint. While his proposed Amended Com-
plaint Will specify allegations with much
more particularity, some of the allegations plaintiff
Will Make if he is allowed to amend are as
Follows:

Plaintiff was Mentally ill, incompetent
and incapacitated during the time the Bar
charges were being prosecuted.

The State Bar including the individual
Bar investigators and the individual Bar pro-
secutors Knew that plaintiff was Mentally
ill, incapacitated incompetant and homeless
and impoverished during the time the Bar
charges were being prosecuted.
the Plaintiff was determined to be a Mentally disabled
person. by the Social Security Administration during
the time the Bar disiplinary charges were being
prosecuted.

The bar investigators and prosecutors knew plain-tiff was homeless and impoverished, and that he had no office or home address while Bar charges were being prosecuted. Substantially all of the mail sent to plaintiff during the prosecution was returned as undeliverable to the Bar. What little mail was not returned was not delivered to plaintiff.

During the Bar prosecution, plaintiff was a patient with, and recieving psychiatric rehabilitative services with the Lawyers Assistance Program (LAP). LAP determined that plaintiff was afflicted with Post Tramatic stress Disorder. His condition was so severe that LAP recommended psychiatric hospitalization.

During the State Bar prosecution, Plaintiffs condition was so severe that he was assigned a roving psychiatric social worker from the UC San Francisco Medical school, to accompany him to all appointments or other activities he needed to attend.

The Bar and its officials knew that plain-tiff was homeless in San Francisco during

The time of the Bar proceedings. They also knew
plaintiff.

Although Plaintiff was homeless, with out any
address, the Bar and its officials knew
plaintiffs whereabouts at up to 3, may be 4
places, Plaintiff was scheduled to be in connection
with his psychiatric treatment at LAP, every week.

LAP and the state Bar knew Plaintiff
needed to be given psychotropic medications to
restore him to competency, enough to participate in
the ongoing Bar charges. LAP and the
state Bar undertook to provide and pay
for these services on behalf of plaintiff and
plaintiff was so advised. However, the Bar,
LAP and the Bar officials chose to wait over
16 months to provide these needed services,
until the Bar proceedings was over and final,
even the time for plaintiff to file a
petition for review had expired while the
psychiatric and medication services were being
deferred.

Too, during this Time the Bar and its
officials knowingly chose to mail-serve all
notices and documents to plaintiffs invalid address

10

1
2    Fresno, rather than personally serving him
3    with them, at one of the 2 or 3 appointments
4    he had been scheduled to attend by LAP, every week.
5
6    As a result of this method of service, at a time
7    it was known to be useless as a means or getting
8    documents or information to plaintiff, Plaintiff was
9    Not aware of the charges of misappropriation against
10   him.
11   While Plaintiff was too ill to participate in
12   the proceedings anyway, perhaps he could have,
13   at least, given to papers to his psychologist,
14   who would have helped in some way.
15
16   Plaintiff is innocent of the charges lodged
17   against him, by the state Bar but, because of
18   his mental illness, and because he was unaware of
19   the charges, he did not have an opportunity to
20   present testimony or evidence that would have
21   exculpated him.
22
23   Plaintiff had been a practicing attorney for 25
24   years, with no history of Bar discipline.
25
26   Plaintiffs mental illness is post tramatic
27   stress disorder and aggrivated attention
28

10

1

2  Deficit Disorder.

3  According to psychologists who have examined and

4  treated plaintiff, the traumatic events that caused

5  the PTSD include an airplane crash that

6  Took the life of plaintiff's wife, also an attorney

7  and catastrophically injured their two children and

8  Plaintiff, and a house fire in 2002, from which

9  plaintiff barely escaped, that the authorities told

10 plaintiff was arson.

11 When plaintiff could not name the arsonist,

12 He was arrested and prosecuted for arson

13 and insurance fraud.

14 Plaintiff had no insurance, and certainly did

15 not set fire to his house.

16 Plaintiff began to feel the plane crash

17 may have been from sabitage by the same

18 unknown assalant who had set fire to the

19 family home.

20 The mental illness is so severe that it

21 debilitated plaintiff and he was eventually

22 found to be disabled by the social security

23 administration of the united states government.

24

25 Plaintiff's Proposed amended complaint will allege

26 additional facts to support his cause of action,

27 For numerous violations of Federal Constitutional

28



and statutory law, by the State Bar of
California, and some of its officials, in both their
individual and official capacities, under color
of state law.
He will also make actionable factual allegations
against LAP and its officials.

B.  The State Bar Defendants.

In plaintiffs proposed amended complaint,
he will not have a seperate catigory for
the state Bar defendants.

II. B. 1.  The State Bar of California.
Plaintiff agrees that the 9th Circuit has
uniformly held that, When it concerns Bar
discipline, the state Bar is an arm of the
Supreme Court of California (the state),
for purposes of the 11th amendment. It is a
municipal corporation.

2.  The board of Governors.
The State Bar board of governors, and its individual
members, is responsible for the policies procedures,
Custom rulmaking, management and operations of the
State Bar. (See Cal. Bus. + Prof. Code



Section:

2) 6010, 6025, 6076, 6086.5,
For example.

3. The lawyers assistance program. (LAP).

LAP is an unincorporated association that
provides mental health and substance abuse.
services to members of the state Bar. The mental
health services are advertised by the LAP, as
a specialized mental health service, with special
expirtise in treating attornys with mental health
issues.
   LAP was formed to "rehabilitation lawyers
who are affected with mental illness and"
return them to the practice of law.
(see Cal. Bus. and Prof. Bode § 6230 & 6231).
   LAP does not appear to be an arm of
the state, under the factors set fourth in
Mt. Healthy City School, District Board of
Educ. V Doyle 975 S. Ct. 586; 429 U.S.
274 (1977). See also Holtz V. Nevada
City Public School Dist. 374 F. 3d 1176
(9th Cir 2003); Mitchell V. Los Angeles Community
College Dist. 801 F. 2d 198 (9th c.r. 1988);
Hale V State of Ariz. 962 F. 2d 1356
(9th cir. 1992).

③

At the very least, it Would appear that discovery might be helpful, if there is a reasonable allegation by the Bar that L.A P is somehow an arm of the State. (Roberts v. College of the Desert 870 F. 2d 1411 (9Th Cir. 1988).

4. Individual Defendants.

Both the State Bar and LAP have officials against Whom Plaintiff Will make allegations in a proposed amended Complaint, in both their official and their individual capacities. The allegations in plaintiffs proposed amended Comeplaint, Will make a showing of Numerous violations of Federal Constitutional and statutory law, under Color of State Law.

5.

Plaintiffs Proposed amended Complaint Will More particularly set forth the acts of the Doe Defendants. Some Will be individuals and others Will be organizations.

BAR AND/OR LAP OFFICIALS, IN THIER INDIVIDUAL
AND/OR OFFICIAL CAPACITY, UNDER COLOR OF STATE LAW.

II. (A)(C)  PLANTIFFS STATE BAR PROCEEDINGS.

THERE WERE APPARANTLY SIX (6) [2]. NOTICES OF DISIPLINARY
CHARGES. [1] (04-H'-11843, 04-0-14241, 04-0-15199, 04-
0-15642, 04-0-14108, 05-0-00021).

PLANTIFF ENTERED AN APPEARANCE IN 04-H-11843, ONLY.
SINCE HE WAS HOMELESS, IT WENT TO HIS MOTHERS HOUSE. BY
THE TIME HE RECIEVED IT FROM HIS MOTHER, IT WAS IN DEFAULT.
A MOTION TO SET ASIDE THE DEFAULT WAS GRANTED.
THE CASE INVOLVED PLAINTIFFS FAILURE TO TAKE AN ETHICS
COURSE.

(FOOTNOTES)

1. THIS IS THE FIRST OFFICIAL DOCUMENT FILED IN STATE BAR COURT AGAINST
A MEMBER; IT CONTAINS THE CHARGING ALLEGATIONS.
2. PLAINTIFF HAS ONLY SEEN THE FIRST ONE (04-H-11843). NO MORAL
TURPITUDE OFFENSES WERE ALLEGED IN THIS NOTICE.



AND MAIL 4 QUARTERLY REPORTS, AS REQUIRED BY A PRIVATE REPRIMAND THAT RESULTED FROM A MINOR BAR VIOLATION. THIS NOTICE OF DISIPLINARY CHARGE (04-H-11843) IS THE ONLY CHARGE PLAINTIFF WAS AWARE OF, UNTIL HE WAS PERSONALLY SERVED WITH THE STATE BAR COURT FINDINGS AND RECOMENDATION FOR DISBARMENT ALONG WITH THE ORDER OF DISBARMENT, SOMETIME IN AUGUST OF 2006. THE ORDER WAS PERSONALLY SERVED ON THE PLAINTIFF, ABOUT A WEEK AFTER THE DEADLINE FOR A PETITION FOR REVIEW, THAT THE SUPREME COURT HAD PASSED. THE PETITION FOR REVIEW IS THE LAST RECOURSE A DISBARRED MEMBER HAS TO CONTEST HIS/HER DISBARMENT.

DURING THE TIME CASE # 04-H-11843 (HEREINAFTER CALLED THE "ETHICS COURSE CHARGE") WAS PENDING BY ITSELF, PLAINTIFF WAS SERIOUSLY MENTALLY ILL, [3.] UNABLE TO FEND FOR HIMSELF AND HOMELESS.

HE INITIALLY RETAINED COUNSEL, BUT WAS NOT ABLE TO PARTICIPATE IN HIS DEFENSE. PLAINTIFF WAS NOT ABLE TO PAY ADDITIANAL MONEY TO RETAIN COUNSEL AND THEY WITHDREW. AFTER HIS LAWYER WITHDREW, SOME TYPE OF DEFAULT WAS ENTERED. PLAINTIFF NEVER SAW THE MOTION TO ENTER DEFAULT, OR ANY OTHER DOCUMENTS THAT RELATED TO IT, BECAUSE HE WAS HOMELESS, ILL, AND HAD NO ADDRESS. HE MOVED TO SET ASIDE THIS SECOND DEFAULT PERTAINING TO THE ETHICS COURSE CASE, BUT IT WAS DENIED. (SEE EXIBIT 1).

(FOOTNOTES)

3. PLAINTIFF DID NOT KNOW HE HAD A MENTAL ILLNESS, AT THE TIME. HE ONLY KNEW THAT HE WAS DISORIENTED, SLEEPING OUTSIDE AND HAVING INTENSE EPISODES OF SYMPTOMS THAT HE LATER LEARNED FROM HIS PSYCHOLOGIST, WERE CAUSED BY POST TRAUMATIC STRESS DISORDER.



PLAINTIFF DID NOT KNOW WHAT BECAME OF HIS MOTION TO SET ASIDE THE DEFAULT, UNTIL HE WAS SERVED WITH THE ORDER OF DISBARMENT IN AUGUST OF 2006. THE FIRST TIME HE SAW OR HEARD ABOUT EXHIBIT 1, WAS AS AN ATTACHMENT TO THE STATE BAR'S CURRENT MOTION TO DISMISS [4].

C(2). PLAINTIFF WOULD NOT HAVE BEEN FOUND GUILTY OF THE BAR VIOLATIONS, HAD HE BEEN GIVEN NOTICE AND OPPORTUNITY TO BE HEARD, AT A TIME WHEN HE WAS MENTALLY COMPETANT TO PARTICIPATE IN THE PROCEEDINGS.

THE STATE BAR AND IT'S OFFICIALS PROSECUTED PLAINTIFF, BY DEFAULT WITH FULL KNOWLEDGE THAT PLAINTIFF WAS MENTALLY INCOMPETANT, INCAPACITATED, HOMELESS AND TOTALLY UNAWARE OF THE LAST 5 NOTICES OF DISIPLINARY CHARGES (THOSE WERE THE ONES ALLEGING MORAL TURPITUDE OFFENSES)

PLAINTIFF ONLY HAD NOTICE OF THE FIRST CHARGE (THE ETHICS COURSE CHANGE).

(FOOTNOTES)

BECAUSE OF THE ILLNESS, PLAINTIFF "LOST TIME," AND COULD NOT KEEP TRACK OF TIME AND DATES

4. UPON RECIEVING THE BAR COURT RECOMENDATIONS AND ORDER OF DISBARMENT, IN AUGUST OF 2006, PLAINTIFF REPEATEDLY REQUESTED AND WAS REFUSED SUPPORTING DOCUMENTATION FROM THE STATE BAR COURT, ONLY. BUT THEY WOULD NOT BE SENT PRIOR TO AN ADVANCED PAYMENT THAT PLAINTIFF COULD NOT PAY. ALL OTHER DOCUMENTS WERE REFUSED, "SINCE PLAINTIFF NO LONGER A MEMBER OF THE STATE BAR," AND THEREFORE "ENTITLED TO NOTHING."



DISBARRED PLAINTIFF BY DEFAULT, THE BAR AND ITS OFFICIALS CAUSED PLAINTIFF TO BE ARRESTED AND CHARGED FOR THE SAME FALSE CHARGES, BASED UPON INCOMPLETE INFORMATION. PLAINTIFF HAS BEEN ADVISED BY THE ATTORNEY REPRESENTING HIM ON THESE CHARGES, TO AVOID ANY DETAILED EXPLAINATION, UNTIL AFTER THE TRAIL ON THESE CHARGES IN JUNE OF 2008.

PLAINTIFF NOTES THAT THE ALLEGATIONS OF HIS AMENDED COMPLAINT WILL MAKE IT CLEAR THAT HE WAS NOT IN VIOLATION OF THE BAR RULES AS ALLEGED. THE AMENDED COMPLAINT WILL ALLEGE NUMEROUS VIOCATIONS OF FEDERAL LAW, INCLUDING PROCEEDUAL DUE PROCESS AND EQUIL PROTECTION, AS WELL AS VIOLATIONS OF FEDERAL STATUTORY LAW.

HOWEVER PLAINTIFF MAKES A CLAIM FOR PROCEEDUAL DUE PROCESS. IT IS ASSUMED THAT THE STATE BAR WOULD BE FREE TO BRING THE SAME CHARGES AGIANST PLAINTIFF, AFTER GIVING PLAINTIFF NOTICE AND OPPERTUNITY TO BE HEARD AT A TIME HE WAS COMPETANT TO PARTICIPATE IN THE STATE BAR PROCEEDINGS.

# III

## ARGUMENT

A. PLAINTIFF PROPOSED AMENDMED COMPLAINT WILL SURVIVE A 12(b)(1) MOTION TO DISMISS.

III.(A) THE PURPOSED AMENDED COMPLAINT WILL MAKE ALLEGATIONS THAT ARE NOT BARRED BY THE 11TH AMENDMENT.

(a.) Title 42 U.S.C. § 1983.

Plaintiffs amendment complaint will not claim that the state bar of California is liable to plaintiff, in it's capacity as an arm of the supreme court for purpose of bar disipline. (See Hirsh v. Justices of the supreme court of California, et al. 67 F.3d 708, 715 (9TH (ir. 1995); (upert v. Cal. State Bar, 761 F. 2d 1325, 1327 (9TH (ir. 1985), cert. Denied, 474 U.S. 916, 106 S. Ct. 291 (1985)).

(a)(1). Individuals in officia capacity.

However, the individual members of the board of directors are subject to suit for violations of constitional and statutory federal law, under color of state law, Plaintiffs amended complaint will name individual members of the board of directors, individual prosecutors and individual investigators, bar officials, who violated plantiffs right to proceedual due procees and equil protection. These officials will be sued in their official capacities for prospective injuctive relief [5] by, among other things, requesting the court prohibit the individual members of the board of directors from refusing to accept plaintiffs bar dues for membership.

(a)(2). Individuals in individual capacity.

(FOOTNOTES)

5. See Ex parte Young, 209 U.S. 123, 28 S. Ct. 441 (1908)

PLAINTIFF WILL ALSO SUE THE INDIVIDUAL MEMBERS OF THE BOARD

OR DIRECTORS, BAR PROSECITERS AND BAR INVESTIGATORS IN THIER

INDIVIDUAL CAPACITY, ACTING UNDER COLOR OF STATE LAW. THE

ALLEGATIONS WILL SHOW CLEAR VIOLATION OF PLAINTIFFS RIGHT TO

PROCEEDURAL DUE PROCESS AND VIOLATIONS OF EQUAL PROTECTION, AS

APPLIED TO THE STATES BY THE 14TH AMENDMENT TO THE UNITED

STATES CONSTITUTION AND TITLE 42 U.S.C. §1983.[6]

(a)(3) EQUAL PROTECTION CLAIMS.

PLAINTIFF IS MENTALLY ILL AND MENTALLY DISABLED PERSON AND HIS PROPOSED

AMENDED COMPLAINT AGAINST EMPLOYEES OR OFFICIALS OF THE STATE BAR, IN

THIER INDIVIDUAL AND THIER PERSONAL CAPACITY, WILL ALLEGE THAT IS THE

MEMBER OF A HIGHTEND SCRUTANY CLASSIFICATION, MENTALL ILLNESS?

SEE ATTACHED REPORT, WHERE PLAINTIFF WAS STILL ONLY MARGINALL COMPETANT

TO ASSIST IN HIS DEFENSE, EVEN AFTER BEING STABALIZED ON MEDICATIONS

THAT IMPROVED HIS CONDITION GREATLY.

(FOOTNOTES)

6. SEE PRICE V. ALASKA, 915 F. 2d 469 (9TH CIR. 1990).

SEE ALSO, HAFER V. MELO, 502 U.S. 21, 112 S. CT. 358 (1991),

HOLDING THAT OFFICIAL OF STATE ARE "PERSONS" AND THE 11TH AMENDMENT IS

NOT APPLICABLE, WHEN SUED IN THIER INDIVIDUAL CAPACITY. THIS IS TRUE,

EVEN IF THIER IS INDEMNIFICATION FROM THE STATE. GIRLESS V. STATE OF

COLO. 841 F 2d 1042 (10TH CIR. 1988).

7. SEE FRANCIS V. STONE, 221 F.R. 3d 100, JONES V. UNITED STATES 103

S. CT. 3043, 463 U.S. 354, ADDINGTON V. TEXAS 99 S. CT. 1804 (1979)

28

(14)

THE STATE BAR AND LAP, INCLUDING THEIR RESPECTIVE OFFICIALS, AGREED NOT TO ATTEMPT TO HAVE PLAINTIFF EVALUATED BY A PSYCHIATRIST FOR MEDICATION UNTIL AFTER HE WAS DISBARRED BY DEFAULT, AND THE DISBARRMENT HAD BECOME FINAL.

III(a)(1)(b)

THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFF'S TITLE II ADA CLAIMS.

PROCEEDURAL DUE PROCESS, UNDER THE 14TH AMENDMENT. THE ADA IS A VALID EXERCISE OF CONGRESS' AUTHORITY UNDER THE 14TH AMENDMENT TO ENFORCE THAT AMENDMENTS GUARANTEES.[8]

THE 9TH CIRCUIT CASE OF HANSON V. MEDICAL Bd. OF CAL. 279 F. 3d 1107 (9TH CIR. 2002), HELD THAT THE ADA, TITLE II, VALIDLY ABROGATES SOVERN IMMUNITY.

SECTION 5 GRANTS CONGRESS THE POWER TO ENFORCE THE 14TH AMENDMENT, BY CREATING PRIVATE REMIDIES AGIANST THE STATES FOR VIOLATIONS. THIS INCLUDES THE RIGHT TO ABROGATE STATE SOVERELIAN IMMUNITY, BY BY AUTHORIZING PRIVATE SUITS, FOR DAMAGES, AGIANST THE STATES.[9]

(FOOTNOTES)

8 ROSENTHAL V. THE JUSTICE OF THE SUPREME COURT OF CALIFORNIA, 910 F. 2d. 561, 564 (9TH CIR. 1990) CERT. DENIED 111 S. CT 963; ROBINSON V. ARIYOSHI, 753 F2d 1468; BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA, 531 U.S. 356, 121 S CT 955(2000).

9 SEE UNITED STATES V. GEORGIA 126 S. CT 877; 546 U.S. 151, (2006)

TITLE II AUTHORIZES SUITS BY PRIVATE CITIZENS FOR MONEY DAMAGES AGIANST PUBLIC ENTITIES THAT VIOLATE § 12132. [10]

THE ACT ALSO PROVIDES THAT "A STATE SHALL NOT BE IMMUNE UNDER THE 11TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES FROM AN ACTION IN [A] FEDERAL OR STATE COURT OF COMPETENT JURISDICTION FOR A VIOLATION OF THIS CHAPTER." § 12202. THIS IS AN UNEQUIVICAL EXSPRESSION OF CONGRESS'S INTENT TO ABROGATE STATE SOVEREIGN IMMUNITY. (SEE BOARD OF TRUSTEES OF THE UNIV. OF ALA. V. GARRETT, 531 U.S. 356, 363-364, 121 S. CT. 955 (2001).

PLAINTIFF BECAUSE OF HIS MENTAL DISABILITY HAS BEEN EXCLUDED FROM PARTICIPATION IN THE "SERVICES, PROGRAMS, OR ACTIVITIES" OF THE STATE BAR DISIPLINARY SYSTEM. THIS LACK OF PARTICIPATION CAUSE PLAINTIFF TO BE DISBARRED BY DEFAULT, ON CHARGES FOR WHICH HE WAS NOT CAPABLE.

FURTHER, PLAINTIFF BECAUSE OF HIS DISABILITY, WAS SUBJECT TO DISCRIMINATION BY THE STATES BAR. (SEE 42 U.S.C § 12132).

A QUALIFIED INDIVIDUAL WITH A DISABILITY IS "AN INDIVIDUAL WITH A DISABILITY WHO, WITH OR WITHOUT REASONABLE MODIFICATION TO RULES, POLICIES, OR PRACTICES, THE REMOVAL OF ARCHITECTUAL, COMMUNICATION, OR TRANSPORTATION BARRIERS, OR THE PROVISION OF AUXILIARY AIDS AND SERVICES, MEETS THE ESSENTIAL ELIGIBILITY REQUIREMENTS FOR RECIEPT OF SERVICES OR THE PARTICIPATION IN PROGRAMS OR ACTIVITIES PROVIDED BY A PUBLIC ENTITY. § 12131(2).          (FOOTNOTES)

10. SEE 42 U.S.C § 1201(b)(4).

1

2    PLAINTIFF WAS QUALIFIED AS A MEMBER OF THE STATE BAR, TO RECIEVE

3    SERVICES OF THE STATE BAR DISIPLINARY SYSTEM AND WAS INTITLED TO

4    "NOTICE AND OPPORTUNITY TO BE HEARD."

5

6    A PUBLIC ENTITY INCLUDES "ANY STATE OR LOCAL GOVERNMENT" AND

7    "ANY DEPARTMENT AGENCY.... OR OTHER INSTRUMENTALITY OF A STATE"

8    § 12131(1).

9

10    IN HIS AMENDED COMPLAINT, PLAINTIFF WILL ALLEGE THAT HE WAS, AT

11    THE TIME OF THE STATE BAR PROCEEDINGS THAT RESULTED IN HIS

12    DISBARRMENT, MENTALLY ILL, INCOMPETANT, INCAPACITATED, HOMELESS,

13    MENTALLY DISABLED, HOMELESS AND UNABLE TO FEND FOR HIMSELF.

14    HE WILL ALLEGE THAT THE STATE BAR AND IT'S OFFICIALS, WERE FULLY

15    AWARE OF PLAINTIFFS CONDITION AND PREDICIMENT

16    PLAINTIFF WILL ALLEGE THAT NO ACCOMIDATION WAS MADE FOR

17    PLAINTIFF TO ALLOW HIM TO PARTICIPATE IN THE STATE BAR PROSECUTION.

18    FOR EXAMPLE, THE PROCEEDING WERE NOT HELD IN ABEYANCE, PLAINTIFF

19    WAS NOT MEDICATED BY IAP, TO BRING HIM INTO COMPETANCE, PLAINTIFF

20    WAS NOT GIVIN NOTICE OF THE DISIPLINARY CHARGES, PLAINTIFF WAS NOT

21    APPOINTED A GUARDIAN OR EVEN APPOINTED COUNSEL, WHEN HIS COUNSEL

22    WITHDREW FOR NON-PAYMENT, AND PLAINTIFF COULD NOT PARTICIPATE IN

23    HIS DEFENSE.

24

25    HE WILL ALLEGE THAT THAT THE BAR USED HIS DISABILITY TO TAKE ADVANTAGE

26    OF HIM, AND DISCRIMINATE AGAINST HIM.

27

28

23
(17)

needs in such fundimental rights as
due process, equal protection and
"Notice" and opportunity to be
heard. The LAP and Bar
officials falure to make acc-
ommotation in virtually all disipline
proceedings and programs con-
stituted exclution from
participation in the disiplinary
proceedings. 42 U.S.C. d12132;
See also, Pennsylvania Dept
of Corrections v. Yeskey, 524
U.S. 206, 210, 118 S.Ct. 1952 (1998).

Plaintiffs claims for dam-
ages agianst the Bar, LAP
and their officials, in
his amended complaint will
be, in large part, based on condut
that independantly violated the
provisions of d1 of the
Fourteenth amendment.

Section 5 grants Congress
the power to "enforce ...
the provisions" of the Amendment

27

by creating private remedies
against the States for actual vio-
lations of those provisions.
     Section 5 authorizes Congress
to create a cause of action
through which the citizen may
vindicate his fourteenth Amend-
ment rights", Tennessee v Lane,
541 U.S. 509, 559-560, 124 S.
Ct. 1978 (2004). See also, Ex
parte Virginia, 100 U.S. 339, 346
(1880).
     "Thus, insofar as Title II
creates a private cause of action for
damages against States for conduct
that actually violates the
Fourteenth Amendment, title II
validly abrogates state sovereign
immunity." U.S. v Georgia 126 S. Ct.
882, 546 U.S. 151 (2006).

     The court in U.S. v Georgia
left open the question of
whether conduct that violated
Title II, but did not violate
the Fourteenth Amendment, was

28

1  still valid abrogation of
2
3  sovereign immunity.
4      This question was, however,
5  earlier resolved by the 9th
6  Circuit, who took the position
7  that ADA Title II validly
8  abrogates sovereign immunity in
9  all contexts. Hanson v Medical
10  Bd. of Cal. 279 F. 3d 1167
11  (9th Civ. 2002); Phiffer v. Colum.
12  River Corr. Inst., 384 F. 3d 791
13  (9th Cir. 2004).
14
15      Plaintiffs proposed
16  amended complaint will make allegations
17  ADA violations, by the Bar
18  and its officials and the
19  LAP and its officials, Under
20  color of State law, in
21  both their official and
22  individual capacities.
23
24  III(A)(2). Rooker - Feldman
25  does NOT jurisdictionally
26  Bar Plaintiffs Claims.
27
28

1
2    There are proceedual Due
3    Process violations that will
4    be alleged by plaintiff;
5    amended Complaint, that are
6    distinct from the Order
7    of Disbarment. Plaintiffs
8    claims will concern the
9    actors, not the judgement.
10
11    The Bar prosecutors and others
12    caused these clearly established
13    constitutional and Statutory rights,
14    of which they and the other
15    officials were aware, to be
16    violated. They were also deliberately
17    indifferent to these rights.
18
19    These rights were intentionally
20    violated as an invidious discriminative
21    baise upon Mental illness.
22
23    Plaintiff was prevented from
24    participating in the Bar proceedings
25    by the actions of the Bar
26    officials, under color of State
27    law, refusing to give actual
28

Notice to of the proceedings
to plaintiff.

They also actively prevented
plaintiff from participating
by failing to provide accommodation
to plaintiff, at a time they
knew such failure to
accommodate him would result
in a default Disbarment.

Had plaintiff been allowed
to participate, he would
not have been disiplined.
Plaintiff could have been put
on involuntary or voluntary in-
active status, until he was
sufficiently treated for his
Mental illness to assist in
his defense. A guardian ad
litem could have been appointed,
Counsel could have been appointed,
proceedings could have been held
in abeyance. Any combination
of actions by LAP, the
Bar and/or their officials

③

could have been taken to, with minimal effort, give plaintiff notice and opportunity to be heard, at a time when he was mentally competent to participate in the proceedings.

This is especially true since plaintiffs Mental illness is one that's manageable with medication.

Plaintiff could have been accommodated by LAP, the Bar, and their officers, by simply medicating plaintiff and giving him actual notice of the proceedings while they were occuring, rather than waiting until they were over, so that they could unfairly disbar plaintiff by default.

37

Plaintiff's constitutional claims were not heard during the Bar proceedings. The Bar, LAP and their officials prevented plaintiff from raising these issues by failing to give plaintiff notice and opportunity to be heard. In Simes v. Huckabee, 354 F 3d 823 (8th Cir. 2004), the Arkansas Supreme Court had refused to hear plaintiff's constitutional claims, so the court held Rooker-Feldman did not apply.

The second circuit took a similar position in Vargas v City of New York, 377 F.3d 200 (2d Cir. 2004). Rooker-Feldman was not applicable to the plaintiff's equal protection claims because the plaintiff had not raised them in the prior State pro-ceedings.

A fifth circuit case

33



Case held that Rooker-Feldman may not apply to attorney dis- iplinary proceedings, where State rules are challanged. He challanged State proceedures as well as rules, by suing for damages and pro- spective injunctive relief, after his disbarment.9. The court stated that the Rooker-Feldman Doctrine does not prohibit plaintiff from pre- senting a generally applicable legal challange to a state statute in federal court, even if that statute has previously been applied agianst him in State Court litigation. (Id. at 606)

Footnotes

9. Musslewhite v. State Bar of Teyas 710 F. 2d 1075 (5th Cir. 1983).

II

Title II ADA discrimination also was present, because State Bar Court Rule 117 makes it optional, whether a Bar prosecution can proceed agianst a Member, who is mentally ill, incompetant and absent, because of their disability.

On the other hand, the State Bar Court "shall" hold proceedings in abeyance if the subject is in the Armed Sirvices.

Regardless of the cause of the Member's inability to participate in his defense, through no fault of his own, (NOT) holding the matter in abeyance) will result in that member being denied "Notice and opportunity to be heard.

It is an irridious discrimination based on Mental illness, to

35

proceed agianst the Mentally
ill and incompetant, rather
than accommodating them, as
they would, a person who
was physically disalled.

Wheelchair ramps and
elevators make the court
accecible to the physically
handicapped. Plaintiff should
have been accommodated, as
well, by either hold the matter
in abeyance, while maintaining the
member on inactive status, until the
member becomes competant.
Alternatively, the Bar
could take steps to order
plaintiff to some form of
psychiatric treatment.
The LAP could be used
to assist in helping regain
the members com-petance,

But to wait until the
Member is disbarred by default,
knowing that he is incompetant

based

and unaware of the proceedings, until they have resulted in his default disbarment, as quickly as the Bar can, befor the member recovers his competance, is an invidious discrimination based on Mental illness. (see Frederick L. v. Department of Public Welfare of Pa., C.A. 3 (Pa.) 2005, 422 F.3d 151.)

Exxon Mobil v (SABIC)

In Exxon Mobil v Saudi Basic Industries, 544 U.S. 280, 125 S.Ct. 1517 (2005), the United States Supreme Court held that where a federal plaintiff presents an independant claim, even one that denies a State Court's legal Conclusion in a case to which Plaintiff was a party, there is jurisdiction in the District Court. Therefore, the Rooker-feldman Doctrine would <u>not</u> preclude

(37)

the district court from hearing
plaintiff's action, since plaintiff
clearly presents independant federal
claims.
        The default disbarment, obtain-
ed while plaintiff was incompetant
and ill, would not destroy the
jurisdiction of the federal
Court, because plaintiff's federal
Causes of action, and claims,
are independant.
        The Supreme Court, in Exxon
Mobil made it clear that the
Rooker-Feldman Doctrine had been
taken way beyond it's intended
limitations. The doctrine is only
applicable to those situations,
where plaintiffs are trying to
litigate an old State court action,
that was over, and actually
litigated with the same claims
and causes, now in district court.
These are very narrow grounds.
        To preclude plaintiff's suit,
would be to override congress's
conferral of Federal Court



Jurisdiction, concurrent with State Courts.

Plaintiffs case is on wholly different claims.

In the case of District of Columbia Court of Appeals v. Feldman 460 U.S. 462, 103 S. Ct. 1303 (1983), the plaintiff had actually sued the very Court of Appeals that had decided against him, in the case that they had just "actually litigated" in that very defendant appellate court. This was if effect, ad appeal of the Appelate Court ruling to the federal District Court. It was not a separate lawsuit with different claims.

Even in Feldman, the Supreme Court held that it was permissible for the district court to hear claims of the plaintiffs that the State Bar rules were

39

1
2  UNCONSTITUTIONAL.
3      Plaintiff seeks to amend
4  his complaint to specifically
5  allege that the State Bar/rules
6  violate proceedual due process, on
7  their face, violate ADA,
8  Equal protection and other
9  Federal Constitutional and statutory
10  law.
11      Plaintiff seeks a facial
12  review of State Proceedual rules,
13  that violate Due Process, equal
14  protection, and title II of
15  the ADA,
16
17  "Nor does § 1257 stop a
18  district court from exercising subject
19  Matter jurisdiction, simply because
20  a party attempts to litigate in
21  federal Court a matter previously
22  litigated in State court. If
23  a federal plaintiff presents
24  Some independant claim, albeit
25  one that denies a legal conclusion
26  that the State Court has
27  reached in a case to which
28



he was a party..., then
there is jurisdiction..." Exxon
Mobil v Saudi Basic Industries,
125 U.S. 294; 125 S.Ct. 1517, at
1527 (2005).

III B. Rule 12 (B)(6)

1. Plaintiff seeks to amend
his complaint. IN his amended
complaint plaintiff will allege
facts sufficient to sustain
a cause of action under
42 USC d 1985, in connection
with the Bar and LAP and
their officials, invidious
discrimination agianst plaintiff
based on mental illness and
mental disability.

Plaintiff's amended complaint
will allege facts in connection
with LAP, a state actor,
that amount to violations
by LAP and their officers,



in both their official
and individual capacities, under
color of State Law, of
federal Constitutional and Stat-
utory law.

2. Plaintiffs amended complaint
will make direct allegations against
the Bar officials, in both
their individual and their
official capacities, under color
of State law, for Violations
of title 42 USC 1983.

3. Plaintiffs amended com-
plaint will allege violations of
plaintiffs right to due process
and equal protection by
LAP, and its officials, in both
their official and individual
capacity.

(4.) The Plaintiff will allege
facts that show that the
defendants violated clearly
established federal rights, that

a reasonable official would be
aware of.

Plaintiffs allegations will
show that the violations by
the Bar and LAP of
Plaintiffs rights occured when
they were acting in their
investigative capacity and
administrative capacity,
Not their judicial capacity.
See Clark V. Wash, 366
F. 2d 678 (9th Cir. 1966).

5. Res judicata and collateral
estoppel do not apply, and
Plaintiffs amended complaint
will not make claims that
are barred by either doctrine.

Both are equitable doc-
trines, and Not avalable,
anyway, because the way
the Bar delt with plaintiff's
disability and known homeless-
ness. They used plaintiffs Mental
illness and disability to cause

(H3)
(38)

violations of plaintiffs right
to have Notice and opportunity
to be heard, to proceedual due
process, to equal protection and
other federal rights.

Exhibit C is a psychologist
report that shows plaintiff was
still only marginally competant
to assist in his defense, even
after being medicated with
several psychotropic
medications. While these medications
greatly improved plaintiff's
condition, the defendants
intentionally waited to
provide psychiatric and med-
ication services until after
the disbarrment proceedings were
final, with no recourse for
plaintiff. This was done even
though LAP, the Bar and
their officials had agreed
plaintiff needed psychiatric
care and psychotropic
medications, and had agreed

to provide these services to plaintiff, months earlier, while the Bar Proceedings were still pending.

Other allegations in plaintiff's amended complaint will make it clear that Collateral Estoppell and Res Judicata do not work to preclude plaintiffs claims in Federal District Court.

See also, C.C.P. d372; In re Jessica G. (app. 2 Dist. 2001) 113 Cal. Rptr. 2d 714, 93 Cal. App. 4th 1180; In re Christina B. (App. 4 Dist. 1993) 19 Cal. App. 4th 1441; Oliver v. Grace (1942) 19 Cal. 2d 570; Abbott v. Industrial Accident Commission (App. 3 Dist. 1936) 12 Cal. App. 2d. 478; Gillepsie v. Golly (1998) 120 Cal. 515.



(E)

Rather than to try to
accomadate plaintiff, the Bar
purposely and intentionally used
plaintiffs disability and its
symptoms to insure that he
/would default and be, because
of his disability, be unable to
participate.

For example, plaintiff was
served by mail, to known
invalid addresses, at a time where
the Bar an LAP had full
knowledge of his whereabouts.
They V also purposely held
psychiatric and medication
treatment that they agreed to
Provide for plaintiff is

(24)
(18)

obeyance, until after the
default Bar proceedings
were over, and plaintiff's
disbarrment, was final.

Further plaintiff was
discriminated agiast, because
of his disability, and
refused accomadation. that
would have been routinely
given to persons with sub-
stance abuse issues and
persons engaged in military
service.) These and,
other allegations of falure
to accomadate, and disparate,
discriminatory treatment, will
be expounded upon in plaintiffs
propose amended complaint.
Because of his disability,
plaintiff was denied access to
virtually all State Bar disiplinary
services or programs.
The Bar and LAP, in
proceeding to default disbar
plaintiff at a time when

(25)

they knew he had no notice
and was incompetant to par-
ticipate in Bar proceedings
because of a mental illness
that was so severe that he
was unable to provide even
for his basic needs was
tantimount to deliberate in-
difference to plaintiffs
rights.
    The actions that violated
plaintiffs rights violated clearly
established settled law, which the
defendants had a duty to know.
The defendants acted unreasonably.
The Bar, the LAP and their officials
are in violation of plaintiffs due
process, equal protection and statutory
rights by their deliberate indifference
to his serious mental illness
and obvious inability to participate
in the discipline process.
    The deliberate refusal of the
Bar the Lap and both of
their officials to accommodate
Plaintiff's disability-related

Plaintiff has a property interest which is protected by due process. (In re Rose (93 Cal. Rptr. 2d at 317)).

Res judicata has been rejected where "special circumstances" would make it inequitable to apply. Hight v. Hight (1977) 67 C.A. 3d 498, 503, 136 C.R. 685.

See also Rest. 2d, Judgements 286

G.) Government Tort Claims Act.
Plaintiff does not make any
pendant State Claim in
this action. Of course
the Supreamacy clause would
exempmpt any of plaintiff's
Federal Claims from the
California Government Code
33940, et.seq.: No state
Causes of action are
intended to be filed against
the state Bar, or it's
employees, in this Complaint,
Nor will plaintiff have
State Causes of action
in his proposed ⋈amended
complaint,

I.) Class Action - plaintiff
plans to associde on retain
counsel in this matter
once he is released in
the summer of O8, and
returns to San Francisco.
Plaintiff will not request
class cirtification until after
counsel enters an appearance.

The Bar points out that plaintiff is in custody of the Fresno County Jail. The charges for which plaintiff is a pretrial detainee, are the charges arising out of the Bar prosecution, based on incorrect and incomplete information, because they failed to give plaintiff Notice and opportunity to be heard.

8. Injective relief

plaintiffs amended complaint will contain properly plead claims for injunctive relief.

Foot notes

6. There are some traffic charges and a controlled substance charge, but these are minor, and plaintiff has not been convicted of any charges.

Plaintiff will seek prospective injuctive relief agianst officials of the State Bar pursuant to Title 42 U.S.C. & 1983 and 1985.

With respect to the ADA, plaintiff will seek prospective and retroactive injuctive relief.

It is interesting to not that the Bar is claiming that Morris Stole $160,000.00. Plaintiff has been convicted of Nothing. Had plaintiff Stolen money from his clients, he would not have Stayed in custody as a pretrial detainee for almost two years fighting false charges relating to the default Bar proceedings. The Bar knew that plaintiff was not even aware of the prosecution for

1    disiplinary charges for these
2    allegations.
3
4                  It is plaintiff's pos-
5    ition, that the Bar prosecution
6    and, the Criminal charges are
7    the direct result of the
8    Bars refud refusal to give
9    actual Notice to plaintiff,
10   so he would have at least
11   been apreised of the
12   seriousness of the charges
13   against him.
14                The Criminal charges are
15   also a direct result of the
16   Bars faluve to accomodate
17   plaintiffs severe mental
18   illness, at the State Bar
19   prosecution, in favor of a
20   quick default taking off
21   plaintiffs liscense to
22   practice law, without
23   Notice, at a time when
24   plaintiff was simply and
25   helplessly incapacitated. PUT X here
26
27                  footnotes
28   7. The Bar mailed notices to addresses
     they knew to be invalid, instead of 50
     simply handing plaintiff a copy of

Plaintiff request he be allowed to amend his complaint for injuctive relief.

(9.) Plaintiff does not allege that he was disbarred for his disability.

Plaintiff's Title II ADA claim is centered around the State Bar's violation of ADA, that denied him proceeduval Due Process.

Plaintiff, because of his disability, could not participate in the proceedings. Additionally, because of his disability, plaintiff did not get actual notice of the 5 Notices of Disiplinary Charges that involved Moral turpitude offences.

Had plaintiff been

(51)

given actual notice, and
had he been accomodated
for his mental disability
he could have participated
in the State Bar
proceedings and proved
that the charges were
without Merit. Essentially,
plaintiff was not accomondated,
and, therefore, could not present
facts and evidence that
would have shown the
charges to be without merit.

The Bar's claim that
Plaintiffs disability does not
"substantially limit one or
more major life activity is
Not correct. In fact, plaintiffs
complaint alleges that plaintiff
is even sufficiently disabled
to have been placed on Social

One of the several LAP
functions plaintiff was schedulad
to attend each week, during
the time the Unknown prosecution
for the moral turpitude offenses,

60

Security Disability by the
United States Goverment at
the very time the state
Bar was prosecuting the
6 Notices of Disiplinary
charges. See 42 U.S.C. $\Delta\Delta$ 12131-2,
29 U.S.C $\Delta$ 9 4(a).

Plaintiff in his proposed
amended complaint will allege
how his illness affects 'major
life activity'.

Clearly plaintiff was
also incapable of practicing
law, too, in his unmedicated
condition, as noted by the
state Bar. However, with proper
medication and treatment, plaintiff
is able to practice law
conpotantly.

The Bar cites Thompson
v. Holy Family. 121 F. 3d 537.
This is a case where the court
finds a 25 lbs. lifting restriction
is Not substantially limiting. 53

(48)

Plaintiff will not comment upon the dichotomy between a 25 lbs lifting restriction, and mental incapacity, resulting in homelessness and the appointment of a psychiatric social worker to plaintiffs case, as an alternative to hospitalization.

It is not reasonable to suggest that mental incapacity so severe that LAP had recommended hospitalization, is not a qualified disability. It would seem they would even be estopped from making such a claim. See C.F.R. √ 21630.

Morris does not ask the Bar to hold him to a lesser standard for practicing law because of his disability and the case of Doe v Ally Discipline Bd., No. 95-1259, 1996 U.S. App. 7 (6th Cir. 1996) is not applicable because plaintiff is able

54

49

to practice law when properly
taking psychotropic medications.
Tortumdy, as will be alleged
in plaintiffs proposed amended
Complaint, the is a huge improvement
in plaintiffs condition, when
he is properly medicated.

Nor does plaintiff contend
that his disability precludes him
from "satisfying the most basic
ethical requirements of his
proffession. Plaintiff did not, as
the Bar claims, steal $160,000.00,
or any other amount, from his
clients. It is the Bar's falure
to accomodate plaintiffs
disability in the disiplinary
proceedings that led to these
false conclusions by the
Bar.

The Plaintiff is certainly
not suggesting the he should
be, or needs to be, held to
some lesser ethical standards
because of his discbility. To the (55)

extent that plaintiffs complaint
may have misled the Bar
into some belief that
plaintiff is making such an
unusual claim, plaintiffs
proposed amended complaint
will not be making such
claims or allegations.)

The findings of the State
Bar court were incorrect.
They were incorrect, because the
Bar did not accommodate
plaintiffs disability, so that
he could have / participated
in the proceedings. Had he
been able to participate,
these incorrect findings would
have not been made. These
allegations will be clarified in
plaintiffs proposed amended
complaint.

56

10. The State Bar proceedures do not accomodate persons who are mentally disabled.

(A) Plaintiff is not claiming that the State Bar has a duty to abate disiplinary proceedings because a pro. per. plaintiff can't practice law competantly. Slaten v State Bar, 46 Cal. 3d 48, 55, 757 P. 2d 1, 249 Cal. Rptr. 289 (1988). Plaintiff was mentally incompetant, mentally disabled by the Social Security Administration, homeless and unable to fend for himself.

(B.) The fact that the State Bar disipline is subject to review by the California Supreme Court does not mean that the disiplinary process is automatically in compliance with proceedural Due process and Title II

of the ADA. If that were the case, plaintiff would not have been dis barred. Hiish, 67 F.3d at 713; Rosenthal, 910 F.2d at 564-565.

It was the falure of due process and opportunity to be heard, because of the falure of the Bar to provide reasonable accomodation to Members with sevious and incapacitating disabilities, about which plaintiff complains. This will be more particularly set forth in plaintiff's proposed amended complaint.

## IV

## Conclusion

Plaintiff requests leave of court to amend his complaint. Plaintiff will, in amending his complaint, take into account the issues addressed by the Bar's motion to dismiss, so that the pleading

as amended, moots those issues raised by the Bar, that are valid.

Plaintiff respectfully requests the leave of this court to amend his complaint, without restriction.

Given the restrictions associated with plaintiffs pre-trial detention, he request the court allow him 045 days to prepare a 1st Amended Complaint.


Respectfully Submitted,

Gregory Morris, pro. per.

3/21/08

Gregory Morris
260092-0674243
P. O. Box 872
Fresno, California  93712

03/22/08

Federal District Court Clerk
Civil Division
450 Golden Gate Blvd.
San Francisco, California  94102

Dear Clerk:

I do not have access to a typewriter except in limited times.  I have no access to
a pen to print my opposition with either, because I am incarcerated in the Fresno
county jail fighting false charges.

Please accept my pencil typed Opposition to the State Bar defendant's Motion to
Dismiss.  I have also enclosed a copy that I was hoping you could conform and return
to me.  I have no stamps or envelopes to enclose.  I am prosecuting this matter
under a fee waiver.

Thank you so much for your help!

Very truly yours,

Gregory Morris

LEGAL MAIL

FEDERAL DISTRICT Court CLERK
Civil Division
450 Golden Gate Blvd
San Francisco, CA.

94102

0806

FIRST CLASS



neopost™

$02.670
049JB2039593
Mailed From 93721
03/26/2008
US POSTAGE