Gregory Morris
1432993-0674243
P. O. Box 872
Fresno, California   93712

FILED

08 MAR 28

RICHARD
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CALIFORNIA

1

2          IN THE UNITED STATES DISTRICT COURT

           FOR THE NORTHERN DISTRICT OF CALIFORNIA (San Francisco)

3

   GREGORY A. MORRIS,

4          PLaintiff,                          CASE No. 3:07-CV-02890-EMC PJH

5                                              MEMORANDUM OF POINTS AND
                                               AUTHORITIES IN OPPOSITION
6  v.                                          TO STATE BAR DEFENDANT'S
                                               MOTION TO DISMISS
7

                                               MOTION TO AMEND COMPLAINT
8  STATE BAR OF CALIFORNIA, ET AL.

                           Defendnats.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

1  I   Introduction . . . . . . . . .  1
2
3  II  Background . . . . . . . . .  7
4  A.  Allegations against State Bar Defendants . . .  7
5  B.  The State Bar Defendants . . . . . .  12
6  1.  The State Bar of California . . . . .  12
7  2.  The Board of Governors . . . . .  12
8  3.  The Lawyers assistance Program (L.A.P.) . .  13
9  4.  Individual Defendants.  14
10  5.  Plaintiffs Proposed Amended Complaint . . .  14
11  III.  ARGUMENT . . . . . . . .  18
12  A. Rule 12(B)(1) Plaintiff proposed AMENCED complaint will survive
13     a motion to Dismiss . . . . . .  18
14  B. Rule 12(B)(G) Plaintiff seeks to amend his case . .  41
15  1. Plaintiff will allege facts in connection with L.A.P. .  41-42
16  a Plaintiff will make direct allegations againts the Bar.
17     officials . . . . . . . . .  42
18  3. Plaintiff will allege violations of right to Due Process . .  42
19  4. Plaintiff will show facts that defendants violated  42
20     federal Rights . . . . . . .
21  IV Conclusion . . . . . . .  58
22
23
24
25
26
27
28

UNITED STATE SUPREME COURT CASES:                          PGN

ADDington V. Texas  99 S.Ct 1804 (1979)                     20

EX PARTE YOUNG,

209 U.S. 123, 28 S.CT. 441 (1908)                         3  19

HIRSH V. JUSTICE OF SUPREME COURT OF CALIFORNIA,

67 F3D 708, 715 (9TH CIR. 1995)                             19

HAFER V. MELO

502 U.S. 21, 112 S.CT. 358 (1991)                          20

JONES V. UNITED STATES

103 S. CT                                                   20

MT. HEALTHY CITY SCHOOL, DIST, BOARD OF EDUC. V DOYLE

975 S. CT 566; 429 US 274 (1977)                           13

NINTH CIRCUIT CASES:

CLARK V. WASH,

366 F. 2D 678 (9TH CIR 1966)                               43
                                                           26

FRANSES V. STONE,

221 F.R 3D 100                                             20

HIRSH V. JUSTICE OF THE SUP CT OF CAL,

67 F.3D 708 (9TH CIR. 1995)                             19/58

1. HOLT V. NEVADA CITY PUBLIC SCHOOL DISTRIC.

374 F.3D 1176 (9TH CIR 1998) ............ 13

HALE V. STATE OF ARIZ,

962 F.2ND 1356 (9TH CIR 1992) ............ 13

LUPERT V. CAL STATE BAR.

761 F. 2D 1325, 1327 (9TH CIR. 1985) CERT. DENIED, 474 U.S.

916 1065. (CT 241 (1985)) ............ 19

MITCHELL V. LOS ANGELES COMMUNITY COLLEGE DIST,

801 F.2D 198 (9TH CIR 1988) ............ 13

PRICE V. ALASKA

915 F.2D 469 (9TH CIR 1990) ............ 20

ROSENTHAL V. JUSTICES OF THE SUP CT OF CAL,

910 F.2D 501 (9TH CIR, 1990) ............ 21

OTHER CIRCUIT CASES:

FREDERICK L. V. DEPARTMENT OF PUBLIC WELFARE OF PA,

C.A. 3 (P.A.) 2005, 422 F.3D 151) ............ 37

GRIESS V. STATE OF COLO,

841 F2D 1042 (10TH CIR 1988) ............ 20

1. MUSSLEWHITE V. STATE BAR OF TEXAS

710 F.2D 1075 (5TH CIR 1965) .......... 34

POE V. ALEY DISCIPLINE,

BD. NO. 95-1289, 1996, U.S. APP.T (6TH CIR 1996) .......... 54

CALIFORNIA DECISIONS:

ABBOTT V. INDUSTRIAL ACCIDENT COMMISSION

(APP. 3 DIST 1936) .......... 45

IN RE CHRENTINA B,

(APP. 4 DIST, 1993) 19 CAL. APP 4TH 1441) .......... 45

CAL. RPTR,

2591 (1988) .......... 45

GILLIPSEE V. GOULY

(1998) 120 CAL. 515 .......... 45

HEIGHT V. HEIGHT,

(1977) 67 CA 3D 498, 503, 136 CR 685 .......... 46

IN RE JESSICA G .......... 45

(APP 2 DIST, 2001) 113 CAL. RPTR, 2D 714, APP 4TH 1180

Pennsylvania V. Yeskey

524, U.S. 206, 210, 118 S. Ct. 1952 (1998) .......... 27

OLIVER V. GRACE

(1942) 19 CAL 2D 570                                        45


IN RE RISE

93 CAL RPTR 2D 817                                         46


STATE V. STATE BAR

46 CAL 3D, 48, 55, 757, P 2D1, 249                         57


STATUTES


CAL BUS,

PROF CODE 6010, 6025, 6076, 6086               12-13


CAL BUS,

PROF CODE 6230, 6231                                      13


CALIFORNIA CIVIL PROCEDURE

2 372


TITLE,

42 U.S.C (1983)


REST 2D JUDGEMENT 66

Tennessee V. Lane
541 U.S. 509, 559-560, 124 S. Ct. 1978 (2004)          28

Immunity, U.S. V Georgia
126 S. ct 882, 546 U.S. 151 (2006)          28

Hanson V Medical Bd. of Cal.
279 F. 3d 1167 (9th Cir 2002)          29

Phiffer V. Colum.
River Corr. Inst. 384 F. 3d 791 (9th cir. 2004)          29

Vargas V. City of New York
377 F. 3d 200 (2d Cir. 2004)          34

Musselwhite V. State Bar of Texas
710 F. 2d 1075 (5th cir. 1983)          34

Exon Mobile V. Saudi Basic Industries
544 U.S. 280, 125 S. Ct. 1517 (2005)          37

Clark V. Wash
366 F. 2d. 678 (9th cir. 1966)          43

Thompson V. Holy Family
121 F 3d 537.          53

Roberts V. College of Desert
870 F 2d 1411 (9th cir. 1988)                    14

Lupert V. Cal. State Bar.
761 F 2d 1325, 1327 (9th cir 1985)               19

Francis V. Stone
221 F.R. 3d 100,                                 26

Jones V. United States
103 S. ct. 3043, 463 U.S. 354                    20

University of Alabama V. Garrett
531 US. 356, 363, 364, 121 S. ct. 955 (2001)     22

MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION.

Plaintiff is a disabled person by the Sobial Security Administration of the Unined States Government, and is entitled to protection under the Americans with Disabilities Act.

This case arises out of a prosecution in State Court, agianst plaintiff for Arson and Insurance Fraud, at a time when plaintiff did not even have any insurance.  Plaintiff had been told, wrongfully, by other defendants, that his house was started on fire by an arsonist, when plaintiff was in the home  (plaintiff was sleeping when the fire started). When plaintiff was unable to suggest to the authorities, who might be wanting him or his family dead, plaintiff was prosecuted for arson and insurance fraud, without probable cause.

Several years prior to the fire, plaintiff and his family (Mary, his wife, also an attorney, and their to children, Matthew and Megan) were on a family vacation, skiing in the mountains of New Mexico, when their pilot crashed thier airplane into the snowy mountains of New Mexico. The 4 of them, plus the pilot, were traped indthe aitplane for several days prior to being rescued.  All were horrendously injured, and plaintiff's wife died 30 minutes before they were finally rescued.  It took several years and multiple surgeries before plaintiff and his remaining family had reached a plateau of recovery.  Unable to come up with a definitive conclusion on the crash, the National Transportation Safety Board, called the cause of the crash, pilot disorientation.

Because of the severity and somewhat uncertain circumstances of airplane crash, plaintiff became very fearfull and stressed, when he was told by the defendant experts that he was now the victim of an arson and perhaps attempted murder.  In fact, he believed the defendants, and

INTRODUCTION

began to believe that the crash was caused by some type of sabotage, and
that his wife's death must have been, in fact a murder. Plaintiff was

Plaintiff was so distressed and alarmed by the thought of his remaining
family being in constant and imminant danger, and associated events ass-
ociated with being wrongfully prosecuted for arson, and the press coverage
associated with the prosecuiton, that he became very ill. He did not
know what was wrong with him, but he became wholly disoriented, mixed
up, unable to keep appointments, loseing time, suffering from horrible
nightmares, unable to even sleep indoors, homeless and unable to care or
even fend for himself.

During this time of severe illness and homelessness, plaintiff was
disbarred on false charges of theft and forgery. Because of his illness
and state of confusion, he used cashiers checks to pay expenses, physicians
and clients, on personal injury cases, as well as his fee. He would
typically deposit the insurance draft/check, into the trust account, and
draw out of the trust account, cashiers checks for all the payees, instead
of writing his own checks out of the trust account, in most cases.

While plaintiff was homeless, a client questioned his payment by
a cashiers check to the Bar because it had the names of his doctors added
to it and he could not cash it without paying the lienholders.

An audit was done on plaintff's trust account for many past years.
The cashiers checks were not a part of the plaintiff's bank statement,
so it was assumed that plaintiff had stolen whatever money was withdrawn

INTRODUCTION                                    Page 2

in the form of cashiers checks.  Plaintiff was disbarred on this incorrect

assumption.  Plaintiff was not served in a manner that resulted in actual

notice to him, and, in fact, was served in a manner that was certain to not

give actual notice to the plaintiff.  Additionally the State Bar was fully

aware, at the time of the default Bar proceedings, that plaintiff was

mentally ill with sever Post Tramatic Stress Disorder (It was the defendant

LAP, who diagnosed plaintiff, after he had sought help from them voluntarily,

and been accepted into their program), disoriented, mentally incompetant,

mentally incapacitated, unable to fend for himself, homeless and badly in

need of psychotropic medications.  In fact, LAP recommended that plaintiff

be hospitalized immediately.  Plaintiff was diagnosed in the fall of 2006,

by LAP, wherein hospitalization was recommended, shortly after being

examinged by the LAP psychologist.  He was disbarred by default due to

Notices of Disiplinary Charges he knew nothing about, several months later.

He was finally notified by LAP employee Dr. Greg Doe, about the dis-

barrment, after it had become final, with no recourse.

Then plaintiff was arrested and has been incarcerated fighting false

charges arising out of the same false assumptions, since August or 2006.

Plaintiff now seeks to file a First Amended Complaint in this matter.

He seeks to redress violations of his rights to Notice and Opportunity

to be Heard.  His amended complaint will allege violation s of plaintiff's

right to proceedural due process, equal protection, Title II of the ADA,

Title 42 U.S.C. § 1983 and other Federal Constitutional and statutory

rights.

Plaintiff makes an  offer of proof that the money alleged to have

been stolen was legitimately paid out of the settlement, but not with

standard printed checks.  Plaintiff ligitimatly drew trust account checks

from his account.

INTRODUCTION

Plaintiff was also charged with forgeing documents, but the money that was alleged

1   misappropriated by plaintiff was, in fact legitimately paid out on behalf of

2   clients, and that the documents claimed to have been forged, were signed

3   under a valid and specific power of attorney, in the regular course of

4   plaintiff's business as a lawyer. Had plaintiff been served with process

5   and had plaintiffs disability allowed him to paticipate in the proceedings,

6   this information would ahve come to light, and the charges would have been

7   dismissed as without merit. Plaintiff was denied this opportunity to

8   proove his innocence of these serious charges because he was never served

9   with the Notice to Show Cause complaints, and because he was disabled by

10  mental illness and would have been completely unable to participate in the

11  proceedings, at the time they occured. The State Bar Defendants knew

12  that plaintiff was mentally incompetant, and that he had not been personally

13  served with process, at the time the proceedings were pushed through the

14  State Bar Court. The State Bar defendant's also knew, at the time they were

15  prosecuting this matter by default, that the plaintiff was homeless,

16  impovershed and mentally ill. Not effort was made to either personally

17  serve plaintiff, during this time, even though the State Bar knew of plaintiff's

18  whereabouts, or to appoint counsel for the severly disabled plaintiff.

19

20      Plaintiff was a member of the State Bar of California continuously

21  since 1979, without any history of disipline, other that the current

22  matters. In appeoximately 2002-2003, plaintiff became disabled by mental

23  illness. He was incapacitated and homeless, since that time.

24      Plaintiff has been plagued, with severe physical and psychological

25  symptems of Post Tramatic Stress Disorder and aggrivated Attention

26  Deficit Disorder. He wound up disoriented, confused and living on the streets,

27  homeless.  He routinely was forced to sleep in the doorways of businesses,

28  that were closed for the evening, as this provided, at least some shelter

INTRODUCITON

1  from the eliments.

2      Plaintiff is incarcerated in the Fresno County Jail and is represented

3  by J. Tony Serra.  The matter has bee scheduled for trial on May 27, 2008.

4  Given the extremely restricted conditions in county jail, plaintiff

5  respectfully requests that he be given to June 28, 2008, within which to

6  file an amended complaint.

7      If plaintiff is given until that date, he will have access to a computer

8  to prepare the complaint and additional legal materials to avoid having

9  amendable problems with his complaint.

10      The following points and authorites had to be printed by others, primarily,

11  because plaintiff's printing in not legible.  Plaintiff has no computer

12  or word-processer access and only has limited access to a 30 year old type=

13  writer, on which he is not proficient.

14      Plaintiff has attached a report that references his mental condition,

15  but is unable to obtain a great deal of care in jail, except for medication.

16      While plaintiff was in jail, he has been treated with 4 different

17  psychiatric medications that have greatly improved is condition.

18                          Footnotes

19  A.  Plaintiff had entered an appearance through counsel on only one Notice
        of Disiplinary Charge.  This is the only one plaintiff knew about, prior
20      to the time of his disbarment.  It involved his falure to take a one
        day ethics seminar, and file 4 quarterly reports.  These were part of a
21      private reprimand for a minor non-moral turpitude bar violation.  In fact,
        matter would not have resulted in a private reprimand, but, according to
22      the Bar prosecuter, would have been dismissed at the complaint statge, had
        plaintiff timely responded to the informal bar complaint.
23

24      Plaintff was suffering from a mental illness that caused him to be unable
        to scheduul and attend many activities.
25
        His falure to comply with the terms of the private reprimand would not
26      have resulted in his disbarment, especially since his illness was
        a large factor in his falure to comply.
27
        Plaintiff did not know he had a mental illness or what was wrong with him
28      until he was diagnosed with this in connection with his participation in
        LAP (State Bar Lawyers Assistance Program, his participation was completely
        voluntary, to try to get help for his difficulties.

                          INTRODUCTION

                                                                    PAGE

1   Prior to the administration ot this medication, plaintiff was incapacitated

2   and incompetant.  While plaintiff is, according to the attached report,

3   marginally competant, at this time, prior to this administration of med-

4   ication, plaintiff was unable to fend for himself.  The State Bar Lawyers

5   Assistance Program, a program plaintiff had voluntarily gone to for

6   help, had agreed to provide psychiatric and medication services to plaintiff.

7   In fact, the State Bar had agreed to forward the money tor these services/

8   However, while they agreed that plaintiff needed to have treatment wiht

9   psychiatric medications and offered to arrange this, they unbeknowst to

10   plaintiff, chose to wait to send plaintiff to a psychiatrist for approximately

11   9 months while the Bar, unbeknownst to Morris, was proceeding to default

12   Morris by default judgement.  The bar had known plaintiff was mentally

13   incapacitated and needed medication, known he was not aware of the charges

14   and had not received actual notice of the Notice of Disiplinary Charges

15   and proceeded anyway.

FOOTNOTES

16

17   Plaintifff's counsel withdrew shortly after they entered an appearance
because plaintiff was unable to cooperate in the defense, and becuase he
18   could not make additional payments to counsell

19   New charges were filed, after counsel withdrew, but plaintiff never
recieved notice of them and was too ill to have participated in defending
20   them, had he recieved actual notice.

21

22

23

24

25

26

27

28

II

Back Ground

(A) Allegations against State Bar
Defendants.

Plaintiff requests leave to amend his
Complaint. While his proposed Amended Com-
plaint Will specify allegations with much
more particularity, some of the alligations plaintiff
Will make if he is allowed to amend are as
Follows:

Plaintiff was Mentally ill, incompetent
and incapacitated during the time the Bar
charges were being prosecuted.

The State Bar including the individual
Bar investigators and the individual Bar pro-
secutors Knew that plaintiff was Mentally
ill, incapacitated incompetant and homeless
and impoverished during the time the Bar
charges were being prosecuted.
the Plaintiff was determined to be a Mentally disabled
person by the Social Security Administration during
the time the Bar disiplinary charges were being
prosecuted.

①

The bar investigators and prosecutors knew plain-
tiff was homeless and impoverished, and that he had
No office or home address while Bar charges were
being prosecuted. Substantially all of the mail
sent to plaintiff during the prosecution was
returned as undeliverable to the Bar.
What little mail was not returned was not
delivered to plaintiff.

During the Bar prosecution,
plaintiff was a patient with, and recieving
psychiatric rehabilitative services with the Lawyers
Assistance Program (LAP). LAP
determined that plaintiff was afflicted
with Post Tramatic stress Disorder. His
condition was so severe that LAP recom-
mended Psychiatric hospitalization.

During the State Bar Prosecution, Plaintiffs
condition was so severe that he was assigned
a roving psychiatric social worker from the UC
San Francisco Medical School, to accompany him to
all appointments or other activities he needed to
attend.

The Bar and its officials knew that plain-
tiff was homeless in San Francisco during

The time of the Bar proceedings. They also knew plaintiff.

Although Plaintiff was homeless, without and address, the Bar and its officials knew plaintiffs whereabouts at up to 3, maybe 4 places, Plaintiff was scheduled to be in connection with his psychiatrict treatment at L A P, every week.

L A P and the state Bar knew Plaintiff needed to be given Psychotropic medications to restore him to competency, enough to participate in the ongoing Bar Charges. L A P and the state, Bar undertook to provide and pay for these services on behalf of plaintiff and plaintiff was so advised. However, the Bar, L A P and the Bar officials chose to wait over 6 months to provide these needed services, until the Bar proceedings was over and final, even the time for plaintiff to file a petition for review had expired while the Psychiatrict and medication services were being deferred.

Too, during this Time the Bar and its officials Knowingly Chose to Mail-serve all Notices and Documents to plaintiffs invalid address

1

2  Fresno, rather than personally serving him

3  with them, at one of the 2 or 3 appointments

4  He had been scheduled to attend by LAP, every week

5

6  As a result of this method of service, at a time

7  it was known to be useless as a means of getting

8  documents or information to plaintiff, Plaintiff was

9  Not aware of the charges of misappropriation against

10  him.

11  While Plaintiff was too ill to participate in

12  the proceedings anyway, perhaps he could have,

13  at least, given to papers to his psychologist,

14  who would have helped in some way.

15

16  Plaintiff is innocent of the charges lodged

17  against him, by the state Bar but, because of

18  his mental illness, and because he was unaware of

19  the charges, he did Not have an opportunity to

20  present testimony or evidence that would have

21  exculpated him.

22

23  Plaintiff had been a practicing attorney for 25

24  years, with No history of Bar discipline.

25

26

27  Plaintiffs mental illness is post tramatic

28  stress disorder and aggrivated attention

Deficit Disorder.

According to psychologists who have examined and treated plaintiff, the traumatic events that caused the PTSD include an airplane crash that took the life of plaintiff's wife, also an attorney and catastropically injured their two children and plaintiff, and a house fire in 2002, from which plaintiff barely escaped, that the authorities told plaintiff was arson.

When plaintiff could not name the arsonist, he was arrested and prosecuted for arson and insurance fraud.

Plaintiff had no insurance, and certainly did not set fire to his house.

Plaintiff began to feel the plane crash may have been from sabotage by the same unknown assalant who had set fire to the family home.

The mental illness is so severe that it debilitated plaintiff and he was eventually found to be disabled by the social security administration of the united states government.

Plaintiff's proposed amended complaint will allege additional facts to support his cause of action, for numerous violations of Federal Constitutional



and statutory law, by the State Bar of
California, and some of it's officials, in both their
individual and official capacities, under color
of state law.

He will also make actionable factual allegations
against LAP and it's officials.

B. The State Bar Defendants.

In plaintiffs proposed amended complaint,
he will not have a seperate catigory for
the state Bar defendants.

II.B.1.    The State Bar of California.
Plaintiff agrees that the 9th Circuit has
uniformly held that, When it concerns Bar
disipline, the State Bar is an arm of the
Supreme Court of California (the state),
for purposes of the 11th amendment. It is a
Municipal Corporation.

2.    The board of Governors.
The State Bar board of governors, and it's individual
members, is responsible for the policies, proceedures,
Custom rulmaking, Management and operations of the
State Bar. (See Cal. Bus. & Prof. Code



Section:

2) 6010, 6025, 6076, 6086.5,
For example.

3. The lawyers assistance program, (LAP).

LAP is an unincorporated association that provides mental health and substance abuse services to members of the state Bar. The mental health services are advertised by the LAP, as a specialized mental health service, with special expirtise in treating attornys with mental health issues.

LAP was formed to "rehabilitation lawyers who are afficted with mental illness and" return them to the practice of law. (see Cal. Bus. and Prof. Code § 6230 & 6231). LAP does not appear to be an arm of the state, under the factors set fourth in Mt. Healthy City School, District Board of Educ. V Doyle 975 S. Ct. 586; 429 U.S. 274 (1977). See also Holtz V. Nevada City Public School Dist. 374 F. 3d 1176 (9th Cir 2003); Mitchell V. Los Angeles Community College Dist. 801 F. 2d 198 (9th c.r. 1988); Hale V State of Ariz. 962 F. 2d 1356 (9th Cir. 1992).

3

At the very least, it would appear that discovery might be helpful, if there is a reasonable allegation by the Bar that L.A.P is somehow an arm of the state. (Roberts v. College of the Desert 870 F. 2d 1411 (9th Cir. 1988).

4. Individual Defendants.

Both the State Bar and LAP have officials against whom Plaintiff will make allegations in a proposed amended complaint, in both their official and their individual capacities. These allegations in plaintiffs Proposed amended complaint, will make a showing of numerous violations of Federal Constitutional and statutory law, under Color of State Law.

5.

Plaintiffs Proposed amended complaint will More particularly set forth the acts of the Doe Defendants. Some will be individuals and others will be organizations.

BAR AND/OR LAP OFFICIALS, IN THIER INDIVIDUAL AND/OR OFFICIAL CAPACITY, UNDER COLOR OF STATE LAW.

II. (A)(C) PLANTIFFS STATE BAR PROCEEDINGS.

THERE WERE APPARANTLY SIX (6) [2.] NOTICES OF DISIPLINARY CHARGES.[1] (04-H-11843, 04-0-14241, 04-0-15199, 04-0-15642, 04-0-14108, 05-0-00021).

PLANTIFF ENTERED AN APPEARANCE IN 04-H-11843, ONLY. SINCE HE WAS HOMELESS, IT WENT TO HIS MOTHERS HOUSE. BY THE TIME HE RECIEVED IT FROM HIS MOTHER, IT WAS IN DEFAULT. A MOTION TO SET ASIDE THE DEFAULT WAS GRANTED.

THE CASE INVOLVED PLAINTIFFS FAILURE TO TAKE AN ETHICS COURSE.

(FOOTNOTES)

1. THIS IS THE FIRST OFFICIAL DOCUMENT FILED IN STATE BAR COURT AGAINST A MEMBER, IT CONTAINS THE CHARGING ALLEGATIONS.

2. PLAINTIFF HAS ONLY SEEN THE FIRST ONE (04-H-11843). NO MORAL TURPITUDE OFFENSES WERE ALLEGED IN THIS NOTICE.



AND MAIL 4 QUARTERLY REPORTS, AS REQUIRED BY A PRIVATE
REPRIMAND THAT RESULTED FROM A MINOR BAR VIOLATION. THIS
NOTICE OF DISIPLINARY CHARGE (04-H-11843) IS THE ONLY CHARGE
PLAINTIFF WAS AWARE OF, UNTIL HE WAS PERSONALLY SERVED WITH
THE STATE BAR COURT FINDINGS AND RECOMENDATION FOR DISBARMENT
ALONG WITH THE ORDER OF DISBARMENT, SOMETIME IN AUGUST OF
2006. THE ORDER WAS PERSONALLY SERVED ON THE PLAINTIFF, ABOUT
A WEEK AFTER THE DEADLINE FOR A PETITION FOR REVIEW, THAT
THE SUPREME COURT HAD PASSED. THE PETITION FOR REVIEW IS THE
LAST RECOURSE A DISBARRED MEMBER HAS TO CONTEST HIS/HER
DISBARMENT.

DURING THE TIME CASE # 04-H-11843 (HER INAFTER CALLED THE
"ETHICS COURSE CHARGE") WAS PENDING BY ITSELF, PLAINTIFF WAS SERIOUSLY
MENTALLY ILL, [3.] UNABLE TO FEND FOR HIMSELF AND HOMELESS.

HE INNITIALLY RETAINED COUNSEL, BUT WAS NOT ABLE TO PARTICIPATE
IN HIS DEFENSE. PLAINTIFF WAS NOT ABLE TO PAY ADDITIANAL MONEY
TO RETAIN COUNSEL AND THEY WITHDREW. AFTER HIS LAWYER
WITHDREW, SOME TYPE OF DEFAULT WAS ENTERED. PLAINTIFF NEVER
SAW THE MOTION TO ENTER DEFAULT, OR ANY OTHER DOCUMENTS THAT
RELATED TO IT, BECAUSE HE WAS HOMELESS, ILL, AND HAD NO ADDRESS. HE
MOVED TO SET ASIDE THIS SECOND DEFAULT PRETAINING TO THE ETHICS COURSE
CASE, BUT IT WAS DENIED. (SEE EXIBIT 1 ).

(FOOTNOTES)

3. PLAINTIFF DID NOT KNOW HE HAD A MENTAL ILLNESS, AT THE TIME. HE ONLY KNEW
THAT HE WAS DISORIENTED, SLEEPING OUTSIDE AND HAVING INTENSE EPISODES OF SYMPTOMS
THAT HE LATER, LEARNED FROM HIS PSYCHOLOGIST, WERE CAUSED BY POST TRAUMATIC STRESS DISORDER.



1   PLAINTIFF DID NOT KNOW WHAT BECAME OF HIS MOTION TO SET ASIDE THE
2
3   DEFAULT, UNTIL HE WAS SERVED WITH THE ORDER OF DISBARMENT IN
4   AUGUST OF 2006. THE FIRST TIME HE SAW OR HEARD ABOUT EXHIBIT 1,
5   WAS AS AN ATTACHMENT TO THE STATE BAR'S CURRENT MOTION TO DISMISS.[4]
6
7   C(2). PLAINTIFF WOULD NOT HAVE BEEN FOUND GUILTY OF THE BAR
8   VIOLATIONS, HAD HE BEEN GIVEN NOTICE AND OPPORTUNITY TO BE HEARD,
9   AT A TIME WHEN HE WAS MENTALLY COMPETANT TO PARTICIPATE IN THE
10  PROCEEDINGS.
11
12  THE STATE BAR AND IT'S OFFICIALS PROSECUTED PLAINTIFF, BY DEFAULT WITH
13  FULL KNOWLEDGE THAT PLAINTIFF WAS MENTALLY INCOMPETANT,
14  INCAPACITATED, HOMELESS AND TOTALLY UNAWARE OF THE LAST 5 NOTICES OF
15  DISCIPLINARY CHARGES (THOSE WERE THE ONES ALLEGING MORAL TURPITUDE
16  OFFENSES)
17
18  PLAINTIFF ONLY HAD NOTICE OF THE FIRST CHARGE ( THE ETHICS COURSE CHANGE).
19                          (FOOTNOTES)
20  BECAUSE OF THE ILLNESS, PLAINTIFF "LOST TIME," AND COULD NOT KEEP TRACK OF
21  TIME AND DATES.
22  4. UPON RECIEVING THE BAR COURT RECOMENDATIONS AND ORDER OF DISBARMENT,
23  IN AUGUST OF 2006, PLAINTIFF REPEATEDLY REQUESTED AND WAS REFUSED
24  SUPPORTING DOCUMENTATION FROM THE STATE BAR COURT, ONLY. BUT THEY WOULD NOT
25  BE SENT PRIOR TO AN ADVANCED PAYMENT THAT PLAINTIFF COULD NOT PAY. ALL OTHER
26  DOCUMENTS WERE REFUSED, "SINCE PLAINTIFF NO LONGER A MEMBER OF THE STATE
27  BAR," AND THEREFORE "ENTITLED TO NOTHING."
28



DISBARRED PLAINTIFF BY DEFAULT. THE BAR AND ITS OFFICIALS CAUSED
PLAINTIFF TO BE ARRESTED AND CHARGED FOR THE SAME FALSE CHARGES,
BASED UPON INCOMPLETE INFORMATION. PLAINTIFF HAS BEEN ADVISED BY
THE ATTORNEY REPRESENTING HIM ON THESE CHARGES, TO AVOID ANY
DETAILED EXPLANATION, UNTIL AFTER THE TRAIL ON THESE CHARGES IN
JUNE OF 2008.

PLAINTIFF NOTES THAT THE ALLEGATIONS OF HIS AMENDED COMPLAINT
WILL MAKE IT CLEAR THAT HE WAS NOT IN VIOLATION OF THE BAR RULES
AS ALLEGED. THE AMENDED COMPLAINT WILL ALLEGE NUMEROUS VIOCATIONS
OF FEDERAL LAW, INCLUDING PROCEEDUAL DUE PROCESS AND EQUIL
PROTECTION, AS WELL AS VIOLATIONS OF FEDERAL STATUTORY LAW.

HOWEVER PLAINTIFF MAKES A CLAIM FOR PROCEEDUAL DUE PROCESS.
IT IS ASSUMED THAT THE STATE BAR WOULD BE FREE TO BRING THE SAME
CHARGES AGIANST PLAINTIFF, AFTER GIVING PLAINTIFF NOTICE AND
OPPERTUNITY TO BE HEARD AT A TIME HE WAS COMPETANT TO PARTICIPATE
IN THE STATE BAR PROCEEDINGS.

## III

## ARGUMENT

A. PLAINTIFF PROPOSED AMENDMED COMPLAINT WILL SURVIVE A 12(b)(1)
MOTION TO DISMISS.

III. (A) THE PURPOSED AMENDED COMPLAINT WILL MAKE ALLEGATIONS
THAT ARE NOT BARRED BY THE 11TH AMENDMENT.

(a.) TITLE 42 U.S.C. § 1983.

PLAINTIFFS AMENDMENT COMPLAINT WILL NOT CLAIM THAT THE
STATE BAR OF CALIFORNIA IS LIABLE TO PLAINTIFF, IN IT'S CAPACITY AS
AN ARM OF THE SUPREME COURT FOR PURPOSE OF BAR DISIPLINE.
(SEE HIRSH V. JUSTICES OF THE SUPREME COURT OF CALIFORNIA, ET AL.
67 F.3d 708, 715 (9TH (IR. 1995); LUPERT V. CAL. STATE
BAR, 761 F. 2d 1325, 1327 (9TH (IR. 1985), CERT.
DENIED, 474 U.S. 916, 106 S. CT. 291 (1985)).

(a)(1). INDIVIDUALS IN OFFICIA CAPACITY.

HOWEVER, THE INDIVIDUAL MEMBERS OF THE BOARD OF DIRECTORS ARE
SUBJECT TO SUIT FOR VIOLATIONS OF CONSTITIONAL AND STATUTORY
FEDERAL LAW, UNDER COLOR OF STATE LAW. PLAINTIFFS AMENDED
COMPLAINT WILL NAME INDIVIDUAL MEMBERS OF THE BOARD OF DIRECTORS,
INDIVIDUAL PROSECUTORS AND INDIVIDUAL INVESTIGATORS, BAR OFFICIALS,
WHO VIOLATED PLANTIFFS RIGHT TO PROCEEDUAL DUE PROCESS AND
EQUIL PROTECTION. THESE OFFICIALS WILL BE SUED IN THEIR OFFICIAL
CAPACITIES FOR PROSPECTIVE INJUCTIVE RELIEF [5]. BY, AMONG, OTHER
THINGS, REQUESTING THE COURT PROHIBIT THE INDIVIDUAL MEMBERS OF
THE BOARD OF DIRECTORS FROM REFUSING TO ACCEPT PLAINTIFFS BAR
DUES FOR MEMBERSHIP.

(a)(2). INDIVIDUALS IN INDIVIDUAL CAPACITY.

(FOOTNOTES)

5. SEE EX PARTE YOUNG, 209 U.S. 123, 28 S. CT.
441 (1908)



1

2   PLAINTIFF WILL ALSO SUE THE INDIVIDUAL MEMBERS OF THE BOARD

3   OR DIRECTORS, BAR PROSECITERS AND BAR INVESTIGATORS IN THIER

4   INDIVIDUAL CAPACITY, ACTING UNDER COLOR OF STATE LAW. THE

5   ALLEGATIONS WILL SHOW CLEAR VIOLATION OF PLAINTIFFS RIGHT TO

6   PROCEEDURAL DUE PROCESS AND VIOLATINS OF EQUAL PROTECTION, AS

7   APPLIED TO THE STATES BY THE 14TH AMENDMENT TO THE UNITED

8   STATES CONSTITUTION AND TITLE 42 U.S.C §1983.6

9

10  (a)(3) EQUAL PROTECTION CLAINS.

11

12  PLAINTIFF IS MENTALLY ILL AND MENTALLY DISABLED PERSON AND HIS PROPOSED

13  AMENDED COMPLAINT AGAINST EMPLOYEES OR OFFICIALS OF THE STATE BAR, IN

14  THIER INDIVIDUAL AND THIER PERSONAL CAPACITY, WILL ALLEGE THAT IS THE

15  MEMBER OF A HIGHTEND SCRUTANY CLASSIFICATION, MENTALL ILLNESS?

16  SEE ATTACHED REPORT, WHERE PLAINTIFF WAS STILL ONLY MARGINALL COMPETANT

17  TO ASSIST IN HIS DEFENSE, EVEN AFTER BEING STABALIZED ON MEDICATIONS

18  THAT IMPROVED HIS CONDITION GREATLY.

19                    (FOOTNOTES)

20  6. SEE PRICE V. ALASKA, 915 F. 2d 469 (9TH CIR. 1990).

21  SEE ALSO, HAFER V. MELO, 502 U.S. 21, 112 S. CT. 358 (1991)

22  HOLDING THAT OFFICIAL OF STATE ARE "PERSONS" AND THE 11TH AMENDMENT IS

23  NOT APPLICABLE, WHEN SUED IN THIER INDIVIDUAL CAPACITY, THIS IS TRUE,

24  EVEN IF THIER IS INDEMNIFICATION FROM THE STATE. GIRKESS V. STATE OF

25  COLO. 841 F.2d 1042 (10TH CIR. 1988).

26

27  7. SEE FRANCIS V. STONE, 221 F.R. 3d 100, JONES V. UNITED STATES, 103

28  S. CT. 3043, 463 U.S. 354, ADDINGTON V. TEXAS 99 S. CT. 1804 (1979)

28

(14)

THE STATE BAR AND LAP, INCLUDING THEIR RESPECTIVE OFFICIALS,
AGREED NOT TO ATTEMPT TO HAVE PLAINTIFF EVALUATED BY A PHYCHIATRIST
FOR MEDICATION UNTIL AFTER HE WAS DISBARRED BY DEFAULT, AND THE
DISBARRMENT HAD BECOME FINAL.

III(a)(1)(b)

THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFF'S TITLE II
ADA CLAIMS.

PROCEEDURAL DUE PROCESS, UNDER THE 14TH AMENDMENT. THE
ADA IS A VALID EXERCISE OF CONGRESS' AUTHORITY UNDER THE 14TH
AMENDMENT TO ENFORCE THAT AMENDMENTS GUARANTEES.[8]
THE 9TH CIRCUIT CASE OF HANSON V. MEDICAL BD. OF CAL. 279
F. 3d 1107 (9TH CIR. 2002), HELD THAT THE ADA, TITLE II, VALIDLY
ABROGATES SOVERN IMMUNITY.
SECTION 5 GRANTS CONGRESS THE POWER TO ENFORCE THE 14TH
AMENDMENT, BY CREATING PRIVATE REMIDIES AGIAST THE STATE'S FOR
VIOLATIONS. THIS INCLUDES THE RIGHT TO ABROGATE STATE SOVEREIGN
IMMUNITY, BY BY AUTHORIZING PRIVATE SUITS, FOR DAMAGES, AGIANST THE STATES.[9]

(FOOTNOTES)

[8] ROSENTHAL V. THE JUSTICE OF THE SUPREME COURT OF CALIFORNIA,
910 I. 2d. 561, 564 (9TH CIR. 1990) CERT. DENIED 111 S. CT 963;
ROBINSON V. ARIYOSHI, 753 F2d 1468; BOARD OF TRUSTEES OF THE
UNIVERSITY OF ALABAMA, 531 U.S. 356, 121 S CT 955 (2000).

[9] SEE UNITED STATES V. GIORGIA 126 S. CT 877; 546 U.S. 151,
(2006)

TITLE II AUTHORIZES SUITS BY PRIVATE CITIZENS FOR MONEY DAMAGES AGIANST PUBLIC ENTITIES THAT VIOLATE § 12132. [10]

THE ACT ALSO PROVIDES THAT "A STATE SHALL NOT BE IMMUNE UNDER THE 11TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES FROM AN ACTION IN [A] FEDERAL OR STATE COURT OF COMPETENT JURISDICTION FOR A VIOLATION OF THIS CHAPTER." § 12202. THIS IS AN UNEQUIVICAL EXSPRESSION OF CONGRESS'S INTENT TO ABROGATE STATE SOVEREIGN IMMUNITY. (SEE BOARD OF TRUSTEES OF THE UNIV. OF ALA. V. GARRETT, 531 U.S. 356, 363-364, 121 S. CT 955 (2001).

PLAINTIFF BECAUSE OF HIS MENTAL DISABILITY HAS BEEN EXCLUDED FROM PARTICIPATION IN THE "SERVICES, PROGRAMS, OR ACTIVITIES" OF THE STATE BAR DISIPLINARY SYSTEM. THIS LACK OF PARTICIPATION CAUSI PLAINTIFF TO BE DISBARRED BY DEFAULT, ON CHARGES FOR WHICH HE WAS NOT CAPABLE.

FURTHER, PLAINTIFF BECAUSE OF HIS DISABILITY, WAS SUBJECT TO DISCRIMINATION BY THE STATES BAR. (SEE 42 U.S.C § 12132).

A QUALIFIED INDIVIDUAL WITH A DISABILITY IS "AN INDIVIDUAL WITH A DISABILITY WHO, WITH OR WITHOUT REASONABLE MODIFICATION TO RULES, POLICIES, OR PRACTICES, THE REMOVAL OF ARCHITECTUAL, COMMUNICATION, OR TRANSPORTATION BARRIERS, OR THE PROVISION OF AUXILIARY AIDS AND SERVICES, MEETS THE ESSENTIAL ELIGIBILITY REQUIREMENTS FOR RECIEPT OF SERVICES OR THE PARTICIPATION IN PROGRAMS OR ACTIVITIES PROVIDED BY A PUBLIC ENTITY. § 12131(2).                    (FOOTNOTES)

10. SEE 42 U.S.C § 1201(b)(4).

1
2   PLAINTIFF WAS QUALIFIED AS A MEMBER OF THE STATE BAR, TO RECIEVE
3   SERVICES OF THE STATE BAR DISIPLINARY SYSTEM AND WAS INTITLED TO
4   "NOTICE AND OPPORTUNITY TO BE HEARD."
5
6   A PUBLIC ENTITY INCLUDES "ANY STATE OR LOCAL GOVERNMENT" AND
7   "ANY DEPARTMENT AGENCY.... OR OTHER INSTRUMENTALITY OF A STATE"
8   § 12131(1).
9
10  IN HIS AMENDED COMPLAINT, PLAINTIFF WILL ALLEGE THAT HE WAS, AT
11  THE TIME OF THE STATE BAR PROCEEDINGS THAT RESULTED IN HIS
12  DISBARRMENT, MENTALLY ILL, INCOMPETANT, INCAPACITATED, HOMELESS,
13  MENTALLY DISABLED, HOMELESS AND UNABLE TO FEND FOR HIMSELF.
14  HE WILL ALLEGE THAT THE STATE BAR AND IT'S OFFICIALS, WERE FULLY
15  AWARE OF PLAINTIFFS CONDITION AND PREDICIMENT.
16  PLAINTIFF WILL ALLEGE THAT NO ACCOMIDATION WAS MADE FOR
17  PLAINTIFF TO ALLOW HIM TO PARTICIPATE IN THE STATE BAR PROSECUTION.
18  FOR EXAMPLE, THE PROCEEDING WERE NOT HELD IN ABEYANCE, PLAINTIFF
19  WAS NOT MEDICATED BY IAP, TO BRING HIM INTO COMPETANCE, PLAINTIFF
20  WAS NOT GIVIN NOTICE OF THE DISIPLINARY CHARGES, PLAINTIFF WAS NOT
21  APPOINTED A GUARDIAN OR EVEN APPOINTED COUNSEL, WHEN HIS COUNSEL
22  WITHDREW FOR NON-PAYMENT, AND PLAINTIFF COULD NOT PARTICIPATE IN
23  HIS DEFENSE.
24
25  HE WILL ALLEGE THAT THAT THE BAR USED HIS DISABILITY TO TAKE ADVANTAGE
26  OF HIM, AND DISCRIMINATE AGAINST HIM.
27
28

23
(17)

needs in such fundimental rights as
due process, equal protection and
"Notice" and opportunity to be
heard. The LAP and Bar
officials failure to make acc-
ommotation in virtually all disipline
proceedings and programs con-
stituted exclution from
particpation in the disiplinery
proceedings. 42 U.S.C. d12132;
See also, Pennsylvania Dept
of Corrections v. Yeskey, 524
U.S. 206, 210, 118 S.Ct. 1952 (1998).

Plaintiffs claims for dam-
ages agianst the Bar, LAP
and their officials, in
his amended complaint will
be, in large part, based on condut
that independantly violated the
provisions of d1 of the
Fourteenth amendment.

Section 5 grants Congress
the power to "enforce ...
the provisions" of the Amendment

27

by creating private remedies against the States for actual violations of those provisions.

Section 5 authorizes Congress to create a cause of action through which the citizen may vindicate his fourteenth Amendment rights", Tennessee v Lane, 541 U.S. 509, 559-560, 124 S. Ct. 1978 (2004). See also, Ex parte Virginia, 100 U.S. 339, 346 (1880).

"Thus, insofar as Title II creates a private cause of action for damages against States for conduct that actually violates the fourteenth Amendment, title II validly abrogates state sovereign immunity." U.S. v Georgia 126 S. Ct. 882, 546 U.S. 151 (2006).

The court in U.S. v Georgia left open the question of whether conduct that violated Title II, but did not violate the Fourteenth Amendment, was

28

still valid abrogation of sovereign immunity.

This question was, however, earlier resolved by the 9th Circuit, who took the position that ADA Title II validly abrogates sovereign immunity in all contexts. Hanson V Medical Bd. of Cal. 279 F. 3d 1167 (9th Civ. 2002); Phiffer v. Columbia River Corr. Inst., 384 F. 3d 791 (9th Cir. 2004).

Plaintiffs proposed amended complaint will make allegations ADA violations, by the Bar and its officials and the LAP and its officials, under color of State law, in both their official and individual capacities.

III(A)(2). Rooker - Feldman does not jurisdictionally Bar Plaintiffs Claims.

34

There are proceedual Due Process violations that will be alleged by plaintiffs amended Complaint, that are distinct from the Order of Disbarrment. Plaintiffs claims will concern the actors, not the judgement.

The Bar prosecutors and others caused these clearly established constitutional and Statutory rights, of which they and the other officials were aware, to be violated. They were also deliberately indifferent to these rights.

These rights were intentionally violated as an invidious discrimative baise upon Mental illness.

Plaintiff was prevented from participating in the Bar proceedings by the actions of the Bar officials, under color of State law, refusing to give actual

Notice to of the proceedings
to plaintiff.

They also actively prevented
plaintiff from participating,
by failing to provide accommodation
to plaintiff, at a time they
knew such failure to
accommodate him would result
in a default Disbarment.

Had plaintiff been allowed
to participate, he would
not have been disiplined.
Plaintiff could have been put
on involuntary or voluntary in-
active status, until he was
sufficiently treated for his
Mental illness to assist in
his defense. A guardian ad
litem could have been appointed,
Counsel could have been appointed,
proceedings could have been held
in abeyance. Any combination
of actions by LAP, the
Bar and/or their officials

③

could have been taken to, with minimal effort, give plaintiff notice and opportunity to be heard, at a time when he was mentally competent to participate in the proceedings.

This is especially true since plaintiffs Mental illness is one that's manageable with medication.

Plaintiff could have been accommodated by LAP, the Bar, and their officers, by simply medicating plaintiff and giving him actual Notice of the proceedings while they were occuring, rather than waiting until they were over, so that they could unfairly disbar plaintiff by default.

37

Plaintiff's constitutional claims were not heard during the Bar proceedings. The Bar, LAP and their officials prevented plaintiff from raising these issues, by failing to give plaintiff notice and opportunity to be heard. In Simes v. Huckabee, 354 F 3d 823 (8th Cir. 2004), the Arkansas Supreme Court had refused to hear plaintiff's constitutional Claims, so the Court held Rooker-Feldman did not apply.

The second circuit took a similar position in Vargas v City of New York, 377 F. 3d 200 (2d Cir. 2004). Rooker-Feldman was not applicable to the Plaintiff's equal protection claims because the plaintiff had not raised them in the prior State proceedings.

A fifth circuit case

33

Case held that Rooker-Feldman may not apply to attorney dis-iplinary proceedings, where State rules are challenged. He challanged State proceedures as well as rules, by suing for damages and pro-spective injunctive relief, after his disbarment. 9. The court stated that the Rooker-Feldman Doctrine does not prohibit plaintiff from pre-senting a generally applicable legal challange to a state statute in federal court, even if that statute has previously been applied agianst him in State Court litigation. (Id. at 606)

Footnotes

9. Musslewhite v. State Bar of Texas 710 F. 2d 1075 (5th Cir. 1983).

II

Title II ADA discrimination also was present, because State Bar Court Rule 117 makes it optional, whether a Bar prosecution can proceed agianst a member, who is mentally ill, incompetant and absent, because of their disability.

On the other hand, the State Bar Court "shall" hold proceedings in abeyance if the subject is in the Armed Sirvices.

Regardless of the cause of the member's inability to participate in his defense, through no fault of his own, (Not) holding the matter in abeyance, will result in that member being denied "Notice and opportunity to be heard".

It is an irridious discrimination based on Mental illness, to

35

proceed agianst the Mentally
ill and incompetant, rather
than accommodating them, as
they would, a person who
was physically disabled.

Wheelchair ramps and
elevators make the court
accessible to the physically
handicapped. Plaintiff should
have been accommodated, as
well, by either hold the matter
in abeyance, while maintaining the
member on inactive status, until the
member becomes competant.
Alternatively, the Bar
could take steps to order
plaintiff to some form of
psychiatric treatment.
The LAP could be used
to assist in helping regain
the members com-petence.

But to wait until the
member is disbarred by default,
knowing that he is incompetant

based

and unaware of the proceedings, until they have resulted in his default disbarment, as quickly as the Bar can, befor the member recovers his conpetance, is an invidious discrimination based on Mental illness. (see Frederick L. v. Department of Public Welfare of Pa., C.A. 3 (Pa.) 2005, 422 F.3d 151.)

<u>Exxon Mobil v (SABIC)</u>

In Exxon Mobil v Saudi Basic Industries, 544 U.S. 280, 125 S.Ct. 1517 (2005), the United States Supreme Court held that where a federal plaintiff presents an independant claim, even one that denies a State Court's legal Conclusion in a case to which Plaintiff was a party, there is jurisdiction in the District Court. Therefore, the Rooker-feldman Doctrine would <u>Not</u> preclude

(37)

the district court from hearing
plaintiff's action, since plaintiff
clearly presents independant federal
claims.
    The default disbarment, obtain
ed while plaintiff was incompetant
and ill, would not destroy the
jurisdiction of the federal
Court, because plaintiff's federal
Causes of action, and claims,
are independant.
    The Supreme Court, in Exxon
Mobil made it clear that the
Rooker - Feldman Doctrine had been
taken way beyond it's intended
limitations. The doctrine is only
applicable to those situations,
where plaintiffs are trying to
litigate an old State court action,
that was over, and actually
litigated with the same claims
and causes, now in district court.
These are very narrow grounds.
    To preclude plaintiff's suit,
would be to override congress's
conferral of federal court



Jurisdiction, concurrent with State Courts.

Plaintiffs case is on wholly different claims.

In the case of District of Columbia Court of Appeals v. Feldman 460 U.S. 462, 103 S. Ct. 1303 (1983), the plaintiff had actually sued the very Court of Appeals that had decided against him, in the case that they had just "actually litigated" in that very defendant appellate Court. This was in effect, an appeal of the Appelate Court ruling to the federal District Court. It was not a separate lawsuit with different claims.

Even in Feldman, the Supreme Court held that it was permissible for the district court to hear claims of the plaintiffs that the State Bar rules were

39

1
2   unconstitutional.
3        Plaintiff seeks to amend
4   his complaint to specifically
5   allege that the State Bar/rules
6   violate proceedual due process, on
7   their face, violate ADA,
8   Equal protection and other
9   Federal Constitutional and statutory
10   law.
11       Plaintiff seeks a facial
12   review of State Proceedual rules,
13   that violate Due Process, equal
14   protection, and title II of
15   the ADA.
16
17     "Nor does § 1257 stop a
18   district court from exercising subject
19   Matter jurisdiction, simply because
20   a party attempts to litigate in
21   federal Court a matter) previously
22   litigated in State court. If
23   a federal plaintiff presents
24   some independant claim, albeit
25   one that denies a legal conclusion
26   that the State Court has
27   reached in a case to which
28



he was a party..., then
there is jurisdiction..." Exxon
Mobil v Saudi Basic Industries,
125 U.S. 294; 125 S.Ct. 1517, at
1527 (2005).

III B. Rule 12 (B)(6)

1. Plaintiff seeks to amend
his complaint. In his amended
complaint plaintiff will allege
facts sufficient to sustain
a cause of action under
42 USC d 1985, in connection
with the Bar and LAP and
their officials, invidious
discrimination agianst plaintiff
based on mental illness and
mental disability.

Plaintiff's amended complaint
will allege facts in connection
with LAP, a state actor,
that amount to violations
by LAP and their officers,



in both their official
and individual capacities, under
color of State Law, of
Federal Constitutional and stat-
utory law.

2. Plaintiffs amended complaint
will make direct allegations against
the Bar officials, in both
their individual and their
official capacities, under color
of State law, for violations
of title 42 USC 1983.

3. Plaintiffs amended com-
plaint will allege violations of
plaintiffs right to due process
and equal protection by
LAP, and its officials, in both
their official and individual
capacity.

(4.) The plaintiff will allege
facts that show that the
defendants violated clearly
established federal rights, that

a reasonable official would be
aware of.

Plaintiffs allegations will
show that the violations by
the Bar and LAP of
Plaintiffs rights occured when
they were acting in their
investigative capacity and
administrative capacity,
Not their judicial capacity.
See Clark v. Wash, 366
F. 2d 678 (9th Cir. 1966).

5. Res judicata and collateral
estoppel do not apply, and
Plaintiffs amended complaint
will not make claims that
are barred by either doctrine.

Both are equitable doc-
trines, and Not available,
anyway, because the way
the Bar delt with plaintiff's
disability and known homeless-
ness. They used plaintiffs Mental
illness and disability to cause

43
38

violations of plaintiffs right
to have notice and opportunity
to be heard, to proceedual due
process, to equal protection and
other federal rights.

Exhibit C is a psychologist
report that shows plaintiff was
still only marginally competant
to assist in his defense, even
after being medicated with
several psychotropic
medications. While these medications
greatly improved plaintiff's
condition, the defendants
intentionally waited to
provide psychiatric and med-
ication services until after
the disbarrment proceedings were
final, with no recourse for
plaintiff. This was done even
though LAP, the Bar and
their officials had agreed
plaintiff needed psychiatric
care and psychotropic
medications, and had agreed

to provide these services to plaintiff, months earlier, while the Bar proceedings were still pending.

Other allegations in plaintiff's amended complaint will make it clear that Collateral Estoppell and Res Judicata do Not work to preclude plaintiffs claims in Federal District Court.

See also, C.C.P. d 372; In re Jessica G. (app. 2 Dist. 2001) 113 Cal. Rptr. 2d 714, 93 Cal. App. 4th 1180; In re Christina B. (App. 4 Dist. 1993) 19 Cal. App. 4th 1441; Oliver v Grace (1942) 19 Cal. 2d 570; Abbott v. Industrial Accident Commission (App. 3 Dist. 1936) 12 Cal. App. 2d. 478; Gillepsie v. Golly (1998) 120 Cal. 515.



Rather than to try to accomadate plaintiff, the Bar purposely and intentionally used plaintiffs disability and its symptoms to insure that he would default and be, because of his disability, be unable to participate.

For example, plaintiff was served by mail, to known invalid addresses, at a time where the Bar an LAP had full knowledge of his whereabouts. They also purposely held psychiatric and medication treatment that they agreed to provide for plaintiff is

obeyance, until after the
default Bar proceedings
were over, and plaintiff's
disbarrment, was final.

Further plaintiff was
discriminated agiast, because
of his disability, and
refused accomadation, that
would have been routinely
given to persons with sub-
stance abuse issves and
persons engaged in military
service.  )  These and,
other allegations of falure
to accomadate, and disparate,
discriminatory treatment, will
be expounded upon in plaintiff's
propose amended complaint.
Because of his disability,
plaintiff was denied access to
virtually all State Bar disiplinary
services or programs.
The Bar and LAP, in
proceeding to default disbar
plaintiff at a time when

25

they knew he had No Notic
and was incompetant to par-
ticipate in Bar proceedings
because of a mental illness
that was so severe that he
was unable to provide even
for his basic needs was
tantimount to deliberate in-
difference to plaintiffs
rights.

The actions that violated
plaintiffs rights violated clearly
established settled law, which the
defendants had a duty to know.
The defendants acted unreasonably.
The Bar, the LAP and their officials
are in violation of plaintiffs due
process, equal protection and statutory
rights by their deliberate indifference
to his serious mental illness
and obvious inability to participate
in the discipline process.

The deliberate refusal of the
Bar the Lap and both of
their officials to accommodate
Plaintiff's disability-related

Plaintiff has a property interest
which is protected by due
process. (In re Rose (93 Cal. Rptr.
2d at 317)).

Res judicata has been rejected
where "special circumstances" would
make it inequitable to apply. Hight
v. Hight (1977) 67 C. A. 3d 498,
503, √ 136 C.R. 685.

See also Rest. 2d, Judgements
§ 86

46

(G.) Government Tort Claims Act.
Plaintiff does not make any
pendant State Claim in
this action. Of course
the Supreamacy clause would
exempt any of plaintiff's
Federal Claims from the
California Government Code
??940, et. seq. No state
Causes of action are
intended to be filed against
the state Bar, or it's
employees, in this Complaint,
Nor will plaintiff have
State Causes of action
in his proposed amended
complaint.

(7.) Class Action - plaintiff
plans to associde or retain
counsel in this matter
once he is released in
the summer of 08, and
returns to San Francisco.
Plaintiff will not request
class cirtification until after
cousel enters an appearance!

H7
42

The Bar points out that plaintiff is in custody of the Fresno County Jail. The charges for which plaintiff is a pretrial detainee, are the charges arising out of the Bar prosecution, based on incorrect and incomplete information, because they failed to give plaintiff notice and opportunity to be heard.

8. Injunctive relief

    plaintiffs amended complaint will contain properly plead claims for injunctive relief.

## Footnotes

6. There are some traffic charges and a controlled substance charge, but these are minor, and plaintiff has not been convicted of any charges.

Plaintiff will seek prospective
injuctive relief agianst officials
of the State Bar pursuant
to Title 42 U.S.C. & 1983 and
1985.

With respect to the ADA,
plaintiff will seek prospective
and retroactive injuctive
relief.

It is interesting to not
that the Bar is claiming
that Morris Stole $160,000.00.
Plaintiff has been convicted
of nothing. Had plaintiff
stolen money from his
clients, he would not
have stayed in custody
as a pretrial detainee
for almost two years
fighting false charges
relating to the default
Bar proceedings. The
Bar knew that plaintiff
was not even aware
of the prosecution for

1. disiplinary charges for these
2. allegations.
3.
4.         It is plaintiff's pos-
5. ition, that the Bar prosecution
6. and, the Criminal charges are
7. the direct result of the
8. Bars ~~refod~~ refusal to give
9. actual Notice to plaintiff,
10. so he would have at least
11. been apreised of the
12. seviousness of the charges
13. against him.
14.         The criminal charges are
15. also a direct result of the
16. Bars falure to accomidate
17. plaintiffs severe mental
18. illness, at the State Bar
19. prosecution, in favor of a
20. quick default taking off
21. plaintiffs lisense to
22. practice law, without
23. Notice? at a time when
24. plaintiff was simply and
25. helplessly incapacitated. PUT X here
26.
27.                 footnotes
28. 7. The Bar mailed Notices to addresses

they knew to be invalid, instead
Simply handing Plaintiff a copy of

Plaintiff request he be allowed
to amend his complaint for
injuctive relief.

(9.) Plaintiff does not allege
that he was disbarred for
his disability.

Plaintiff's Title II ADA
claim is centered around the
State Bar's violation of
ADA, that denied him
proceeduval Due Process.

Plaintiff, because of
his disability, could not
participate in the proceedings.
Additionally, because of
his disability, plaintiff
did not get actual notice
of the 5 Notices of
Disiplinary Charges that
involved Moral turpotude
offences.
Had plaintiff been

(51)

given actual notice, and
had he been accomodated
for his mental disability
he could have participated
in the State Bar
proceedings and proved
that the charges were
without merit. Essentially,
plaintiff was not accomondated,
and, therefore, could not present
facts and evidence that
would have shown the
charges to be without merit.

The Bar's claim that
plaintiffs disability does not
"substantially limit one or
more major life activity is
not correct. In fact, plaintiffs
complaint alleges that plaintiff
is even sufficiently disabled
to have been placed on Social

one of the several LAP
functions plaintiff was scheduled
to attend each week, during
the time the unknown prosecution
for the moral turpitude offenses, 17.

50

Security Disability by the
United States Goverment at
the very time the state
Bar was prosecuting the
6 Notices of Disiplinary
charges. See 42 U.S.C. dd 12131-2,
29 U.S.C. d 94(a).

Plaintiff in his proposed
amended complaint will allege
how his illness affects 'major
life activity'.

Clearly plaintiff was
also incapable of practicing
law, too, in his unmedicated
condition, as noted by the
state Bar. However, with proper
medication and treatment, plaintiff
is able to practice law
conpotantly.

The Bar cites Thompson
v. Holy Family. 121 F. 3d 537.
This is a case where the court
finds a 25 lbs. lifting restriction
is not substantially limiting. 53

Plaintiff will not comment upon the dichotomy between a 25 lbs lifting restriction, and mental incapacity, resulting in homelessness and the appointment of a psychiatric social worker to plaintiffs case, as an alternative to hospitalization.

It is not reasonable to suggest that mental incapacity so severe that LAP had recommended hospitalization, is not a qualified disability. It would seem they would even be estopped from making such a claim. See C.F.R. √21630.

Morris does not ask the Bar to hold him to a lesser standard for practicing law because of his disability and the case of Doe v Ally Discipline Bd., No. 95-1259, 1996 U.S. App. 7 (6th Cir. 1996) is not applicable because plaintiff is able

54

49

to practice law when properly
taking psychotropic medications.
Tortuedly, as will be alleged
in plaintiffs proposed amended
Complaint, the is a huge improvement
in plaintiffs condition, when
he is properly medicated.

Nor does plaintiff contend
that his disability precludes him
from "satisfying the most basic
ethical requirements of his
proffession. Plaintiff did not, as
the Bar claims, steal $160,000.00,
or any other amount, from his
clients. It is the Bar's falure
to accomodate plaintiffs
disability in the dissiplinary
proceedings that led to these
false conclusions by the
Bar.

The Plaintiff is certainly
not suggesting the he should
be, or needs to be, held to
some lesser ethical standards
because of his discbility. To the

(55)

extent that plaintiffs complaint may have misled the Bar into some belief that plaintiff is making such an unusual claim, plaintiffs proposed amended complaint will not be making such claims or allegations.)

The findings of the State Bar court were incorrect. They were incorrect, because the Bar did not accommodate plaintiffs disability, so that he could have / participated in the proceedings. Had he been able to participate, these incorrect findings would have not been made. These allegations will be clarified in plaintiffs proposed amended complaint.

56

10. The State Bar proceedures do not accomodate persons who are mentally disabled.

(A) Plaintiff is not claiming that the State Bar has a duty to abate disiplinary proceedings because a pro. per. plaintiff can't practice law competently. Slaten v State Bar, 46 Cal. 3d 48, 55, 757 P. 2d 1, 299 Cal. Rptr. 289 (1988). Plaintiff was mentally incompetant, mentally disabled by the Social Security Administration, homeless and unable to fend for himself.

(B.) The fact that the State Bar disipline is subject to review by the California Supreme Court does not mean that the disiplinary process is automatically in compliance with proceedural Due process and Title II

51
Tn

of the ADA. If that
were the case, plaintiff
would not have been dis
barred. Hiish, 67 F.3d at 713;
Rosenthal, 910 F.2d at 564-565.
It was the falure of due
process and opportunity to be
heard, because of the falure
of the Bar to provide
reasonable accomodation to Members
with sevious and incapacitating
disabilities, about which plaintiff
complains. This will be more
particularly set forth in
plaintiff's proposed amended
complaint.

## IV

## Conclusion

Plaintiff requests leave of
court to amend his
complaint. Plaintiff will, in
amending his complaint, take
into account the issues
addressed by the Bar's motion
to dismiss, so that the pleading

as amended, moots those issues raised by the Bar, that are valid.

Plaintiff respectfully requests the leave of this court to amend his complaint, without restriction.

Given the restrictions associated with plaintiffs pre-trial detention, he request the court allow him 045 days to prepare a 1st Amended Complaint.


Respectfully Submitted,

Greg Morris

Gregory Morris, pro. per.

3/21/08

59

Gregory Morris
260092-0674243
P. O. Box 872
Fresno, California  93712

03/22/08

Federal District Court Clerk
Civil Division
450 Golden Gate Blvd.
San Francisco, California  94102

Dear Clerk:

I do not have access to a typwriter except in limited times.  I have no access to
a pen to print my opposition with either, because I am incarcerated in the Fresno
county jail fighting false charges.

Please accept my pencil typed Opposition to the State Bar defendant's Motion to
Dismiss.  I have also enclosed a copy that I was hoping you could conform and return
to me.  I have no stamps or envelopes to enclose.  I am prosecuting this matter
under a fee waiver.

Thank you so much for your help!

Very truly yours,

Gregory Morris

LEGAL MAIL

FEDERAL DISTRICT COURT CLERK
Civil Division
450 Golden Gate Blvd
San Francisco, CA.

94102

FIRST CLASS



neopost™

049JB2039593
$02.670
Mailed From  93721
03/26/2008
US POSTAGE

0806